1  FRED H. ALTSHULER (SBN 43878)
   LINDA LYE (SBN 215584)
2  JAMIE L. CROOK (SBN 245757)
     (Application for Admission pending)
3  ALTSHULER BERZON LLP
   177 Post Street, Suite 300
4  San Francisco, California  94108
   Telephone: (415) 421-7151
5  Facsimile: (415) 362-8064
   E-Mail: faltshulerberzon@altshulerberzon.com
6  E-Mail: llye@altshulerberzon.com
   E-Mail: jcrook@altshulerberzon.com
7
   *Attorneys for Plaintiffs*
8  *Robert Evitt and Joel Ortega,*
   *and the proposed Plaintiff Class*
9

10                   UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO/OAKLAND DIVISION

13

14  ROBERT EVITT and JOEL ORTEGA,      )  Case No. _____
    on behalf of themselves and a class of  )
15  those similarly situated,          )  **PLAINTIFFS' MEMORANDUM OF**
                                       )  **POINTS AND AUTHORITIES IN**
16                      Plaintiffs,    )  **SUPPORT OF MOTION FOR**
                                       )  **TEMPORARY RESTRAINING ORDER**
17       v.                            )  **AND PRELIMINARY INJUNCTION**
                                       )
18  MACK TRUCKS, INC. and MACK         )  **CLASS ACTION**
    HEALTH, DISABILITY AND LIFE        )
19  BENEFITS FOR UAW EMPLOYEES,        )
                                       )
20                      Defendants.    )
    _____)

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.   PLAINTIFFS HAVE AN OVERWHELMING LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS THAT DEFENDANTS MAY NOT ELIMINATE OR REDUCE THEIR VESTED RIGHT TO LIFETIME HEALTHCARE BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.   Because Mack promised to provide lifetime healthcare benefits for retirees and surviving spouses in its labor agreements with the Union, any reduction or termination of those benefits violates the LMRA . . . . . . 13

    B.   Because Plaintiffs have vested rights to lifetime medical coverage at Company expense, any reduction or termination of that coverage violates ERISA . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.  THE BALANCE OF HARMS OVERWHELMINGLY FAVORS ENJOINING ANY REDUCTION IN OR TERMINATION OF PLAINTIFFS' MEDICAL COVERAGE PENDING A HEARING ON THE MERITS. . . . . . . . 19

    A.   Plaintiffs will suffer irreparable harm if their medical coverage is reduced or terminated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    B.   Defendant Mack Trucks will not suffer real harm if it is enjoined from reducing or terminating Plaintiffs' medical benefits . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## CASES

*Agnotti v. Rexam, Inc.*,
    2006 WL 1646134 (N.D. Cal. June 14, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Alday v. Raytheon Co.*,
    2006 WL 2294819 (D. Ariz. July 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Beltran v. Meyers*,
    677 F.2d 1317 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Beno v. Shalala*,
    30 F.3d 1057 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20

*Blau v. Del Monte Corp.*,
    748 F.2d 1348 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bower v. Bunker Hill Co.*,
    725 F.2d 1221 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 17

*Devlin v. Empire Blue Cross and Blue Shield*,
    274 F.3d 76 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dist. 2 Marine Engineers Beneficial Ass'n v. Grand Bassa Tankers, Inc.*,
    663 F.2d 392 (2d Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Golden v. Kelsey-Hayes Co.*,
    73 F.3d 648 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 21

*Helwig v. Kelsey-Hayes Co.*,
    93 F.3d 243 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Int'l Ass'n of Machinists & Aerospace Workers v. Masonite Corp.*,
    122 F.3d 228 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Int'l Union v. Yard-Man, Inc.*,
    716 F.2d 1476 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Krishan v. McDonnell Douglas Corp.*,
    873 F. Supp. 345 (C.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*LaForest v. Former Clean Air Holding Co., Inc.*,
    376 F.3d 48 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19

*Lands Council v. Martin*,
    479 F.3d 636 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, Case No. _____

ii

*Mack Trucks, Inc. v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW, et al.,*
  E.D. Pa. 07-3737 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19, 20

*McCoy v. Meridian Auto. Sys., Inc.,*
  390 F.3d 417 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Murphy v. Keystone Steel & Wire Co.,*
  61 F.3d 560 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Newton-Nations v. Rogers,*
  316 F. Supp. 2d 883 (D. Ariz. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pisciotta v. Teledyne Indus., Inc.,*
  91 F.3d 1326 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Policy v. Powell Pressed Steel Co.,*
  770 F.2d 609 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rodde v. Bonta,*
  357 F.3d 988 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Schalk v. Teledyne, Inc.,*
  751 F. Supp. 1261 (W.D. Mich. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Scott v. Gulf Oil Corp.,*
  754 F.2d 1499 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. ABS Industries, Inc.,*
  890 F.2d 841 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,*
  240 F.3d 832 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Textile Unlimited, Inc. v. A..BMH & Co., Inc.,*
  240 F.3d 781 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Turner v. Local Union No. 302,*
  604 F.2d 1219 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*United Steelworkers of Am., AFL-CIO v. Fort Pitt Steel Casting,*
  598 F.2d 1273 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United Steelworkers of America, AFL-CIO v. Textron, Inc.,*
  836 F.2d 6 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

*Whelan v. Colgan,*
  602 F.2d 1060 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Williams v. WCI Steel Co., Inc.,*
  170 F.3d 598 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 16

*Wood v. Detroit Diesel Corp.,*
  2005 WL 3579169 (E.D. Mich. Dec. 30, 2005),
  *aff'd* 213 F. App'x 463 (6th Cir. Jan. 17, 2007) . . . . . . . . . . . . . . . . . . . . . 5, 15

*Yolton v. El Paso Tenn. Pipeline Co.,*
   435 F.3d 571 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

## STATUTES AND REGULATIONS

29 U.S.C.
   §185(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
   §1001(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
   §1002(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
   §1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   §1132(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18
   §1132(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

IRC §501(c)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## RULES

Local Rule Rule 3-13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Mack Trucks, Inc. ("Mack" or the "Company") promised to provide lifetime healthcare benefits to its retirees and their surviving spouses at Company expense under its group insurance program. Last month, however, Mack suddenly announced that it was going to make substantial reductions in benefits, effective April 1, 2008. Then just last week, Mack asserted that it has *no legal duty* to continue provide any benefits, and that it is free to reduce benefits – or, indeed, implement any changes it deems fit – upon the expiration of its current collective bargaining agreement with the union that represents its employees – the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, AFL-CIO ("UAW" or the "Union"). That agreement is set to expire at 11:59 pm on October 1, 2007. As a result, Mack now contends that it may reduce, or possibly even terminate, the healthcare benefits of retirees and surviving spouses *as early as October 2, 2007*. *Any* reduction in benefits poses irreparable harm to individuals, like Plaintiffs, who live on fixed incomes. *Beno v. Shalala*, 30 F.3d 1057, 1063 & n.10 (9th Cir. 1994). If their medical benefits are reduced, they will either have to forego necessary medical care, and thereby jeopardize their health, or give up other life necessities, such as food and utilities. *LaForest v. Former Clean Air Holding Co., Inc.*, 376 F.3d 48, 55 (2d Cir. 2004) (where medical coverage threatened, "substantial risk to plaintiffs' health[,] severe financial hardship[,] the inability to purchase life's necessities[,] and anxiety associated with uncertainty" constitute irreparable harm). Absent interim injunctive relief, Plaintiffs and the proposed class will suffer immediate, grave, and irreparable injury.

Plaintiffs are two Mack retirees who bring suit on behalf of themselves and a class of Mack retirees and surviving spouses who are covered under Mack's group health insurance plan. They bring this motion for a temporary restraining order and preliminary injunction to prevent Mack from reducing or terminating their healthcare benefits. Because Plaintiffs and the proposed class have a vested right to lifetime health care under Mack's group insurance program, Plaintiffs have an overwhelming likelihood of success on the merits of their claims that any reductions in retiree and surviving spouse medical benefits without their consent violate the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA").

1    In series of collective bargaining agreements ("CBAs") with the UAW, Mack has repeatedly

2    stated in writing that it "fully recognizes, acknowledges and hereby confirms that retiree healthcare

3    benefits for Mack-UAW employees have been and will continue to be *lifetime* benefits." In those

4    same agreements, Mack has also repeatedly stated in writing that it "has expressly agreed that

5    [healthcare coverage under its group insurance program] *will be continued at Company expense* for

6    retirees and their dependents." These agreements make clear that retirees and surviving spouses

7    have vested rights to lifetime health care at Company expense, and that the expiration of the CBA

8    between the Union and the Company on October 1, 2007 does not extinguish those *lifetime* rights.

9    Plaintiffs have an overwhelming likelihood of success on both their LMRA and ERISA

10   claims. Section 301 of the LMRA provides a federal cause of action for "[s]uits for violation of

11   contracts between an employer and a labor organization." 29 U.S.C. §185(a). As a matter of federal

12   law, an employer who promises to pay benefits for the lifetime of a retired employee must keep that

13   promise." *Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 604 (6th Cir. 1999). Because Mack has

14   promised to pay lifetime benefits for its retirees and their surviving spouses, "breaking that promise

15   is a breach of the agreement and a violation of §301." *Id.* at 605.

16   In addition, participants in a welfare benefit plan may bring suit to enforce their rights under

17   an ERISA plan, to clarify their right to future benefits under an ERISA plan, and to enjoin any

18   conduct that violates the terms of an ERISA plan. ERISA §502, 29 U.S.C. §1132. Because

19   Plaintiffs and members of the proposed class have vested rights under an ERISA plan, *viz.*,

20   Defendant Mack Health, Disability and Life Benefits for UAW Employees (the "Plan" or "Mack

21   Plan"), to lifetime healthcare benefits at Company expense, Defendants Mack and the Mack Plan

22   are barred from reducing or terminating those benefits.

23   It bears emphasis that health care is not a dispensable luxury for Plaintiffs and their families.

24   Plaintiff Robert Evitt is a 75-year old diabetic with carotid artery disease, who has undergone

25   quadruple bypass surgery. Plaintiff Joel Ortega is a 66-year old diabetic with high blood pressure,

26   who suffered a heart attack last year. Both live on fixed incomes. Any reduction in their benefits

27   inflicts irreparable harm by causing them "emotional distress, concern about potential financial

28   disaster, and possibly deprivation of life's necessities (in order to keep up insurance payments)."

