

MASTER AGREEMENT

MACK TRUCKS, INC.

INTERNATIONAL UNION
UNITED AUTOMOBILE
AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA
UAW
And its Locals 171, 472, 677,
1247, 2301, 5841

July 20, 1998

MASTER AGREEMENT
TABLE OF CONTENTS

| No. | Article | Page # |
|---|---|---|
| 1. | Recognition | 2 |
| 2. | Union Shop and Checkoff | 2 |
| 3. | Representation | 6 |
| 4. | Notification | 6 |
| 5. | Grievance Procedure | 7 |
| 6. | Seniority | 14 |
| 7. | Layoff and Recall | 23 |
| 8. | Posting New Jobs or Vacancies | 23 |
| 9. | Transfer of Shift | 23 |
| 10. | Leaves of Absence | 23 |
| 11. | Military Provisions | 30 |
| 12. | Hours of Work | 34 |
| 13. | Overtime | 36 |
| 14. | Holidays | 38 |
| 15. | Vacations | 45 |
| 16. | Wages, Starting Rates Progression | 49 |
| 17. | Transfers-Wage Rates | 58 |
| 18. | Production Standards | 59 |
| 19. | Discharge and Discipline | 59 |
| 20. | Strikes and Lockouts | 61 |
| 21. | Health and Safety | 62 |
| 22. | Pension Plan | 78 |

TABLE OF CONTENTS
CONTINUED

| No. | Article | Page # |
|---|---|---|
| 23. | Insurance Program | 78 |
| 24. | S.U.B. Plan Severance Pay Plan | 79 |
| 25. | Transfer to Other Facilities | 79 |
| | No Discrimination | 79 |
| 27. | Job Security | 80 |
| 28. | General | 82 |
| 29. | Posting Contract | 89 |
| 30. | Successors | 89 |
| 31. | Duration | 90 |
| 32. | Profit Sharing Plan | 93 |
| 33. | Mack Protected Employee Group Plan | 93 |
| 34. | Legal Services Plan | 93 |
| Exhibit "1" | | 94 |
| Exhibit "1A" | | 96 |
| Exhibit "2" | | 98 |
| Exhibit "3" | | 100 |
| Exhibit "4" | | 103 |
| Exhibit "5" | | 104 |
| Letters of Agreement | | 113 |

MASTER AGREEMENT
MACK TRUCKS, INC.
AND
INTERNATIONAL UNION UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

This Master Agreement, made this 20th day of July, 1998 by and between MACK TRUCKS, INC., a Pennsylvania corporation, (hereinafter designated as "MANAGEMENT" or the "COMPANY") and the INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, on its own behalf and on behalf of its Locals Nos. 171, 472, 677, 1247, 2301 and 5841 (hereinafter designated collectively as the "UNION"), covering employees of the Company in bargaining units at Hagerstown, Maryland; Atlanta, Georgia; Allentown, Pennsylvania; Macungie, Pennsylvania; Middletown, Pennsylvania; Baltimore, Maryland and Winnsboro, South Carolina is for the purpose of memorializing the Agreement between the Parties (hereinbefore the Company and the Union).

The Parties mutually agree that wherever masculine or feminine words are used in this Agreement, they refer to females and males equally.

WITNESSETH:

That the Parties hereto mutually agree as follows:

ARTICLE 1 - RECOGNITION

1

Article 21, Section 75.

(k) EMERGENCY EVACUATION TRAINING

The Company will institute an annual training program for Emergency Evacuation Coordinators. Employees will be made aware of evacuation routes and procedures as part of the Safety Talk Program. To familiarize employees, the Company will test warning alarm systems on an annual basis.

(l) MACHINING FLUIDS CONTROL PROGRAM

The Company and Union will analyze the results of industrial hygiene sampling surveys of machining areas to determine if it is feasible to maintain an exposure level of 1.0 mg/M3 or less. Procedures and equipment proven to be effective in the study to reduce exposure will be utilized when major machine renovations are scheduled. The Company will consider machining fluid exposures when purchasing new equipment.

