# MASTER AGREEMENT

*between*

**MACK TRUCKS, INC.**

*and the*

**INTERNATIONAL UNION
UNITED AUTOMOBILE
AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,
UAW
And Its Locals 171, 472, 677,
1247, 2301, 5841**

October 2, 2001






MASTER AGREEMENT
TABLE OF CONTENTS

| No. | Article | Page # |
|---|---|---|
| 1. | Recognition | 1 |
| 2. | Union Shop and Checkoff | 2 |
| 3. | Representation | 5 |
| 4. | Notification | 5 |
| 5. | Grievance Procedure | 6 |
| 6. | Seniority | 12 |
| 7. | Layoff and Recall | 20 |
| 8. | Posting New Jobs or Vacancies | 20 |
| 9. | Transfer of Shift | 21 |
| 10. | Leaves of Absence | 21 |
| 11. | Military Provisions | 28 |
| 12. | Hours of Work | 32 |
| 13. | Overtime | 34 |
| 14. | Holidays | 36 |
| 15. | Vacations | 43 |
| 16. | Wages, Starting Rates Progression | 46 |
| 17. | Transfers-Wage Rates | 56 |
| 18. | Production Standards | 56 |
| 19. | Discharge and Discipline | 56 |
| 20. | Strikes and Lockouts | 58 |
| 21. | Health and Safety | 59 |
| 22. | Pension Plan | 82 |

HEAVY TRUCK
SEP 23 2002

## TABLE OF CONTENTS CONTINUED

| No. | Article | Page # |
|---|---|---|
| 23. | Insurance Program | 82 |
| 24. | S.U.B. Plan Severance Pay Plan | 82 |
| 25. | Transfer to Other Facilities | 83 |
| 26. | No Discrimination | 83 |
| 27. | Job Security | 83 |
| 28. | General | 85 |
| 29. | Posting Contract | 92 |
| 30. | Successors | 92 |
| 31. | Duration | 93 |
| 32. | Profit Sharing Plan | 96 |
| 33. | Mack Protected Employee Group Plan | 96 |
| 34. | Legal Services Plan | 96 |
| Exhibit "1" | | 97 |
| Exhibit "1A" | | 99 |
| Exhibit "2" | | 101 |
| Exhibit "3" | | 103 |
| Letters of Agreement | | 115 |

# MASTER AGREEMENT
## MACK TRUCKS, INC.
### AND THE
### INTERNATIONAL UNION UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

This Master Agreement (hereinafter designated as the "AGREEMENT"), made this 2nd day of October, 2001 by and between MACK TRUCKS, INC., a Pennsylvania corporation, (hereinafter designated as "MANAGEMENT" or the "COMPANY") and the INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, on its own behalf and on behalf of its Locals Nos. 171, 472, 677, 1247, 2301 and 5841 (hereinafter designated collectively as the "UNION"), covering bargaining unit employees of the Company in facilities at Hagerstown, Maryland; Atlanta, Georgia; Allentown, Pennsylvania; Macungie, Pennsylvania; Middletown, Pennsylvania; Baltimore, Maryland and Winnsboro, South Carolina is for the purpose of memorializing the Agreement between the Parties (hereinbefore the Company and the Union). The Parties mutually agree that wherever masculine or feminine words are used in this Agreement, they refer to females and males equally.

WITNESSETH:

That the Parties hereto mutually agree as follows:

### ARTICLE 1 - RECOGNITION

SECTION 1.

The Company recognizes the Union as the exclusive collective bargaining agent for the employees of the Company in the bargaining units described in the Local Supplemental Agreements.

1

Article 22

## ARTICLE 22 - PENSION PLAN

The Parties have provided for a Pension Plan by Supplemental Agreement, which is attached hereto as Appendix A and made a part of this Agreement as if set out in full herein.

No matter respecting the provisions of the Pension Plan shall be subject to the grievance procedure established in this Agreement, except as expressly provided for in the Pension Plan.