1  *United Steelworkers of America, AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (affirming

2  preliminary injunction preventing company from requiring retirees to pay healthcare premiums).

3      Because Plaintiffs have an overwhelming likelihood of success on both their LMRA and

4  ERISA claims, and the balance of hardships tips strongly in their favor, the Court should issue

5  interim injunctive relief preventing Defendants Mack and the Mack Plan from imposing any

6  reductions or other changes in the healthcare coverage of retirees and surviving spouses upon the

7  expiration of the Mack-UAW collective bargaining agreement on October 1, 2007.

8                                  **FACTUAL BACKGROUND**

9      Plaintiffs are retirees of Defendant Mack.  The retirees worked for Mack, where they were

10  represented in collective bargaining by the UAW.

11      1.    *Mack's obligations under its collective bargaining agreements.*  In a series of

12  collective bargaining agreements between the UAW and Mack, Mack repeatedly promised to

13  provide retirees and their surviving spouses with lifetime healthcare benefits under the Mack Plan.

14      Since 1958, Mack and the Union have entered into a series of similarly structured collective

15  bargaining agreements, which the parties titled "Master Agreements," governing all of the Mack

16  facilities whose employees are represented by the Union.  The current Master Agreement expires at

17  11:59 pm on October 1, 2007.  Bressler Decl. at ¶¶2, 16.  It provides for pension and health

18  insurance benefits, the details of which are set forth in Appendix A and Appendix B, respectively, to

19  the Master Agreement, and are incorporated by reference therein.  2004 CBA, Arts. 22, 23, and 31

20  at 79, 97 (Bressler Decl. Exh. H).

21      The "Insurance Program," including a program for healthcare benefits, that Mack has

22  committed to provide in set forth in Appendix B.  It states:  "the Company *shall* arrange for group

23  insurance coverage as here and after provided."  2004 App. B., Art. I, Sec. 2 at B1 (Bressler Decl.

24  Exh. I) (emphasis added).

25      The agreement then goes on to describe in detail the benefits to be provided under the

26  "Hospital-Surgical-Medical-Prescription Drug-Catastrophic Medical-Dental-Vision Expense Plan"

27  that the Company "shall" arrange.  2004 App. B, Art. III, Secs. 1-12 at B29-83 (Bressler Decl. Exh.

28  I).  The "Hospital-Surgical-Medical-Prescription Drug-Catastrophic Medical-Dental-Vision

---

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, Case No. _____                    3

1   Expense Plan" that Mack has provided for is coverage pursuant to the Mack Plan. Mack is the Plan

2   sponsor and administrator. Summary Plan Description ("SPD") at 1-2 (Bressler Decl. Exh. J).

3           Eligibility for healthcare coverage under the Mack Plan is tied to eligibility for coverage

4   under the Pension Plan. The Master Agreement between Mack and the UAW uses the same

5   definition of "retiree" for purposes of healthcare benefits as for pension benefits. 2004 App. B, Art.

6   I, Sec. 3 at B3 (Bressler Decl. Exh. I). And the SPD states: "You are eligible for coverage if you are

7   a retiree of Mack."[1]

8           The Master Agreement incorporates into the agreement "letters of agreement" which

9   memorialize the parties' intent. Bressler Decl. at ¶3. Letter #16 to the current Master Agreement

10  states: "The Company fully recognizes, acknowledges and hereby confirms that retiree healthcare

11  benefits for Mack-UAW employees have been and will continue to be *lifetime* benefits." 2004

12  CBA, Letter #16 at 148 (Bressler Decl. Exh. H) (emphasis added). The parties adopted this same

13  language in each of the four Master Agreements entered into between Mack and the Union since

14  1992.[2] They also included this language in Appendix B to each of the four Master Agreements

15  executed since 1992.[3] For the court's convenience, these eight letters of agreement in which

16  Mack promised that retiree healthcare benefits were "*lifetime* benefits" are attached to this brief as

17  as Appendix A.

18          In addition to Mack's repeated and express promises that retiree healthcare benefits are

19  "lifetime benefits," the Master Agreement contains a "continuation of coverages" clause that

---

21      [1]The Master Agreement excludes from retiree healthcare benefits coverage "any employee
22  who has less than ten (10) years of credited service and retires while on a sick leave or a former
    employee entitled to or receiving a deferred vested pension." 2004 App. B., Art. III, Sec. 8(f) at
23  B75-B76 (Bressler Decl. Exh. I). Unless otherwise specified, the term "retirees" as used in this
    brief does not include retirees who are not eligible for healthcare benefits under the UAW-Mack
24  Master Agreement.

25      [2]1992 CBA, Letter #21 at 152-53 (Bressler Decl. Exh. B); 1998 CBA, Letter #18 at 148-49
26  (Bressler Decl. Exh. D); 2001 CBA, Letter #16 at 146-47 Bressler Decl. Exh. F); 2004 CBA, Letter
    # 16 at 147-48 (Bressler Decl. Exh. H).
27
        [3]1992 App. B, Letter # 7, at 189 (Bressler Decl. Exh. C); 1998 App. B, Letter #7 at B95-B96
28  (Bressler Decl. Exh. E); 2001 App. B, Letter #7 at B99-B100 (Bressler Decl. Exh. G); 2004 App. B,
    Letter #7 at B101-B102 (Bressler Decl. Exh. I).

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, Case No. _____                    4

1  describes the period during which various groups of individuals will continue to receive healthcare

2  coverage. It expressly provides: "Hospital-surgical-medical-prescription drug-catastrophic

3  medical-dental-vision expense coverage *will be continued at Company expense for retirees and*

4  *their dependents*." 2004 App. B, Art. III, Sec. 8(f) at B75 (Bressler Decl. Exh. I) (emphasis added).[4]

5  Unlike the continuation of coverage clauses for other groups, the clause for retirees and their

6  dependents does not specify a point at which healthcare coverage will terminate. *Compare, e.g.,*

7  2004 App. B, Art. III, Sec. 8(a) at B73 (Bressler Decl. Exh. I) (coverage for employees on sick leave

8  will terminate after employee has been on sick leave for period of time equal to seniority, with

9  minimum guarantee of 3-year leave period for employees hired before 1993); Sec. 8(b) at B73-74

10  (coverage for employees on leave of absence other than sick leave will terminate at end of month in

11  which leave begins; thereafter coverage except for dental and vision will continue through end of

12  approved leave).

13      Further, the bargaining history of the provision governing Company contributions to retiree

14  and surviving spouse health care sheds light on the parties' intent to create vested rights to lifetime

15  health care.

16      The agreements up to and including the 1998 agreement stated, without qualification, that

17  Company contributions are to be "equal to the *full* subscription rate or premium."[5]  In the early

18  1990s, the Financial Accounting Standards Board adopted Financial Accounting Standard ("FAS")

19  106, which required corporations to reflect the present value of estimated future costs for retirees'

20  medical benefits on their balance sheets. *Wood v. Detroit Diesel Corp.*, 2005 WL 3579169, at *1

21  (E.D. Mich. Dec. 30, 2005).  Based on Mack's expressed concern about the impact of FAS 106 on

22  its balance sheets, the parties "had lengthy discussions" about the issue during the 1992 collective

23

24

---

25  [4]This language appears in *identical* form in at least the four agreements that preceded the current agreement. *See* 1987 App. B, Art. III, Sec. 8(f) at 180 (Bressler Decl. Exh. A); 1992 App. B,

26  Art. III, Sec. 8(f) at 166 (Bressler Decl. Exh. C); 1998 App. B, Art. III, Sec. 8(f) at B71 (Bressler Decl. Exh. E); 2001 App. B, Art. III, Sec. 8(f) at B73 (Bressler Decl. Exh. G).

27

28  [5]1987 App. B, Art. III, Sec. 7(d), (e) at 175-76 (Bressler Decl. Exh. A) (emphasis added)]; 1992 App. B, Art. III, Sec. 7(d), (e) at 160-61 (Bressler Decl. Exh. C) (emphasis added); 1998 App. B, Art. III, Sec. 7(d), (e) at B65-B67 (Bressler Decl. Exh. E).

1  bargaining negotiations. 1992 App. B, Letter #7 at 189 (Bressler Decl. Exh. C). These discussions

2  are summarized in Letter #7 to the 1992 Appendix B:

> During our 1992 negotiations, the parties had lengthy discussions concerning the significant
> negative impact that the new accounting standard for post retirement benefits (FAS 106)
> would have on Mack Trucks' financial situation, and the potential serious consequences this
> in turn could have on the ability of its parent company to obtain necessary capital. . . . After
> reviewing various alternatives to minimize the negative impact of these financial accounting
> standards, the parties agreed to the *so-called "cap"* approach contained in Appendix B of
> the Health Insurance Program. [*Id.* (emphasis added).]

7          In light of FAS 106, the parties agreed for the first time in the 1992 negotiations to include

8  FAS limits, or what the parties referred to as "so-called 'cap[s],'" on Company contributions to

9  healthcare coverage for retirees and surviving spouses. 1992 App. B, Art. IV, Sec. 7(D) at 179-80

10  (Bressler Decl. Exh. C). The "so-called 'caps'" identified a specific amount, for FAS 106 purposes,

11  that the Company would contribute each year of the collective bargaining agreement toward retiree

12  coverage, but the parties made pellucidly clear that by adopting these FAS limits, they were in no

13  way altering – and indeed, they reaffirmed – the Company's commitment to provide lifetime retiree

14  health benefits. Letter #7 "state[d] unequivocally" the parties' intent in adopting the "so-called

15  'cap' approach":

> The aforementioned 'caps' were established for the purpose of minimizing the financial
> impact of FAS 106 while still complying with the purpose and intent of such standard. . . .
> The Company *fully recognizes, acknowledges and hereby confirms that retiree health care
> benefits for Mack-UAW employees have been and will continue to be lifetime benefits,* and
> that the establishment of these 'caps' in no way modifies or negates this commitment.

19  1992 App. B, Letter #7 at 189 (Bressler Decl. Exh. C) (emphasis added). Letter #7 was re-adopted

20  in identical form in the 1998 agreement. 1998 App. B, Letter #7 at B95 (Bressler Decl. Exh. E). It

21  makes clear that despite the FAS limits the parties intended to preserve the Company's longstanding

22  obligation to provide lifetime retiree and surviving spouse healthcare benefits at Company expense.[6]

23

24

25

26
_____

27          [6]The term "cap" was used only in quotation marks. And even after the parties adopted "so-
called 'caps'" in the 1992 agreement, they carried forward the language from prior agreements
requiring the Company to make a contribution "equal to the *full* subscription rate or premium."