ARTICLE 22 - PENSION PLAN

The parties have provided for a Pension Plan by Supplemental Agreement, which is attached hereto as Appendix A and made a part of this Agreement as if set out in full herein. No matter respecting the provisions of the Pension Plan shall be subject to the grievance procedure established in this Agreement, except as expressly provided for in the Pension Plan.

ARTICLE 23 - INSURANCE PROGRAM

The parties have provided for an Insurance Program by Supplemental Agreement, which is attached hereto as Appendix B and made a part of this Agreement as if set out in full herein.

78

Article 23.

No matter respecting the provisions of the Insurance Program shall be subject to the grievance procedure established in this Agreement, except as expressly provided for in the Insurance Program.

ARTICLE 24 - SUPPLEMENTAL UNEMPLOYMENT BENEFITS PLAN AND SEVERANCE PAY PLAN

The parties have provided for a Supplemental Unemployment Benefits Plan and Severance Pay Plan by Supplemental Agreement, which is attached hereto as Appendices C1 and C2 and made a part of this Agreement as if set out in full herein. No matter respecting the provisions of the Supplemental Unemployment Benefits Plan and Severance Pay Plan shall be subject to the grievance procedure established in this Agreement, except as expressly provided for in the Supplemental Unemployment Benefit Plan.

ARTICLE 25 - TRANSFER TO OTHER FACILITIES

The understanding of the parties concerning transfers to other facilities is set forth in Appendix D attached hereto and made a part hereof.

ARTICLE 26 - NO DISCRIMINATION

The Company and the Union agree that they will not discriminate in the hiring of employees or in their training, upgrading, promotion, transfer, layoff, discipline, discharge or otherwise because of race, creed, color, national origin, political affiliation, union affiliation, sex, marital status, physical handicap or age.

79

Article 30

with another company or companies, this Agreement shall be binding upon the merged or consolidated company.

The employer further agrees to make a condition of any sale, merger, reorganization, transfer or assignment that the buyer or transferee will assume the existing collective bargaining agreement as a condition of such sale, transfer or assignment. The parties further agree that in the event of any dispute regarding the application of this language, the employer will agree to expedited arbitration such that a final and binding award can be rendered prior to any such sale, merger, reorganization or transfer.

## ARTICLE 31 - DURATION

SECTION 90.

Except as otherwise provided for in this Master Agreement, or in the various Local Supplements, the effective date of these Agreements shall be the 20th day July, 1998. This Master Agreement and its Local Supplemental Agreements shall continue in full force and effect until 11:59 p.m., October 1, 2001.

These Agreements shall continue in effect for successive yearly periods after October 1, 2001, unless notice is given in writing by either party not less than sixty (60) days prior to October 1, 2001, or any one (1) year anniversary date thereafter, of its desire to modify, amend or terminate these agreements. If such notice is given by either party, this Agreement shall be open for modification, amendment or termination, as such notice may indicate during the sixty (60) days prior to October 1, 2001, or the subsequent one (1) year anniversary date, as the case may be. Written proposed changes with respect to the Master Agreement and Local Supplemental Agreements shall be given by either

90

Article 31, Section 90.

party not less than sixty (60) days prior to October 1, 2001. Upon receipt by either party of the written notice provided for above, the parties shall promptly arrange a mutually agreed upon date to commence negotiations pursuant to any such written notice.

SECTION 91. CONDUCT OF NEGOTIATIONS.

Negotiations pursuant to Section 90 above shall be conducted in accordance with the applicable provisions of Subsections (a), (b) and (c) below and any new agreements between the parties resulting therefrom shall not be binding or effective unless reduced to writing and signed by the parties designated in Subsections (a), (b) and (c) below.

(a) Master Agreement

Amendments to this Master Agreement or new agreements affecting same or adding to same shall be negotiated by the Top Negotiating Committee of the UAW Mack Truck Council, International representatives of the Union and representatives of the Company, and shall be signed by the Corporate Director of Employee Relations of the Company, the members of the Top Negotiating Committee of the Council, and the Director of the UAW Mack Truck Department.