## ARTICLE 23 - INSURANCE PROGRAM

The Parties have provided for an Insurance Program by Supplemental Agreement, which is attached hereto as Appendix B and made a part of this Agreement as if set out in full herein.

No matter respecting the provisions of the Insurance Program shall be subject to the grievance procedure established in this Agreement, except as expressly provided for in the Insurance Program.

## ARTICLE 24 - SUPPLEMENTAL UNEMPLOYMENT BENEFITS PLAN AND SEVERANCE PAY PLAN

The Parties have provided for a Supplemental Unemployment Benefits Plan by Supplemental Agreement, which is attached hereto as Appendices C1 and C2 and made a part of this Agreement as if set out in full herein. No matter respecting the provisions of the Supplemental Unemployment Benefits Plan shall be subject to the grievance procedure established in this Agreement, except as expressly provided for in the Supplemental Unemployment Benefit Plan.

82

Article 25

## ARTICLE 25 - TRANSFER TO OTHER FACILITIES

The understanding of the Parties concerning transfers to other facilities is set forth in Appendix D attached hereto and made a part hereof.

## ARTICLE 26 - NO DISCRIMINATION

The Company and the Union agree that they will not unlawfully discriminate in all employment decisions, including but not limited to the recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, layoff, discipline and termination, and all other terms and conditions of employment because of race, creed, color, national origin, political affiliation, union affiliation, sex, age, marital status, disability, sexual orientation or citizenship status. The Company and the Union agree that they will support and implement the governmental anti-discrimination programs.

## ARTICLE 27 - JOB SECURITY

### SECTION 77.

The following reflects the understanding reached between the Parties during the 2001 negotiations with regard to job security.

(a) No outsourcing of operations currently performed by the Office, Parts Distribution Center, Engineering or Shop bargaining units will occur during the term of this Agreement, with the following exceptions:

- the periodic purchase of certain parts and services of a nature and to the extent currently acquired from outside vendors on a temporary "as needed" basis due to capacity or production breakdowns which will not have a negative impact on

83

SECTION 89. **SUPPORT FOR LOCAL EFFORTS TO COMBAT ALCOHOL AND DRUG ABUSE**

The Parties agree that the problems of alcohol and drug abuse are being handled in various ways at each of the operations covered by this Master Agreement and each such local program was found to be substantially effective. It is mutually agreed that such programs shall be continued during the term of this agreement.

SECTION 90.

Additional specific provisions of a general nature are contained in the respective Local Supplemental Agreements.

**ARTICLE 29 - POSTING CONTRACT**

Management will promptly provide a sufficient number of printed copies of the Master Agreement to each of the Local Unions covered by this Agreement for distribution to each represented employee. The Parties will jointly proof read the Agreement prior to printing to assure accuracy.

**ARTICLE 30 - SUCCESSORS**

This Agreement shall be binding upon the employer's successors, assigns, purchasers, or transferees whether such succession, assignment or transfer be affected voluntarily or by operation of law; and in the event of the employer's merger or consolidation with another company or companies, this Agreement shall be binding upon the merged or consolidated company.

The employer further agrees to make a condition of any sale, merger, reorganization, transfer or assignment that the buyer or transferee will assume the existing collective bargaining agreement as a condition of such sale, transfer

or assignment. The Parties further agree that in the event of Article 30 any dispute regarding the application of this language, the employer will agree to expedited arbitration such that a final and binding award can be rendered prior to any such sale, merger, reorganization or transfer.

**ARTICLE 31 - DURATION**

SECTION 91.

Except as otherwise provided for in this Master Agreement, or in the various Local Supplements, the effective date of these Agreements shall be the 2nd day of October 2001. This Master Agreement and its Local Supplemental Agreements shall continue in full force and effect until 11:59 p.m., October 1, 2004.