28  1992 App. B, Art. III, Sec. 7(d), (e) at 160-61 (Bressler Decl. Exh. C) (emphasis added); 1998 App.
B, Art. III, Sec. 7(d), (e) at 65-66 (Bressler Decl. Exh. E).

1    In 2001, the parties again agreed to FAS limits, 2001 App. B, Art. IV, Sec 7(d) at B87

2  (Bressler Decl. Exh. G), and also adopted language requiring the Company to pay for retirees and

3  surviving spouses "the full subscription rate or premium in an amount not to exceed the CAPS."

4  2001 App. B, Art. III, Sec 7(d), (e) at B66-B68 (Bressler Decl. Exh. G).  Notwithstanding the

5  language stating that the Company's contribution was "not to exceed the CAPS," the parties

6  memorialized their intent that the Company would to continue to pay the full expense of retiree and

7  surviving spouse health care.  Letter #7 explains that "the Company has *expressly agreed* that

8  hospital-surgical-medical-prescription drug-catastrophic medical-dental-vision expense coverage

9  *will be continued at Company expense* for retirees and their dependents." 2001 App. B, Letter #7 at

10  B99 (Bressler Decl. Exh. G) (emphasis added).  "After lengthy discussions concerning the

11  appropriate mechanism to fulfill the Company's *express commitment to cover the expense of retiree*

12  *healthcare*," the parties agreed that the Company would make monthly contributions up to the

13  amount of the so-called "caps" toward their coverage and simultaneously establish a trust fund, the

14  "exclusive purpose" of which was to "pay[] *all* charges under the hospital-surgical-medical-

15  prescription drug-catastrophic medical-dental-vision expense coverages incurred by retired

16  employees and their dependents . . . or surviving spouses . . . that exceed the CAPS." *Id*. at B99-

17  B100 (emphasis added).  Thus, the Company agreed to create a trust fund, in particular, a Voluntary

18  Employee Benefit Association ("VEBA"), pursuant to IRC section 501(c)(9), and to contribute

19  annual installments of $10 million during the three-year life of the 2001 agreement.  2001 App. B,

20  Art. III, Sec 7(d), (e) at B66-B68 (Bressler Decl. Exh. G).

21    In addition to reaffirming its express commitment to pay the full expense of retiree health

22  care, the Company also expressly affirmed that retiree healthcare benefits were to be *lifetime*

23  benefits:  "The Company fully recognizes, acknowledges and hereby confirms that retiree healthcare

24  benefits for Mack-UAW employees have been and will continue to be *lifetime* benefits, and that the

25  understandings outlined herein in no way modify nor negate this commitment." 2001 App. B, Letter

26  #7 at B100 (Bressler Decl. Exh. G) (emphasis added).

27    The current 2004 agreement, like the 2001 agreement, includes specific amounts that the

28  Company is required to contribute to the VEBA Trust each year during the three-year life of the

1   agreement, and expressly requires Mack to contribute "such additional funds as are necessary to

2   ensure that the VEBA Trust will not become insolvent during the term of the 2004-07 Master

3   Agreement." 2004 App. B, Art. III, Sec. 7(d), (e) at B69-70 (Bressler Decl. Exh. I).  The current

4   2004 agreement, like the 2001 agreement, also provides that the Company is required to pay for

5   retirees and surviving spouses "the *full* subscription rate or premium in an amount not to exceed

6   the" so-called "caps," but again provides that the "exclusive purpose" of the VEBA Trust is to

7   "pay[] all charges" of retiree and surviving spouse health care that exceed the so-called "caps." *Id.*

8   Finally, the 2004 agreement again adopts Letter #7, in which the Company "expressly agreed" that

9   healthcare coverage for retirees and their dependents "will be continued at Company expense" and

10  that such coverage has "been and will continue to be *lifetime* benefits."  2004 App. B, Letter #7 at

11  B101-B102 (Bressler Decl. Exh. I) (emphasis added); *see also* 2004 CBA, Letter #16 at 147-49

12  (Bressler Decl. Exh. H).

13      2.   *Mack's August 16, 2007 letter announcing reductions in healthcare benefits.*  On

14  August 16, 2007, Mack sent a letter to retirees and their surviving spouses who currently receive

15  health care under the Mack Plan announcing that it intended to reduce their healthcare benefits, and

16  that it would implement these reductions on April 1, 2008.  Mack Letter to Retirees (Doyle Decl.

17  Exhs. A, B).[7]

18      The details of the announced reductions vary somewhat based on date of retirement and

19  whether the individual is Medicare-eligible.  But they are all indisputably reductions in existing

20  benefits levels, and the impact of the proposed changes on all retirees and surviving spouses is clear

21  and uniform – to increase the cost of their health care.  The Company's cover letter to retirees and

22  surviving spouses states that the purpose of the changes is to "requir[e] our bargaining unit retirees

23  to pay a larger share of their health care costs."  Mack Letter to Retirees (Doyle Decl. Exh. A at 1;

24  Exh. B at 2).

25      All of the announced reductions will have dramatic, negative impacts on retirees and

26  surviving spouses.  For those who retired on or after January 1, 1992, and who are eligible for

27  _____

28      [7]Mack has stated that it does not intend to implement any changes with respect to dental and
    vision programs.  Mack Letter to Retirees (Doyle Decl. Exh. A at 2; Exh. B at 3).

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, Case No. _____                    8

1  Medicare, the Company will *eliminate group coverage entirely*. *Id.* (Decl. Exh. B at 2). Instead,

2  Mack proposes to provide a $3,000 stipend to purchase substitute insurance. But as Sarah Doyle, a

3  benefits consultant, who has worked in the field of healthcare design and delivery for over 25 years

4  and more recently has worked for the UAW, explains: "This $3,000 reimbursement is by no means

5  an adequate substitute for the coverage they have under the Mack Plan and will result in

6  significantly inferior medical coverage. It is simply not possible for an individual to purchase on the

7  market, with only $3,000, coverage that would be remotely comparable to what retirees and

8  surviving spouses currently have under the Mack Plan." Doyle Decl. at ¶7. To maintain the level of

9  coverage they have now, a retiree or surviving spouse would have to pay $8,010 in annual premiums

10 and out-of-pocket expenses – $5,010 more than the $3,000 reimbursement that Mack is offering. *Id.*

11 at ¶16. Given medical inflation, which has averaged 9% to 12% per year over the last five years, the

12 shortfall would be even starker in future years. *Id.* at ¶¶11, 16.

13     The manifest inadequacy of Mack's proposed stipend is further illustrated by the amount the

14 Company itself pays for Medicare-covered retirees. As Ms. Doyle explains, "the Company has far

15 stronger purchasing power than an individual retiree will have in seeking coverage on the open

16 individual insurance market." *Id.* at ¶8. "Anytime an individual is taken out of a group healthcare

17 coverage situation and placed out in the open individual insurance market, they are going to be

18 subject to underwriting preferences that mandate a higher cost to those who need the coverage the

19 most: the older, less healthy populations." *Id.* at ¶9. In 2006, the Company, with its substantial

20 purchasing power, paid $5,623 per person per year for coverage for Medicare covered retirees under

21 the Mack Plan. *Id.* at ¶8. Even this amount is $2,623 more than the $3,000 reimbursement Mack

22 proposes to provide, and does not account for the inferior purchasing power of elderly retirees with

23 serious medical conditions or medical inflation.

24     As a result, the retirees and surviving spouses whom Mack seeks to eject from the Plan face

25 thousands of dollars per year in increased healthcare costs, or stark reductions in benefits.

26     For all others, the Company will maintain coverage under its existing Plan, but is instituting

27 entirely new or increased charges for premiums, deductibles, and co-pays for office and emergency

28 room visits. Mack Letter to Retirees (Doyle Decl. Exh. A at 1; Exh. B at 2-3). By increasing the

1   costs of their health care, Mack will force these individuals to give up health care, or to pay more for

2   it, leaving less for other critical expenses, like medical care for a spouse or food. Doyle Decl. at ¶6.

3          All of these changes will inflict grave harm on Plaintiffs and members of the proposed class

4   of retirees and their surviving spouses by substantially increasing the cost of their health care.

5   Plaintiff Joel Ortega worked for Mack for 40 years, before he retired in 2006. He is a 66-year old

6   diabetic with high blood pressure, who suffered a heart attack last year. He and his 74-year old wife

7   Carmen are covered under the Mack Plan. Mr. Ortega's medical conditions require that he regularly

8   visit his primary care physician, his cardiologist, and other specialists. He and his wife take

9   numerous prescription medications. Ortega Decl. at ¶¶11, 12. Plaintiff Robert Evitt, also a long-

10  time Mack employee, retired in 1993. He is a 75-year old diabetic with carotid artery disease, who

11  has undergone quadruple bypass surgery. Given his medical condition, he must visit his doctors

12  regularly. He and his 76-year old wife Loretta are covered under the Mack Plan. Both take multiple

13  prescription medications. Evitt Decl. at ¶¶11, 12.

14         Given their age, they are both eligible for Medicare,[8] and they both retired on or after

15  January 1, 1992. Under Mack's announced reductions, they will lose group coverage under the

16  Plan. Plaintiffs Ortega and Evitt survive on fixed incomes. They worked for Mack for years, based

17  on the understanding that they would receive lifetime healthcare benefits. They made their financial

18  plans based on this understanding. If Mack strips them of group coverage, they will have to pay

19  *thousands of dollars* more per year. Doyle Decl. at ¶16. Increasing their medical costs would put

20  an enormous strain on their fixed budgets. Evitt Decl. at ¶¶10, 13; Ortega Decl. at ¶14. But given

21  their serious medical conditions, they cannot give up medical care without jeopardizing their health.

22  Evitt Decl. at ¶11; Ortega Decl. at ¶11. Mack's announced reductions in their benefits is causing

23  them extreme anxiety. Ortega Decl. at ¶¶ 13, 14; Evitt Decl. at ¶ 13.

24         3.     *Mack's new position that it has no duty to provide retiree and surviving spouse*

25  *health care whatsoever, effective October 2, 2007.* Although Mack asserted in its August 16, 2007,

26  letter to retirees and surviving spouses that it was not going to reduce healthcare benefits until April

27  _____

28         [8]As a general matter, an individual is eligible for Medicare once they reach the age of 65, or
    become eligible earlier in life due to disability. Doyle Decl. at ¶3.