(b) Local Supplements

With respect to Local Supplemental Agreement issues negotiated locally in accordance with the provisions of Section 90 of this Article, resulting modifications in such Local Supplemental Agreements or any agreements affecting or adding to same shall be negotiated by the respective Local Union representatives who are members of

91

Warehouse Unit Committeeperson

FOR LOCAL NO. 5841

A. E. "Skip" Ritter
President

Jack D. Hoffman
Shop Chairperson

Randy Jordan
Committeeperson

Willard P. Beck
Committeeperson

Gary D. Speth
Committeeperson

## MASTER LETTERS OF AGREEMENT

| | | Page # |
|---|---|---|
| 1. | Bridgewater Employees | 115 |
| 2. | Equal Employment Opportunity | 117 |
| 3. | Equality of Sacrifice | 120 |
| 4. | Federal Health Security Act | 122 |
| 5. | National Executive Committees | 124 |
| 6. | Medical Disputes | 127 |
| 7. | Neutrality Letter | 129 |
| 8. | New Manufacturing and Parts Distribution Facilities | 131 |
| 9. | Voluntary Political Contributions - Reissued | 133 |
| 10. | Procedure to be Followed if Wages or Benefits Disallowed or Postponed | 136 |
| 11. | Supervisory Ratio | 137 |
| 12. | Sourcing | 139 |
| 13. | Allentown Engineering and Office Units- Special Programs | 140 |
| 14. | Union - Management Relationship | 141 |
| 15. | Resolution of Employee Complaints | 143 |
| 16. | Employee Involvement | 144 |
| 17. | Personal Leave of Absence | 147 |
| 18. | Retiree Health Care Benefits | 148 |
| 19. | Employee Outplacement Assistance | 150 |
| 20. | Board of Directors | 152 |
| 21. | Special Preferential Hiring | 153 |
| 22. | Overtime | 154 |

**New Letters**

| | | Page # |
|---|---|---|
| 23. | Court of Record | 155 |
| 24. | Suspension of Contributions to Joint Training Fund and Legal Services Fund | 156 |
| 25. | COLA Diversion - November 1995 M.O.A. | 157 |
| 26. | Special Adjustments to PEG Numbers - Middletown Shop and Baltimore PDC | 158 |
| 27. | New Operating Environment | 159 |
| 28. | Transfer Options | 161 |

**Deleted Letters**

Union Dues
Pay Procedures
Drug Policy Review
Article 27 Reopener

114

---

Letter #1

May 25, 1998

Mr. Jack Laskowski
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Laskowski:

Re: Bridgewater Employees

This will confirm the understanding reached between the Company and the Union during the 1984 Contract Negotiations with respect to the following Bridgewater employees relative to the Mack-UAW Pension Plan.

SHOP EMPLOYEES

The Company is agreeable to offer an eligible Bridgewater Shop employee laid off on or after 1/1/84, and to eligible Shop employees currently working, a Special Early Retirement benefit at Company request or under mutually satisfactory conditions.

OFFICE EMPLOYEES

The Company is agreeable to offer a Special Retirement benefit at Company request or under mutually satisfactory conditions to eligible Bridgewater Office employees at the time the office is relocated. The maximum number of employees allowed to retire under

115

Letter #18

May 26, 1998

Mr. Jack Laskowski
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Laskowski:

Re: Retiree Health Care Benefits

During our 1992 negotiations, the parties had lengthy discussions concerning the significant negative impact that the new accounting standard for post retirement benefits (FAS 106) would have on Mack Trucks' financial situation, and the potential serious consequences this in turn could have on the ability of its parent company to obtain necessary capital, not only from traditional sources but also through public equity offerings it might otherwise choose to undertake. After reviewing various alternatives to minimize the negative impact of these financial accounting standards, the parties agreed to the so-called "cap" approach contained in Appendix B of the Health Insurance Program.

It is the purpose of this letter to state unequivocally that:

(1) The aforementioned "caps" were established for the purpose of minimizing the financial impact of FAS 106 while still complying with the purpose and intent of such standard;

(2) The Company and the Union both recognize the need to control health care cost, while at the same time providing quality professional care. It is understood that we will work jointly to control the cost impact on the Corporation;

(3) The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the establishment of these "caps" in no way modifies or negates this commitment.

Very truly yours,

S. L. Torrence
Executive Vice President
Administration

148

149