These Agreements shall continue in effect for successive yearly periods after October 1, 2004, unless notice is given in writing by either Party not less than sixty (60) days prior to October 1, 2004, or any one (1) year anniversary date thereafter, of its desire to modify, amend or terminate these agreements. If such notice is given by either Party, this Agreement shall be open for modification, amendment or termination, as such notice may indicate during the sixty (60) days prior to October 1, 2004, or the subsequent one (1) year anniversary date, as the case may be. Written proposed changes with respect to the Master Agreement and Local Supplemental Agreements shall be given by either Party not less than sixty (60) days prior to October 1, 2004. Upon receipt by either Party of the written notice provided for above, the Parties shall promptly arrange a mutually agreed upon date to commence negotiations pursuant to any such written notice.

*Willard P. Beck*
Committeeperson

*Gary D. Speth*
Committeeperson

## MASTER LETTERS OF AGREEMENT

| | | Page # |
|---|---|---|
| 1. | Equal Employment Opportunity | 115 |
| 2. | Equality of Sacrifice | 118 |
| 3. | Federal Health Security Act | 120 |
| 4. | National Executive Committees | 122 |
| 5. | Medical Disputes | 125 |
| 6. | Neutrality Letter | 127 |
| 7. | New Manufacturing and Parts Distribution Facilities | 129 |
| 8. | Voluntary Political Contributions - Reissued | 131 |
| 9. | Procedure to be Followed if Wages or Benefits Disallowed or Postponed | 134 |
| 10. | Supervisory Ratio | 135 |
| 11. | Sourcing | 137 |
| 12. | Union - Management Relationship | 138 |
| 13. | Resolution of Employee Complaints | 140 |
| 14. | Employee Involvement | 142 |
| 15. | Personal Leave of Absence | 145 |
| 16. | Retiree Health Care Benefits | 146 |
| 17. | Employee Outplacement Assistance | 149 |
| 18. | Board of Directors | 151 |
| 19. | Special Preferential Hiring | 152 |
| 20. | Overtime | 153 |

|  |  | Page # |
|---|---|---|
| 21. | Special Adjustments to PEG Numbers – Baltimore PDC/Atlanta PDC | 154 |
| 22. | New Operating Environment | 155 |

**New Letters**

|  |  | Page # |
|---|---|---|
| 23. | Americans With Disabilities Act | 157 |
| 24. | Extension of Seniority Recall Rights | 158 |
| 25. | Health and Safety Issues | 159 |
| 26. | Exclusion of Winnsboro Closing Costs from Profit Sharing Plan | 160 |

**Deleted Letters**

Bridgewater Employees
Allentown Engineering and Office Units – Special Programs
Court of Record
Suspension of Contributions to Joint Training Fund and Legal Services Fund
COLA Diversion – November 1995 M.O.A.
Transfer Options

114

---

Letter #1

October 2, 2001

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Gooden:

Re: Equal Employment Opportunity

Over the years, the Company and the Union have demonstrated leadership in developing policies and putting them into practice to overcome discrimination because of race, sex, age, physical handicap, political or religious affiliations, and national origin. Our discussions in this area have convinced the Parties that it would be mutually beneficial to institute an "Equal Employment Opportunity" program at the Corporate/ International level and at our Local operations. This program will maximize adherence to the concept of equal opportunity in all aspects of employment and emphasize the contractual grievance procedure for relief of alleged violations of this principle.

Discussions during these negotiations highlighted the desirability of increased communication and cooperative effort on this subject to encourage employees and grievance representatives to use the grievance procedure to secure the prompt resolution of all claims of the denial of equal opportunity rights, and to determine the cause of such claims in order to reduce the probability of these claims arising or recurring, and for the following purposes: (a) To increase understanding, (b) To avoid multiplicity of litigation in many forms simultaneously which is frequently time consuming, contradictory and hence non-productive in relieving employee problems, (c) To seek solutions to mutual problems, (d) To exchange information, expertise and advice.