1  1, 2008, the Company is now threatening to reduce, or potentially even terminate, benefits as early

2  as October 2, 2007.

3       On September 7, 2007, Mack filed a declaratory relief action in the Eastern District of

4  Pennsylvania. In the Complaint in that action, Mack seeks a declaration that it "owes no legal duty"

5  to retirees and surviving spouses to continue their healthcare coverage after its current collective

6  bargaining agreement with the UAW expires on October 1, 2007, and that, after October 1, 2007, it

7  is "free to implement" the reductions it announced in its August 16, 2007 letter, or any other

8  reductions to retiree and surviving spouse healthcare coverage. *See* Complaint at Counts One and

9  Two (pp. 9-10), in *Mack Trucks, Inc. v. International Union, United Automobile, Aerospace &*

10 *Agricultural Implement Workers of America-UAW, et al.*, (E.D. Pa. 07-3737).[9] Indeed, if, as Mack

11 contends, it owes no legal duty to continue healthcare coverage after October 1, 2007, Mack could

12 terminate all benefits effective October 2, 2007.

13      Although Mack has yet to serve the Union in the declaratory judgment action, it orally

14 informed the Union last week that it had filed the action. Bressler Decl. at ¶20. It named as

15 defendants in that suit the Union, five of its local unions, and a single Mack retiree, whom Mack

16 seeks to designate as a representative of a defendant class. *See* Complaint in *Mack v. UAW* (E.D.

17 Pa. 07-3737).

18      Mack's declaratory judgment action now hangs over Plaintiffs Evitt and Ortega like a sword

19 of Damocles. By filing suit in the Eastern District of Pennsylvania, Mack effectively seeks to

20 adjudicate Plaintiffs' rights to health care, but without notifying Plaintiffs of its effort to do so,

21 without Plaintiffs' participation in this suit, and in a distant court. Although Mack has brought its

22 declaratory judgment action in the Eastern District of Pennsylvania as a defendant class action, the

23 defendant class is not yet certified. In that action, Mack named only a single Mack retiree, seeking

24 to require that individual to represent the class. Plaintiffs do not know how Mack selected this

25 single individual to represent the entire class, or whether the individual whom Mack selected would

26 even be willing to serve as a representative of the class. Plaintiffs are elderly retirees with serious

27

28   _____

[9] Per Local Rule 3-13, Plaintiffs have filed concurrently with this brief a Notice of Pendency of Other Action of Proceeding. A copy of the Complaint in *Mack v. UAW* is attached to that Notice.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, Case No. _____                    11

1  medical conditions. They live in this judicial district, and should not be haled into a distant court to

2  protect their vested rights to health care. For these and the other reasons stated in Plaintiffs' Notice

3  of Pendency of Other Action of Proceeding, filed herewith, this action should proceed in this

4  Judicial District.

5       Equally to the point, Defendant's Pennsylvania declaratory judgment action makes clear the

6  severity and imminence of harm in this case: Given the legal position that Defendant has recently

7  staked out, Defendant now contends that it may reduce – or entirely terminate – Plaintiffs' benefits

8  as early as October 2, 2007.

9  **STANDARD OF REVIEW**

10       A preliminary injunction is appropriate when a plaintiff demonstrates "either: (1) a

11  likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious

12  questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's]

13  favor." *Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007) (original alteration) (internal

14  quotation marks omitted). "[A]dvancement of the public interest" is also a factor that weighs in

15  favor of granting a preliminary injunction. *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d

16  781, 786 (9th Cir. 2001). The standard for issuing a temporary restraining order is identical to the

17  standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush &*

18  *Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

19  **ARGUMENT**

20  I.    **PLAINTIFFS HAVE AN OVERWHELMING LIKELIHOOD OF SUCCESS ON
THE MERITS OF THEIR CLAIMS THAT DEFENDANTS MAY NOT ELIMINATE**

21       **OR REDUCE THEIR VESTED RIGHT TO LIFETIME HEALTHCARE BENEFITS.**

22       Mack has unequivocally promised in the Mack-UAW Master Agreement to provide retirees

23  and surviving spouses with lifetime group health insurance coverage at Company expense. Because

24  this right is fully vested, Mack cannot now terminate, reduce, or otherwise change these benefits

25  without the consent of the retirees and surviving spouses, and its effort to do so violates both the

26  LMRA and ERISA.

27

28

**A.    Because Mack promised to provide lifetime healthcare benefits for retirees and surviving spouses in its labor agreements with the Union, any reduction or termination of those benefits violates the LMRA.**

Over the course of its 49-year collective bargaining relationship with the Union, Mack has repeatedly and expressly promised to provide *lifetime* healthcare benefits at company expense to retirees and surviving spouses. "As a matter of federal law, an employer who promises to pay benefits for the lifetime of a retired employee must keep that promise. If such a promise appears in a collective bargaining agreement . . . , breaking that promise is a breach of the agreement and a violation of §301." *Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 604-05 (6th Cir. 1999). Mack's promise to provide lifetime benefits outlives the current collective bargaining agreement, and it remains contractually obligated to provide these benefits after the contract's expiration.[10]

As the Ninth Circuit has explained, "if the pensioners' medical insurance constituted a vested benefit, that benefit could not be ended without the petitioners' consent." *Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1223 (9th Cir. 1984). "If each collective bargaining agreement unambiguously limited medical benefits to the term of the agreement, no benefits were vested." *Id.* But as the Ninth Circuit has made clear, a medical insurance program created by a collective bargaining agreement can "outlast" the term of the agreement that created it. *Id.; see also Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 580 (6th Cir. 2006) ("[G]eneral durational provisions [in CBAs] only refer to the length of the CBAs and not the period of time contemplated for retiree benefits." (internal quotation marks and original alteration omitted)). Indeed, "[w]hen the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." *Int'l Union v. Yard-Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1984).

In this case, no resort to any "inference" is even necessary. Far from unambiguously limiting retiree and surviving spouse medical benefits to the term of the Mack-UAW Master Agreement, the plain language of the contract makes clear that Plaintiffs and the proposed class

---

[10]Section 301 of the LMRA creates a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. §185(a). As third-party beneficiaries to the labor agreement, "retirees may sue under §301 to enforce" their retirement rights. *Turner v. Local Union No. 302*, 604 F.2d 1219, 1224 n.4 (9th Cir. 1979).

1  have vested rights to lifetime group health insurance coverage at Company expense. Because Mack

2  promised that retiree health care is a "lifetime benefit," the expiration of the current agreement

3  between Mack and the Union does not and cannot extinguish these rights. The current Master

4  Agreement between Mack and the Union expressly states:

> The Company fully recognizes, acknowledges and hereby confirms that retiree health care
> benefits for Mack-UAW employees have been and will continue to be *lifetime* benefits, and
> that the understandings outlined herein in no way modify nor negate this commitment.

7  2004 CBA, Letter #16 at 148 (Bressler Decl. Exh. H) (emphasis added). The Company also

8  expressly acknowledged "that retiree health care benefits for Mack-UAW employees have been and

9  will continue to be *lifetime* benefits" in Appendix B, which is incorporated by reference into the

10 Master Agreement.[11] In addition, Mack agreed to identical or virtually identical "lifetime" language

11 in the 1992, 1998, and 2001 Master Agreements and according Appendices B.[12] Moreover, in those

12 same letters of agreement promising *lifetime* benefits, "the Company expressly agreed that hospital-

13 surgical-medical-prescription drug-catastrophic medical-dental-vision expense coverage," *i.e.*,

14 coverage under Mack's group insurance program, "will be continued at Company expense for

15 retirees and their dependents."[13]

16      The Company's repeated and express promise to provide "lifetime benefits" unequivocally

17 demonstrates that the parties intended to created vested rights to healthcare coverage under Mack's

18 group insurance program at Company expense. "These collectively-bargained-for statements"

19 regarding "lifetime" benefits "would hold little meaning if the benefits could be unilaterally revoked

20 by [the Company] after expiration of the CBA." *Agnotti v. Rexam, Inc.*, 2006 WL 1646134, at *9

21 (N.D. Cal. June 14, 2006) (issuing preliminary injunction against employer termination of retiree

22

23

24      [11]2004 CBA, Art. 23 at 79 (Bressler Decl. Exh. H); 2004 App. B, Art. III, Secs. 1-12 at B29-B83 (Bressler Decl. Exh. I) (emphasis added).

25

26      [12]1992 CBA, Letter #21 at 152-53 (Bressler Decl. Exh. B); 1992 CBA, Letter #7 at 189 (Bressler Decl. Exh. C); 1998 CBA, Letter #18 at 148-49 (Bressler Decl. Exh. D); 2001 CBA, Letter #16 at 146-47 Bressler Decl. Exh. F); 2001 App. B, Letter #7 at B99 (Bressler Decl. Exh. G).

27

28      [13]2004 CBA, Letter #16 at 147 (Bressler Decl. Exh. H); 2004 App. B, Letter #7 at B101 (Bressler Decl. Exh. I); *see also* 2001 CBA, Letter #16 at 146 (Bressler Decl. Exh. F); 2001 App. B, Letter #7 at B99 (Bressler Decl. Exh. G).

1    healthcare benefits); *see also Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 246, 251 (6th Cir. 1996)

2    (finding benefits vested where letter from employer stated: "all of your Health Care coverages,

3    except vision care, will be continued for the rest of your life without cost to you"); *Devlin v. Empire*

4    *Blue Cross and Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (reversing summary judgment for

5    employer on question whether benefits vested in light of "lifetime" language).

6        In addition to Mack's express promise to provide "lifetime" retiree health care, the Master

7    Agreement with the Union contains numerous other manifestations of the parties' intent to create

8    vested rights to healthcare benefits. First, the parties' intent to continue retiree healthcare coverage

9    past expiration of the Master Agreement is memorialized in a "Continuation of Coverages" clause.