115

Letter #16

October 2, 2001

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re: Retiree Health Care Benefits

Dear Mr. Gooden:

In Article III, section 8(f) of Appendix B to the October 2, 2001 Master Agreement between Mack and the UAW, the Company has expressly agreed that hospital - surgical - medical - prescription drug - catastrophic medical - dental - vision expense coverage will be continued at Company expense for retirees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension), and their eligible dependents or surviving spouses under Article III, section 7(e) towards the cost of hospital-surgical-medical-prescription drug - catastrophic medical - dental - vision expense coverages provided under Article III equal to the full subscription rate or premium in an amount not to exceed the CAPS set forth in Appendix B, Article IV, section 7 ($14,511 for retirees/surviving spouses under the age of 65 and $4,623 for retirees/surviving spouses who are 65 years of age and older). In addition, the Company will establish a Trust Fund in compliance with the requirements of IRC section 501(c)(9) and contribute to that fund the sum of $30 million dollars in

After lengthy discussions concerning the appropriate mechanism to fulfill the Company's express commitment to cover the expense of retiree health care, it was agreed that the Company will make monthly contributions on behalf of retired employees (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension), and their eligible dependents or surviving spouses under Article III, section 7(e) towards the cost of hospital-surgical-medical-prescription drug - catastrophic medical - dental - vision expense coverages provided under Article III equal to the full subscription rate or premium in an amount not to exceed the CAPS set forth in Appendix B, Article IV, section 7.

146

equal annual installments of $10 million (the "VEBA Trust"). The annual installments shall be contributed on April 1, 2002; April 1, 2003; and April 1, 2004. The funds that will be contributed to the Trust, and all earnings net of expenses thereon, shall be held and used for the exclusive purpose of paying all charges under the hospital-surgical-medical-prescription drug-catastrophic medical-dental-vision expense coverages incurred by retired employees and their dependents (not including any employee who has less than ten (10) years of credited service and retires while on a sick leave or a former employee entitled to or receiving a deferred vested pension) or surviving spouses under Article III, section 7(e), that exceed the CAPs set forth in this Appendix B at Article IV, section 7D.

The Company further commits, with respect to the Collective Bargaining Agreement next succeeding the 2001-04 Agreement, to restore if necessary, the VEBA Trust to $30 million and to contribute whatever additional funds are required to increase the total value of the VEBA Trust to an amount that is sufficient to fund projected retiree health care cost increases above the CAPS during the term of such successor Agreement. The amount of funds required and the associated cost rate projections will be determined by mutual agreement, which agreement may not be unreasonably withheld. It is further understood that the parties will also review the feasibility of adjusting the CAP levels during those negotiations.

The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the understandings outlined herein in no way modify nor negate this commitment.

147

The Company and the Union hereby reaffirm their commitment to work jointly to control health care costs, while at the same time providing quality professional care.

Very truly yours,

Mark T. McLaughlin
Senior Vice President
Human Resources and Administration

---

Letter #17
(Original dated July 7, 1998)

October 2, 2001

Mr. Nate Gooden
Vice President and Director
UAW Mack Trucks Department
Solidarity House
8000 East Jefferson Avenue
Detroit, Michigan 48214

Dear Mr. Gooden:

Re: Employee Outplacement Assistance

The Union has requested that Mack renew the commitment first made in the 1984 Agreement with regard to outplacement assistance. In response to that request, the Company has agreed to continue to offer to employees on regular layoff assistance in seeking other job opportunities through a career transition service provided by the Company at no cost to the employees. This service will be provided as a need is identified, for any facilities covered under this agreement, by the National Executive Committee. Employees will be provided with:

a. Information on employment opportunities within the regional area of residence.

b. Counseling on the types of skills that are marketable in the job market of today and the future.

c. Retraining and entrepreneurial programs.

d. Counseling on how to seek, apply for and acquire employment.