10   It states that coverage under the Mack Plan "*will be continued* at Company expense for retirees and

11   their dependents." 2004 App. B, Art. III, Sec. 8(f) at B75 (Bressler Decl. Exh. I) (emphasis

12   added).[14] Numerous courts have relied on similar "Continuation of Coverages" clauses to conclude

13   that the parties intended to vest lifetime healthcare benefits. *See, e.g., McCoy v. Meridian Auto.*

14   *Sys., Inc.*, 390 F.3d 417, 419 (6th Cir. 2004) (affirming issuance of preliminary injunction

15   restraining employer from terminating retiree healthcare benefits where agreement provided that

16   healthcare coverage for retirees "shall be continued"); *see also id.* at 422 (noting that language of

17   agreement "is virtually identical to the agreement at issue in *Golden* [*v. Kelsey-Hayes Co.*, 73 F.3d

18   648 (6th Cir.1996)], in which this court held that retirement-health benefits vested upon

19   retirement"); *Smith v. ABS Industries, Inc.*, 890 F.2d 841, 846 (6th Cir. 1989) (finding rights vested

20   where, *inter alia*, language stated, "Benefits will continue for retirees"); *Wood v. Detroit Diesel*

21   *Corp.*, 2005 WL 3579169, at *3-4 (E.D. Mich. Dec. 30, 2005) (issuing preliminary injunction

22   against employer reductions in retiree healthcare benefits where "Continuation of Coverages" clause

23   provided that healthcare coverage for retirees "shall be continued"), *aff'd* 213 F. App'x 463 (6th Cir.

24   Jan. 17, 2007).

25

26

---

27       [14]The same promise that retiree health care "will be continued" is also found in the four prior

28   agreements. *See* 1987 App. B, Art. III, Sec. 8(f) at 180 (Bressler Decl. Exh. A); 1992 App. B, Art.
III, Sec. 8(f) at 166 (Bressler Decl. Exh. C); 1998 App. B, Art. III, Sec. 8(f) at B71 (Bressler Decl.
Exh. E); 2001 App. B, Art. III, Sec. 8(f) at B73 (Bressler Decl. Exh. G)

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, Case No. _____          15

1    Notably, unlike other groups described in the "Continuation of Coverages" section of the

2  Master Agreement, the section for retirees does not specify a durational limit. *Compare, e.g.,* 2004

3  App. B, Art. III, Sec. 8(a) at B73 (Bressler Decl. Exh. I) (coverage for employees on sick leave);

4  Sec. 8(b) at B73-74 (coverage for employees on leave of absence other than sick leave). "[T]he

5  inclusion of specific durational limitations in other provisions . . . suggests that retiree benefits, not

6  so specifically limited, were intended to survive" expiration of the collective bargaining agreement.

7  *Yolton*, 435 F.3d at 582 (internal quotation marks, citation omitted) (affirming issuance of

8  preliminary injunction against any changes in retirees' health care); *Smith*, 890 F.2d at 846 (benefits

9  vested where, *inter alia*, agreement contained "specific durational language in the case of laid-off

10  and disabled workers" but not for retirees).

11    Second, retiree healthcare coverage under the Mack Plan is tied to eligibility for pension

12  benefits.[15] "Because the . . . Agreement ties eligibility for retirement-health benefits to eligibility for

13  pension, . . . there is little room for debate that the retirees' health benefits vested upon retirement."

14  *McCoy*, 390 F.3d at 422; *see also Golden*, 73 F.3d at 656 (approving district court's reasoning that

15  "[s]ince retirees are eligible to receive pension benefits for life, . . . the parties  intended that the

16  company provide lifetime health benefits as well"); *see also Policy v. Powell Pressed Steel Co.*, 770

17  F.2d 609, 613 (6th Cir. 1985) ("[T]his court [has] recognized that normally retiree benefits are

18  vested."); *Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 605 (6th Cir. 1999) ("[W]hen the parties

19  contract for benefits which accrue upon achievement of retiree status, there is an inference that the

20  parties likely intended those benefits to continue as long as the beneficiary remains a retiree."). As

21  the Ninth Circuit explained in reversing a grant of summary judgment for an employer in a case

22  where retirees sought to protect their healthcare benefits, language that ties health insurance

23  eligibility to pension eligibility would lead employees to "view[] the related insurance also to be a

24  lifelong benefit." *Bower*, 725 F.2d at 1224.

25

26

_____

27    [15]The Master Agreement extends healthcare coverage under the Mack Plan to "retirees and
their dependents," 2004 App. B, art. III, Sec. 8(f) at B75-B76 (Bressler Decl. Exh. I), and defines

28  "retiree" to mean "an individual who has retired and is eligible for benefits . . . the Pension
Plan." 2004 App. B, Art. III, Sec. 3 at B2-3 (Bressler Decl. Exh. I).

1         Third, the contract provides for continuing coverage for dependents and surviving spouses

2   *after* the retiree's death.  2004 App. B, Art. III, Sec. 8(f) at B75-B76 (Bressler Decl. Exh. I).[16]

3   Where, as here, the parties intended for benefits to continue beyond even the life of the retiree, they

4   must have intended the benefits to continue beyond the life of the agreement.  As the Ninth Circuit

5   reasoned in *Bower*, language that "assures pensioners that, upon their death, their 'children and

6   surviving spouse may continue to be covered'" suggests that retirement benefits were "not . . .

7   limited to the duration of the collective bargaining agreement."  *Bower*, 725 F.2d at 1224.

8         Fourth, *unlike* cases in which courts have found retiree benefits *not* to be vested, the Master

9   Agreement lacks a "reservation of rights" clause that expressly and broadly preserves company

10  discretion to terminate or modify benefits.  *Cf. Turner v. Local Union No. 302*, 604 F.2d 1219, 1225

11  & n.8 (9th Cir. 1979) (health and welfare benefits were not vested rights where agreement expressly

12  granted trustees discretion to decrease benefits and no document advised retiree that "welfare

13  benefits would be paid for the rest of his life"); *Krishan v. McDonnell Douglas Corp.*, 873 F. Supp.

14  345, 352-53 (C.D. Cal. 1994) (holding that medical benefits were not vested where SPD included

15  provision reserving to the employer "the right to amend 'any of the plans at any time'").

16        Mack now seeks to implement – without the consent of the retirees or their surviving

17  spouses – reductions in healthcare coverage that will "requir[e] [them] to pay a larger share of their

18  health care costs."  Mack Letter to Retirees (Doyle Decl. Exh. A at 1; Exh. B at 1).  Its promise to

19  provide retirees and their surviving spouses with vested, lifetime rights to coverage under Mack's

20  group health insurance program at Company expense bars Mack from implementing these, or any

21  other reductions in or termination of benefits, now or after expiration of the current Mack-UAW

22  collective bargaining agreement.  *Bower*, 725 F.2d at 1223 ("if the pensioners' medical insurance

23  constituted a vested benefit, that benefit could not be ended without the pensioners' consent").

24

25

26

---

27      [16]The SPD also states that "[i]f you should die while you are covered by the [Mack Plan,]
    and you have a surviving spouse, coverage for your eligible, enrolled surviving dependents will be

28  continued if," *inter alia*, "[a]t the time of your death, you were receiving retirement benefits."  SPD
    at 34 (Bressler Decl. Exh. J).

**B.**    **Because Plaintiffs have vested rights to lifetime medical coverage at Company expense, any reduction or termination of that coverage violates ERISA.**

Plaintiffs also have an overwhelming likelihood of prevailing on their claims that any reduction in their medical benefits violates ERISA. Plaintiffs have a vested right to lifetime Company-provided health care under the terms of an ERISA plan.

"ERISA is a remedial statute designed to protect the interests of employees in pension and welfare plans." *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501 (9th Cir. 1985). Employees may bring suit to enforce their rights under the terms of an ERISA plan, to enjoin conduct that violates a plan, and also to clarify their right to future benefits under a plan. ERISA, §502, *codified at* 29 U.S.C. §1132(a)(1), (3).[17]

Mack contends that it has no legal duty to provide retiree and surviving spouse health care once its current collective bargaining agreement with the UAW expires. As a result, Mack seeks to reduce benefits retirees and surviving spouses currently receive under their group insurance plan, and, in some instances, to strip them of coverage under the Mack Plan entirely. But these and any other changes in the healthcare coverage of retirees and surviving spouses violate an ERISA plan. Neither Defendant Mack nor Defendant Mack Plan can reduce or terminate the benefits provided to retirees and surviving spouses under the Plan because their rights to coverage are vested.

Whether retirement health benefits are vested is often a matter of contractual interpretation. *See Int'l Ass'n of Machinists & Aerospace Workers v. Masonite Corp.*, 122 F.3d 228, 231 (5th Cir. 1997); *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564 (7th Cir. 1995). As with Plaintiffs' LMRA §301 claim, federal principles of contract construction determine whether the rights of retirees and surviving spouses to Company-provided health care have vested under the ERISA plan. *Id.* For the same reasons, discussed above, that retiree and surviving spouse rights to lifetime health care have vested for §301 purposes, they have also vested for ERISA purposes. *See Alday v.*

---

[17]As a threshold matter, there can be no doubt that Plaintiffs receive medical benefits under an ERISA Plan. "Any plan or fund or program which an employer establishes or maintains for the purpose of providing medical, surgical or hospital care or benefits to its participants or their beneficiaries is defined by ERISA as a welfare benefit plan." *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1329 (9th Cir. 1996). Because the Mack Plan provides hospital, surgical, medical, catastrophic, and prescription drug care, in addition to dental and vision insurance, it is a "welfare benefit plan" as defined in 29 U.S.C. § 1002(1)(A).

1    *Raytheon Co.*, 2006 WL 2294819, at *8 (D. Ariz. July 27, 2006) (treating ERISA and §301 claims

2    as parallel). That being so, any refusal by Mack or the Mack Plan to provide the benefits set forth

3    under the Mack Plan is a breach of the Plan, notwithstanding any expiration of the Master

4    Agreement between Mack and the UAW. 29 U.S.C. §1132(a)(1), (3).

5    **II.    THE BALANCE OF HARMS OVERWHELMINGLY FAVORS ENJOINING ANY
        CHANGES TO PLAINTIFFS' MEDICAL COVERAGE PENDING A HEARING ON**

6    **THE MERITS.**

7        **A.    Plaintiffs will suffer irreparable harm if their medical coverage is reduced or
            terminated.**

8

9        Plaintiffs will suffer grave, immediate, and irreparable injury from any reduction or

10   elimination in their medical coverage. *LaForest v. Former Clean Air Holding Co., Inc.*, 376 F.3d

11   48, 55 (2d Cir. 2004) (where medical coverage is threatened, injuries such as "'substantial risk to

12   plaintiffs' health[,] severe financial hardship[,] the inability to purchase life's necessities[,] and

     anxiety associated with uncertainty'" constitute irreparable harm).

13
        Defendants seek to alter radically the status quo by "requiring [Plaintiffs and members of
14
     the proposed class] to pay a larger share of their health care costs." Mack Letter to Retirees (Doyle
15
     Decl. Exh. A at 1; Exh. B at 1). Although it initially took the position that it would not impose any
16
     reductions until April 1, 2008, Mack has now asserted that it has a right to implement reductions –
17
     or possibly even terminate benefits entirely – as early as October 2, 2007. *See* Complaint in *Mack v.*
18
     *UAW* (E.D. Pa. 07-3737). The imminence of harm is clear.
19
        Equally clear is the severity and irreparability of harm. Pursuant to the changes Mack
20
     described set forth in its August 16, 2007 letter to retirees, some retirees and surviving spouses
21
     would face increased costs to maintain their existing coverage, while others would be stripped of
22
     coverage under the Mack Plan entirely and forced to purchase their own individual insurance. Mack
23
     Letter to Retirees (Doyle Decl. Exhs. A, B). Any time an individual loses group coverage, they will
24
     be forced to face the vagaries of the individual insurance market, where underwriting preferences
25
     mandate higher costs to individuals, like Plaintiffs Evitt and Ortega, who are older and less healthy.
26
     Doyle Decl. at ¶9. As a result, the retirees and surviving spouses, whom Mack seeks to strip of
27
     coverage under the Mack Plan, will have to pay thousands of dollars a year more – even after
28
     Mack's proposed $3,000 "reimbursement" – just to maintain their existing coverage levels. *Id.* at

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION, Case No. _____

19

¶16.  Faced with these substantial healthcare cost increases, retirees and surviving spouses will either have to forego health care, or give up other life necessities to pay for health care.  This stark choice between increased healthcare costs and foregoing medical attention is the same dilemma faced by those retirees and surviving spouses whom Defendants do not propose to eject from the Plan, but who will nonetheless face increased costs under the announced changes.

Of even greater concern, Mack has now taken the position in its declaratory judgment action that once the current Mack-UAW agreement expires, at 11:59 pm on October 1, 2007, it has *no duty* whatsoever to provide retirees and surviving spouses with any medical coverage, and is free to implement *any* changes in retiree healthcare coverage. *See* Complaint in *Mack v. UAW* (E.D. Pa. 07-3737).  This could mean *wholesale elimination* of all coverage, without even any "reimbursement."

"[T]he threatened termination of benefits such as medical coverage for workers and their families obviously raise[s] the spectre [sic] of irreparable injury." *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979).  Any reduction in benefits poses irreparable harm to individuals, like Plaintiffs, who live on fixed incomes.  *See Beno v. Shalala*, 30 F.3d 1057, 1063 & n.10 (9th Cir. 1994); Evitt Decl. at ¶ 5; Ortega Decl. at ¶ 5.

Mr. Evitt requires regular medical care due to his diabetes, carotid artery disease, and history of heart failure; limiting his doctors' visits or foregoing his prescription medications would endanger his health.  Evitt Decl. at ¶11.  Mr. Ortega, likewise, must visit his doctors regularly due to the heart attack he suffered in 2006 and takes seven life-saving medications.  Ortega Decl. at ¶11.  Any increases in the cost of their medical coverage – let alone the thousands of dollars of increased costs they will face if they are stripped of coverage under the Mack Plan and forced to purchase individual insurance – may render necessary medical attention unaffordable.  Plaintiffs will then be forced to choose between medical care and other life necessities.  *Beltran v. Meyers*, 677 F.2d 1317, 1332 (9th Cir. 1982) (finding sufficient risk of irreparable injury when plaintiffs showed that challenged rule would deny them "needed medical care"); *United Steelworkers of Am., AFL-CIO v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979) ("[S]urely the possibility that a worker would be denied adequate medical care as a result of having no insurance would constitute 'substantial and irreparable injury.'"); *Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261, 1268 (W.D.

Mich. 1999) (irreparable harm in light of "the distinct possibility that retirees living on such limited means might chose to forego necessary medical treatment if they are required to pay co-pays and deductibles which are obviously well outside their means"); Evitt Decl. at ¶13; Ortega Decl. at ¶14.

In addition, Plaintiffs are experiencing anxiety over the stark financial dilemma they will face should their coverage be reduced or eliminated. *See United Steelworkers of Am. v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (affirming district court's finding of irreparable harm because plaintiff retirees "would likely suffer emotional distress, concern about potential financial disaster, and possibly deprivation of life's necessities (in order to keep up in insurance payments)"); Evitt Decl. at ¶¶9, 13; Ortega Decl. at ¶¶13, 14.

Nor can there be any doubt that members of the proposed class will also suffer these same irreparable injuries. As the First Circuit explained in *Textron*,

> (1) most retired union members are not rich, (2) most live on fixed incomes, (3) many will get sick and need medical care, (4) medical care is expensive, (5) medical insurance is, therefore, a necessity, and (6) some retired workers may find it difficult to obtain medical insurance on their own while others can pay for it only out of money that they need for other necessities of life.

836 F.3d at 8. Plaintiffs and members of the proposed class will therefore suffer severe and immediate irreparable injury absent interim injunctive relief.

**B.    Defendant Mack Trucks will not suffer real harm if it is enjoined from reducing or terminating Plaintiffs' medical benefits.**

No immediate or irreparable harm will befall Defendant Mack Trucks if the Court enjoins the company from changing Plaintiffs' medical benefits pending a hearing on the merits of Plaintiffs' claims under the LMRA and the ERISA.

The only cost to Mack of not altering the benefits it has long provided to retirees and surviving spouses is the cost it is already obligated to bear under the terms of the 2004 Master Agreement and Appendix B. This does not constitute a financial hardship that would tip the equitable scales in its direction. *See Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996) (affirming district court's finding that company would not suffer financial hardship if enjoined from imposing co-pays and deductibles when it "had been funding these benefits for the previous six years" without contributions from plan beneficiaries). In contrast, the harm to Plaintiffs is the risk to their health, and the resulting social and economic consequences of being forced to choose

1  between buying basic necessities or crucial medications and medical services. "Faced with a

2  conflict between financial concerns and preventable human suffering, . . . the balance of hardships

3  tips decidedly in plaintiffs' favor." *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (internal

4  quotation marks, brackets, and alterations omitted); *see also Newton-Nations v. Rogers*, 316 F.

5  Supp. 2d 883, 888 (D. Ariz. 2004) (balance of harms weighed in retiree plaintiffs' favor when they

6  had "multiple medical costs, scarce financial resources, and due to the fact that they have relied on

7  the [terms of the previous benefits plan]").

8      The Court's balancing analysis is also informed by the public interest objectives of the

9  ERISA, which seeks to protect working men and women from abuses in the administration of

10  employee benefit plans. 29 U.S.C. § 1001(b); *see also Blau v. Del Monte Corp.*, 748 F.2d 1348,

11  1356 (9th Cir. 1984), *abrogated on other grounds by Firestone Tire & Rubber Co. v. Bruch*, 489

12  U.S. 101 (1989) ("ERISA seeks to safeguard the well-being and security of working men and

13  women and to apprise them of their rights and obligations under any employee benefit plan."); *id.*

14  (noting that "ERISA was enacted to guard[ against evils such as] insecurity, lack of knowledge, and

15  inability to police plan administration"). Enjoining Mack from violating its contractual promise to

16  provide lifetime retiree health care will also further Congress' intent in enacting Section 301 of the

17  LMRA to "assur[e] the enforceability by federal courts of collective bargaining agreements between

18  employers and labor unions." *Dist. 2 Marine Engineers Beneficial Ass'n v. Grand Bassa Tankers,*

19  *Inc.*, 663 F.2d 392, 395-96 (2d Cir. 1981).

20      Here, because Class members may be forced to forego health care, to which they have a

21  vested lifetime right under the UAW-Mack Master Agreement, the public interest will be served by

22  issuance of an injunction pending resolution of the merits Plaintiffs LMRA and ERISA claims

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, the Court should issue interim injunctive relief barring Defendants from implementing any reductions or termination in the coverage currently provided under Mack's group insurance plan pending a resolution on the merits of Plaintiffs' LMRA and ERISA claims.

Date:    September 20, 2007

Respectfully submitted,

FRED H. ALTSHULER
LINDA LYE
JAMIE L. CROOK
ALTSHULER BERZON LLP

By: _____
     Linda Lye

*Attorneys for Plaintiffs Robert Evitt and Joel Ortega, and the proposed Plaintiff Class*

# APPENDIX A

Letter #21

October 29, 1992

Mr. Bill Casstevens
Secretary-Treasurer and Director
UAW Mack Trucks Department
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re: Retiree Health Care Benefits

During our 1992 negotiations, the parties had lengthy discussions concerning the significant negative impact that the new accounting standard for post retirement benefits (FAS 106) would have on Mack Trucks' financial situation, and the potential serious consequences this in turn could have on the ability of its parent company to obtain necessary capital, not only from traditional sources but also through public equity offerings it might otherwise choose to undertake. After reviewing various alternatives to minimize the negative impact of these financial accounting standards, the parties agreed to the so-called "cap" approach contained in Appendix B of the Health Insurance Program.

It is the purpose of this letter to state unequivocally that:

(1) The aforementioned "caps" were established for the purpose of minimizing the financial impact of FAS 106 while still complying with the purpose and intent of such standard;

(2) The Company and the Union both recognize the need to control health care cost, while at the same time providing quality professional care. It is understood that we will work jointly to control the cost impact on the Corporation;

(3) The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the establishment of these "caps" in no way modifies or negates this commitment.

Very truly yours,

William C. Craig
Executive Vice President
Administration

The April 15, 1993 Memorandum of Agreement further addresses the issue of retiree health care.

Exhibit B to
Bressler Declaration

LETTER # 6

October 28, 1992

Mr. Bill Casstevens
UAW Secretary, Treasurer and Director
UAW Mack Trucks Department
Solidarity House 8000 East Jefferson Avenue
Detroit, Michigan 48214

Re: U.S. Health Care System Concerns

Dear Mr. Casstevens,

Mack and the UAW have long recognized the major problems we jointly confront with the U.S. health care system. The Company and the UAW share a serious concern about the high cost of the health care system and the large number of uninsured. The high cost of health expenditures diverts corporate funds from other business priorities that will enable Mack to compete more effectively in the market place. Despite the Company's and UAW's efforts to manage our health care programs offered to members of our Mack family, Company health care costs have continued to increase at unacceptable rates. Indeed, the increasing amount of national resources allocated to health care, at the expense of other national priorities, adversely impacts the nation's ability to compete with other industrialized countries.

Both Mack and the UAW share the common objective for a high quality health care delivery system within our nation that is accessible to all and which functions in a cost effective manner. In this regard, Mack and the UAW jointly agree to support approaches directed towards achieving prompt and lasting private sector and national policy solutions which will assure high quality care to all individuals. Such approaches should include strong cost containment, equitable financing, and appropriate quality assurance mechanisms.

Very truly yours,
Mack Trucks, Inc.

W. C. Craig
Executive Vice President
Administration

188

---

LETTER # 7

October 29, 1992

Mr. Bill Casstevens
Secretary, Treasurer and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re: Retiree Health Care Benefits

Dear Mr. Casstevens:

During our 1992 negotiations, the parties had lengthy discussions concerning the significant negative impact that the new accounting standard for post retirement benefits (FAS 106) would have on Mack Trucks' financial situation, and the potential serious consequences this in turn could have on the ability of its parent company to obtain necessary capital, not only from traditional sources but also through public equity offerings it might otherwise choose to undertake. After reviewing various alternatives to minimize the negative impact of these financial accounting standards, the parties agreed to the so-called "cap" approach contained in Appendix B of the Health Insurance Program.

It is the purpose of this letter to state unequivocally that:

(1) The aforementioned "caps" were established for the purpose of minimizing the financial impact of FAS 106 while still complying with the purpose and intent of such standard.

(2) The Company and the Union both recognize the need to control health care cost, while at the same time providing quality professional care. It is understood that we will work jointly to control the cost impact on the Corporation;

(3) The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the establishment of these "caps" in no way modifies or negates this commitment.

Very truly yours,
MACK TRUCKS, INC.

William C. Craig
Executive Vice President
Administration

189

Exhibit C to
Bressler Declaration

Letter #18

May 26, 1998

Mr. Jack Laskowski
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Laskowski:

## Re:  Retiree Health Care Benefits

During our 1992 negotiations, the parties had lengthy discussions concerning the significant negative impact that the new accounting standard for post retirement benefits (FAS 106) would have on Mack Trucks' financial situation, and the potential serious consequences this in turn could have on the ability of its parent company to obtain necessary capital, not only from traditional sources but also through public equity offerings it might otherwise choose to undertake.   After reviewing various alternatives to minimize the negative impact of these financial accounting standards, the parties agreed to the so-called "cap" approach contained in Appendix B of the Health Insurance Program.

It is the purpose of this letter to state unequivocally that:

(1)    The aforementioned "caps" were established for the purpose of minimizing the financial impact of FAS 106 while still complying with the purpose and intent of such standard;

(2)    The Company and the Union both recognize the need to control health care cost, while at the same time providing quality professional care.  It is understood that we will work jointly to control the cost impact on the Corporation;

(3)    The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the establishment of these "caps" in no way modifies or negates this commitment.

148

Very truly yours,

S. L. Torrence
Executive Vice President
Administration

Exhibit D to
Bressler Declaration

149

LETTER #6

May 27, 1998

Mr. Jack Laskowski
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re: U.S. Health Care System Concerns

Dear Mr. Laskowski:

Mack and the UAW have long recognized the major problems we jointly confront with the U.S. health care system. The Company and the UAW share a serious concern about the high cost of the health care system and the large number of uninsured. The high cost of health expenditures diverts corporate funds from other business priorities that will enable Mack to compete more effectively in the market place. Despite the Company's and UAW's efforts to manage our health care programs offered to members of our Mack family, Company health care costs have continued to increase at unacceptable rates. Indeed, the increasing amount of national resources allocated to health care, at the expense of other national priorities, adversely impacts the nation's ability to compete with other industrialized countries.

Both Mack and the UAW share the common objective for a high quality health care delivery system within our nation that is accessible to all and which functions in a cost effective manner. In this regard, Mack and the UAW jointly agree to support approaches directed towards achieving prompt and lasting private sector and national policy solutions which will assure high quality care to all individuals. Such approaches should include strong cost containment, equitable financing, and appropriate quality assurance mechanisms.

Very truly yours,
MACK TRUCKS, INC.

S. L. Torrence
Executive Vice President
Administration

B 94

---

LETTER # 7

May 27, 1998

Mr. Jack Laskowski
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re: Retiree Health Care Benefits

Dear Mr. Laskowski:

During our 1992 negotiations, the parties had lengthy discussions concerning the significant negative impact that the new accounting standard for post retirement benefits (FAS 106) would have on Mack Truck's financial situation, and the potential serious consequences this in turn could have on the ability of its parent company to obtain necessary capital, not only from traditional sources but also through public equity offerings it might otherwise choose to undertake. After reviewing various alternatives to minimize the negative impact of these financial accounting standards, the parties agreed to the so-called "cap" approach contained in Appendix B of the Health Insurance Program.

It is the purpose of this letter to state unequivocally that:

(1) The aforementioned "caps" were established for the purpose of minimizing the financial impact of FAS 106 while still complying with the purpose and intent of such standard;

(2) The Company and the Union both recognize the need to control health care cost, while at the same time providing quality professional care. It is understood that we will work jointly to control the cost impact on the Corporation;

B 95

Exhibit E to
Bressler Declaration

(3) The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the establishment of these "caps" in no way modifies or negates this commitment.

Very truly yours,

MACK TRUCKS, INC.

S. L. Torrence
Executive Vice President
Administration

B 96

---

LETTER # 8

May 29, 1998

Mr. Jack Laskowski
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Laskowski:

During the 1998 negotiations, the parties discussed at length alternatives to control healthcare costs for Medicare eligible retirees. It was determined that Medicare Risk programs was the best alternative for all concerned.

For that reason, Mack representatives and an International UAW representative knowledgeable in the Medicare Risk programs will meet at Mack Trucks World Headquarters to develop an implementation plan for optional Medicare Risk Plans (Plans) for the Lehigh Valley, Pennsylvania UAW members. This plan will go into effect no later than July 1, 1999. The parties will meet according to the following schedule to ensure this effective date:

MEETING | OBJECTIVE

September '98
- The UAW will provide and explain data and information requirements for the Plan(s) including, but not limited to:
  - minimum standard requirements of Plan
  - financial data of plan
  - measurement of quality standards of Plan
- The parties will resolve all issues related to UAW standards as to compatibility with available programs. The parties

B 97

Letter #16

October 2, 2001

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

**Re: Retiree Health Care Benefits**

Dear Mr. Gooden:

In Article III, section 8(f) of Appendix B to the October 2, 2001 Master Agreement between Mack and the UAW, the Company has expressly agreed that hospital - surgical - medical - prescription drug - catastrophic medical - dental - vision expense coverage will be continued at Company expense for retirees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension).

After lengthy discussions concerning the appropriate mechanism to fulfill the Company's express commitment to cover the expense of retiree health care, it was agreed that the Company will make monthly contributions on behalf of retired employees (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension), and their eligible dependents or surviving spouses under Article III, section 7(e) towards the cost of hospital-surgical-medical-prescription drug - catastrophic medical - dental - vision expense coverages provided under Article III equal to the full subscription rate or premium in an amount not to exceed the CAPS set forth in Appendix B, Article IV, section 7 ($14,511 for retirees/surviving spouses under the age of 65 and $4,623 for retirees/surviving spouses who are 65 years of age and older). In addition, the Company will establish a Trust Fund in compliance with the requirements of IRC section 501(c)(9) and contribute to that fund the sum of $30 million dollars in

146

equal annual installments of $10 million (the "VEBA Trust"). The annual installments shall be contributed on April 1, 2002; April 1, 2003; and April 1, 2004. The funds that will be contributed to the Trust, and all earnings net of expenses thereon, shall be held and used for the exclusive purpose of paying all charges under the hospital-surgical-medical-prescription drug-catastrophic medical-dental-vision expense coverages incurred by retired employees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension) or surviving spouses under Article III, section 7(e), that exceed the CAPs set forth in this Appendix B at Article IV, section 7D.

The Company further commits, with respect to the Collective Bargaining Agreement next succeeding the 2001-04 Agreement, to restore if necessary, the VEBA Trust to $30 million and to contribute whatever additional funds are required to increase the total value of the VEBA Trust to an amount that is sufficient to fund projected retiree health care cost increases above the CAPS during the term of such successor Agreement. The amount of funds required and the associated cost rate projections will be determined by mutual agreement, which agreement may not be unreasonably withheld. It is further understood that the parties will also review the feasibility of adjusting the CAP levels during those negotiations.

The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the understandings outlined herein in no way modify nor negate this commitment.

**Exhibit F to
Bressler Declaration**

147

Letter #17
(Original dated July 7, 1998)

October 2, 2001

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Gooden:

Re:  Employee Outplacement Assistance

The Union has requested that Mack renew the commitment first made in the 1984 Agreement with regard to outplacement assistance. In response to that request, the Company has agreed to continue to offer to employees on regular layoff assistance in seeking other job opportunities through a career transition service provided by the Company at no cost to the employees. This service will be provided as a need is identified, for any facilities covered under this agreement, by the National Executive Committee. Employees will be provided with:

a.  Information on employment opportunities within the regional area of residence.

b.  Counseling on the types of skills that are marketable in the job market of today and the future.

c.  Retraining and entrepreneurial programs.

d.  Counseling on how to seek, apply for and acquire employment.

149

---

The Company and the Union hereby reaffirm their commitment to work jointly to control health care costs, while at the same time providing quality professional care.

Very truly yours,

Mark T. McLaughlin
Senior Vice President
Human Resources and Administration

148

LETTER #7

October 2, 2001

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re: Retiree Health Care Benefits

Dear Mr. Gooden:



In Article III, Section 8(f) of Appendix B to the October 2, 2001 Master Agreement between Mack and the UAW, the Company has expressly agreed that hospital - surgical - medical - prescription drug - catastrophic medical - dental - vision expense coverage will be continued at Company expense for retirees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension).

After lengthy discussions concerning the appropriate mechanism to fulfill the Company's express commitment to cover the expense of retiree health care, it was agreed that the Company will make monthly contributions on behalf of retired employees (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension), and their eligible dependents or surviving spouses under Article III, Section 7(e) towards the cost of hospital-surgical-medical-prescription drug - catastrophic medical - dental - vision expense coverages provided under Article III equal to the full subscription rate or premium in an amount not to exceed the CAPS set forth in Appendix B, Article IV, Section 7 ($14,511 for retirees/surviving spouses under the age of 65 and $4,623 for retirees/surviving spouses who are 65 years of age and older). In addition, the Company will establish a Trust Fund in compliance with the requirements of IRC section 501(c)(9) and contribute to that Fund the sum of $30 million dollars in equal annual installments of $10

Both Mack and the UAW share the common objective for a high quality health care delivery system within our nation that is accessible to all and which functions in a cost effective manner. In this regard, Mack and the UAW jointly agree to support approaches directed towards achieving prompt and lasting private sector and national policy solutions which will assure high quality care to all individuals. Such approaches should include strong cost containment, equitable financing, and appropriate quality assurance mechanisms.

Very truly yours,
MACK TRUCKS, INC.

Mark T. McLaughlin
Senior Vice President
Administration

Exhibit G to
Bressler Declaration

B 99

B 98

LETTER # 8

October 2, 2001

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Gooden:

During the 1998 negotiations, the parties discussed at length alternatives to control healthcare costs for Medicare eligible retirees. It was determined that Medicare Risk programs was the best alternative for all concerned.

For that reason, Mack representatives and an International UAW representative knowledgeable in the Medicare Risk programs will meet at Mack Trucks World Headquarters to develop an implementation plan for optional Medicare Risk Plans (Plans) for the Lehigh Valley, Pennsylvania UAW members. This plan will go into effect no later than July 1, 1999. The parties will meet according to the following schedule to ensure this effective date:

| MEETING | OBJECTIVE |
| --- | --- |
| September '98 | • The UAW will provide and explain data and information requirements for the Plan(s) including, but not limited to:<br>  – minimum standard requirements of Plan<br>  – financial data of plan<br>  – measurement of quality standards of Plan<br><br>• The parties will resolve all issues related to UAW standards as to compatibility with available programs. The parties agree that to ensure a plan is available in a geographic area, the office visit and prescription drug |

B 101



---

million (the "VEBA Trust"). The annual installments shall be contributed on April 1, 2002; April 1, 2003; and April 1, 2004. The funds that will be contributed to the Trust, and all earnings net of expenses thereon, shall be held and used for the exclusive purpose of paying all charges under the hospital-surgical-medical-prescription drug-catastrophic medical-dental-vision expense coverages incurred by retired employees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension) or surviving spouses under Article III, Section 7(e), that exceed the CAPs set forth in this Appendix B at Article IV, Section 7D.

The Company further commits, with respect to the Collective Bargaining Agreement next succeeding the 2001-04 Agreement, to restore if necessary, the VEBA Trust to $30 million and to contribute whatever additional funds are required to increase the total value of the VEBA Trust to an amount that is sufficient to fund projected retiree health care cost increases above the CAPS during the term of such successor Agreement. The amount of funds required and the associated cost rate projections will be determined by mutual agreement, which agreement may not be unreasonably withheld. It is further understood that the parties will also review the feasibility of adjusting the CAP levels during those negotiations.

The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the understandings outlined herein in no way modify nor negate this commitment.

The Company and the Union hereby reaffirm their commitment to work jointly to control health care costs, while at the same time providing quality professional care.

Very truly yours,

Mark T. McLaughlin
Senior Vice President
Human Resources and Administration

B 100

Exhibit H to
Bressler Declaration

Letter #15

(Original date October 28, 1992)

October 2, 2004

Mr. Nate Gooden
Vice President and Director
UAW Solidarity House
8000 East Jefferson Avenue
Detroit, MI 48214

Dear Mr. Gooden:

**Re: Personal Leave of Absence**

During the discussion of the Personal Leave of Absence section of Article 10 of the Master Agreement, Management assured the Union of their intention to take a reasonable administrative approach. In instances where approved leaves of absence cause a negative impact on an employee who would be otherwise eligible for vacation or holiday pay, the Human Resources department will review all attendant circumstances and make a reasonable determination of eligibility.

This understanding is not intended to expand eligibility, but rather to address obvious inequities which may arise due to the administration of the specific language of the Personal Leave of Absence section.

Sincerely,

Gregory L. Tinnell
Sr. VP, Human Resources

146

---

Letter #16

October 2, 2004

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Gooden:

**Re: Retiree Health Care Benefits**

In Article III, section 8(f) of Appendix B to the October 2, 2001 Master Agreement between Mack and the UAW, the Company has expressly agreed that hospital - surgical - medical - prescription drug - catastrophic medical - dental - vision expense coverage will be continued at Company expense for retirees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension).

After lengthy discussions concerning the appropriate mechanism to fulfill the Company's express commitment to cover the expense of retiree health care, it was agreed that the Company will make monthly contributions on behalf of retired employees (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension), and their eligible dependents or surviving spouses under Article III, section 7(e) towards the cost of hospital-surgical-medical-prescription drug - catastrophic medical - dental - vision expense coverages provided under Article III equal to the full subscription rate or premium in an amount not to exceed the CAPS set forth in Appendix B, Article IV, section 7 ($14,511 for retirees/surviving spouses under the age of 65 and $4,623 for retirees/surviving spouses who are 65 years of age and older). In addition, the Company will establish a Trust Fund in compliance with the requirements of IRC section 501(c)(9) and contribute to that fund the sum of $30 million dollars in

147

The Company and the Union hereby reaffirm their commitment to work jointly to control health care costs, while at the same time providing quality professional care.

Very truly yours,

Gregory L. Tinnell
Sr. VP, Human Resources

149

equal annual installments of $10 million (the "VEBA Trust"). The annual installments shall be contributed on April 1, 2002; April 1, 2003; and April 1, 2004. The funds that will be contributed to the Trust, and all earnings net of expenses thereon, shall be held and used for the exclusive purpose of paying all charges under the hospital-surgical-medical-prescription drug-catastrophic medical-dental-vision expense coverages incurred by retired employees and *their* dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a *former employee entitled to or receiving a* deferred vested pension) or surviving spouses under Article III, section 7(e), that exceed the CAPs set forth in this Appendix B at Article IV, section 7D.

The Company further commits, with respect to the Collective Bargaining Agreement next succeeding the 2001-04 Agreement, to restore if necessary, the VEBA Trust to $30 million and to contribute whatever additional funds are required to increase the total value of the VEBA Trust to an amount that is sufficient to fund projected retiree health care cost increases above the CAPS during the term of such successor Agreement. The amount of funds required and the associated cost rate projections will be determined by mutual agreement, which agreement may not be unreasonably withheld. It is further understood that the parties will also review the feasibility of adjusting the CAP levels during those negotiations.

The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the understandings outlined herein in no way modify nor negate this commitment.

148

Exhibit I to

Bressler Declaration

LETTER #7

(Originally dated October 2, 2001)

October 2, 2004

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re:  Retiree Health Care Benefits

Dear Mr. Gooden:

In Article III, Section 8(f) of Appendix B to the October 2, 2001 Master Agreement between Mack and the UAW, the Company has expressly agreed that hospital - surgical - medical - prescription drug - catastrophic medical - dental - vision expense coverage will be continued at Company expense for retirees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension).

After lengthy discussions concerning the appropriate mechanism to fulfill the Company's express commitment to cover the expense of retiree health care, it was agreed that the Company will make monthly contributions on behalf of retired employees (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension), and their eligible dependents or surviving spouses under Article III, Section 7(e) towards the cost of hospital-surgical-medical-prescription drug - catastrophic medical - dental - vision expense coverages provided under Article III equal to the full subscription rate or premium in an amount not to exceed the CAPS set forth in Appendix B, Article IV, Section 7 ($14,511 for retirees/surviving spouses under the age of 65 and $4,623 for retirees/surviving spouses who are 65 years of age and older).  In addition, the Company will establish a Trust Fund in compliance with the requirements of IRC section 501(c)(9) and contribute to that fund the sum

B 101

Both Mack and the UAW share the common objective for a high quality health care delivery system within our nation that is accessible to all and which functions in a cost effective manner.  In this regard, Mack and the UAW jointly agree to support approaches directed towards achieving prompt and lasting private sector and national policy solutions which will assure high quality care to all individuals.  Such approaches should include strong cost containment, equitable financing, and appropriate quality assurance mechanisms.

Very truly yours,

Gregory L. Tinnell
Sr. VP, Human Resources

B 100

LETTER # 8

October 2, 2004

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Gooden:

During the 1998 negotiations, the parties discussed at length alternatives to control healthcare costs for Medicare eligible retirees. It was determined that Medicare Risk programs was the best alternative for all concerned.

For that reason, Mack representatives and an International UAW representative knowledgeable in the Medicare Risk programs will meet at Mack Trucks World Headquarters to develop an implementation plan for optional Medicare Risk Plans (Plans) for the Lehigh Valley, Pennsylvania UAW members. This plan will go into effect no later than July 1, 1999. The parties will meet according to the following schedule to ensure this effective date:

| MEETING | OBJECTIVE |
| --- | --- |
| September '98 | • The UAW will provide and explain data and information requirements for the Plan(s) including, but not limited to:<br>– minimum standard requirements of Plan<br>– financial data of plan<br>– measurement of quality standards of Plan<br><br>• The parties will resolve all issues related to UAW standards as to compatibility with available programs. The parties agree that to ensu.. ) plan is available in a geographic area, the office visit and prescription drug |

B 103

of $30 million dollars in equal annual installments of $10 million (the "VEBA Trust"). The annual installments shall be contributed on April 1, 2002; April 1, 2003; and April 1, 2004. The funds that will be contributed to the Trust, and all earnings net of expenses thereon, shall be held and used for the exclusive purpose of paying all charges under the hospital-surgical-medical-prescription drug-catastrophic medical-dental-vision expense coverages incurred by retired employees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension) or surviving spouses under Article III, Section 7(e), that exceed the CAPs set forth in this Appendix B at Article IV, Section 7D.

The Company further commits, with respect to the Collective Bargaining Agreement next succeeding the 2001-04 Agreement, to restore if necessary, the VEBA Trust to $30 million and to contribute whatever additional funds are required to increase the total value of the VEBA Trust to an amount that is sufficient to fund projected retiree health care cost increases above the CAPS during the term of such successor Agreement. The amount of funds required and the associated cost rate projections will be determined by mutual agreement, which agreement may not be unreasonably withheld. It is further understood that the parties will also review the feasibility of adjusting the CAP levels during those negotiations.

The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the understandings outlined herein in no way modify nor negate this commitment.

The Company and the Union hereby reaffirm their commitment to work jointly to control health care costs, while at the same time providing quality professional care.

Very truly yours,

Gregory L. Tinnell
Sr. VP, Human Resources

B 102