1  JOHN C. KLOOSTERMAN, Bar No. 182625
   JORJA E. JACKSON, Bar No. 226707
2  LITTLER MENDELSON
   A Professional Corporation
3  650 California Street, 20th Floor
   San Francisco, CA 94108.2693
4  Telephone:    415.433.1940
   Facsimile:    415.399.8490
5  E-mail: jkloosterman@littler.com
            jjackson@littler.com
6
   Attorneys for Defendants
7  MACK TRUCKS, INC.; MACK HEALTH,
   DISABILITY AND LIFE BENEFITS FOR UAW
8  EMPLOYEES

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12
   ROBERT EVITT and JOEL ORTEGA, on       Case No.  C-07-4830 VRW
13 behalf of themselves and a class of those
   similarly situated,                    **DEFENDANTS' OPPOSITION TO**
14                                         **PLAINTIFFS' MOTION FOR**
                      Plaintiff,           **PRELIMINARY INJUNCTION**
15
            v.                             Date:  November 1, 2007
16                                         Time:  2:30
   MACK TRUCKS, INC. and MACK              Place:  Courtroom 6
17 HEALTH, DISABILITY AND LIFE            Judge:  Hon. Vaughn R. Walker
   BENEFITS FOR UAW EMPLOYEES,
18
                      Defendant.
19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ..................................................................................... 1

II.   BRIEF PROCEDURAL HISTORY .......................................................... 1

III.  STATEMENT OF FACTS ........................................................................ 2

      A.   The Master Agreements ................................................................. 2

           1.   The Pre-1992 Master Agreements ...................................... 2

           2.   The 1992 Master Agreement ............................................... 3

           3.   The 1993 Modifications To And Extension Of The 1992 Master
                Agreement............................................................................. 4

           4.   The 1998 Master Agreement ............................................... 5

           5.   The 2001 Master Agreement ............................................... 5

           6.   The 2004 Master Agreement ............................................... 5

           7.   The August 2007 Letter to Retirees .................................... 6

           8.   The Pennsylvania Declaratory Relief Action ..................... 6

IV.   PRELIMINARY INJUNCTION STANDARD............................................ 6

V.    PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS
      BECAUSE MACK'S RETIREE BENEFITS ARE NOT VESTED ....................... 7

      A.   Benefits Do Not Vest Unless The Employer Unambiguously Intended To Do
           So ................................................................................................... 7

      B.   The Pre-1992 Master Agreements Unambiguously Limit Retiree Benefits To
           The Duration Of The Contract, Meaning Those Benefits Did Not Vest ...... 9

      C.   The "Lifetime" Language Contained In The Side Letters To The Post-1992
           Master Agreements Must Be Read In Conjunction With The Durational
           Reservation Of Rights Language And Does Not Serve To Vest Retiree
           Benefits ......................................................................................... 10

      D.   The Parties' Bargaining History Also Indicates That Retiree Benefits Did Not
           Vest ............................................................................................... 12

VI.   PLAINTIFFS CANNOT SHOW IRREPARABLE HARM OR ANY IMMEDIATE
      THREAT OF HARM........................................................................... 13

VII.  CONCLUSION..................................................................................... 14

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION                    i.                    (No. C-07-4830 VRW)

1

**TABLE OF AUTHORITIES**

2

PAGE

3

**CASES**

4

*Alexander & Alexander Benefits Servs. v. Benefit Brokers & Consultants, Inc.,*
   756 F. Supp. 1408 (D. Or. 1991) ................................................................. 7

5

*American Federation of Grain Millers v. Int'l Multifoods Corp.,*
   116 F.3d 976 (2d Cir. 1997)........................................................................ 8

6

*Angotti v. Rexam, Inc.,*
   2006 WL 1646135 at *8 (N.D. Cal. June 14, 2006) ......................... 9, 11, 13

7

*Barnett v. Ameren Corp.,*
   436 F.3d 830 (7th Cir. 2006) ................................................................... 10

8

*Bidlack v. Wheelabrator Corp.,*
   993 F.2d 603 (7th Cir. 1993) ..................................................................... 9

9

*Bower v. Bunker Hill Co.,*
   725 F.2d 1221 (9th Cir. 1984) ................................................................... 8

10

11

*California Cooler, Inc. v. Loretto Winery,*
   774 F.2d 1451 (9th Cir. 1985) ................................................................... 7

12

*Caribbean Marine Serv. Co., Inc. v. Baldridge,*
   844 F.2d 668 (9th Cir. 1988) ................................................................... 14

13

*Chemical Workers v. Pittsburgh Plate Glass,*
   404 U.S. 157 (1971) ................................................................................. 7

14

*Cherry v. Auburn Gear, Inc.,*
   441 F.3d 476 (7th Cir. 2006) .......................................................... 9, 10, 11

15

16

*Cinelli v. Security Pac. Corp.,*
   61 F.3d 1437 (9th Cir. 1995) ..................................................................... 8

17

*Curtiss-Wright Corp. v. Schoonejongen,*
   514 U.S. 73 (1995) ................................................................................... 8

18

*In re Unisys Corp. Retiree Medical Benefit ERISA Litig.,*
   58 F.3d 896 (3d Cir. 1995)................................................................... 8, 11

19

*Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.,*
   520 U.S. 510 (1997)................................................................................. 8

20

21

*Jensen v. SIPCO, Inc.,*
   38 F.3d 945 (8th Cir. 1994) ..................................................................... 11

22

*Johnson Controls, Inc. v. Phoenix Control Sys.,*
   886 F. 2d 1173 (9th Cir. 1989) ................................................................. 7

23

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys. v. NLRB,*
   501 U.S. 190 (1991)................................................................................. 8

24

*Litton Sys. v. Sundstrand Corp.,*
   750 F.2d 952 (Fed. Cir. 1984)................................................................... 7

25

26

*Midgett v. Tri–County Metro. Transp. Dist. of Oregon,*
   254 F.3d 846 (9th Cir. 2001) ................................................................... 14

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION

(No. C-07-4830 VRW)

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Pabst Brewing Co. v. Corrao,*
   161 F.3d 434 (7th Cir. 1998) .................................................................... 13

*Pisciotta v. Teledyne Industries, Inc.,*
   91 F.3d 1326 (9th Cir. 1996) ................................................................... 11

*Rodeo Collection Ltd. v. West Seventh,*
   812 F.2d 1215 (9th Cir. 1987) ................................................................... 7

*Rossetto v. Pabst Brewing Co., Inc.,*
   217 F.3d 539 (7th Cir. 2000) ..................................................................... 9

*UAW et al. v. General Motors Corp. et al,*
   497 F.3d 615 (6th Cir. 2007) ..................................................................... 6

*UAW v. Skinner Engine Co.,*
   188 F.3d 130 (3d Cir. 1999) ................................................. 3, 8, 10, 11, 12

*United Mine Workers v. Brushy Creek Coal Co.,*
   410 F.Supp.2d 723 (S.D. Ill. 2006) ......................................................... 11

*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982) .................................................................................. 6

*Wise v. El Paso Natural Gas Co.,*
   986 F.2d 929 (5th Cir. 1993) ..................................................................... 3

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## I.   INTRODUCTION

Defendants ("Mack") do not understand why they are before this Court at this time having to oppose this motion. This case is about retiree health benefits and whether Mack is legally entitled to change those benefits. To the extent a preliminary injunction motion should be heard at all, and Defendants assert it should not be, then the motion should be heard in the Eastern District of Pennsylvania where Mack first filed a case involving the same proposed class over the same issues. Additionally, Plaintiffs seek this injunction based on a misstatement of fact – that Mack intends to change retiree health coverage shortly after October 1, 2007. Plaintiffs' assertion is patently absurd and is belied by every statement Mack has made on the issue. Mack has consistently told the Plaintiffs, their counsel, their former bargaining representative, Judge Golden in the Eastern District of Pennsylvania, and this Court that no changes will occur prior to April 2008. Additionally, as of this writing, the collective bargaining agreement containing Mack's retiree health care obligations is still in effect. Despite Mack's clear and consistent statements, Plaintiffs creatively decided that Mack really planned to take action on or around October 1, 2007 and brought this motion. In their unnecessary rush for action, Plaintiffs also ignore highly relevant facts, including the most salient fact relating to the duration of the retiree benefits at issue (that each Master Agreement since at least 1980 has contained a clear reservation of rights clause limiting the retiree benefits to the duration of the Agreement).

The power to issue a preliminary injunction is an extraordinary power that a court should not exercise casually. An injunction should only be granted when supported by *a clear showing* that a reasonable probability exists that the Plaintiff will prevail on the merits and that, without an injunction, irreparable harm will issue. Plaintiffs cannot show a reasonable probability that they will prevail on the merits, in large part because of the facts they ignore, nor can they show irreparable harm. Accordingly, this Court should deny Plaintiffs' motion, assuming it even entertains the motion.

## II.   BRIEF PROCEDURAL HISTORY

On September 7, 2007, Mack Trucks, Inc., filed a declaratory relief action in the Eastern District of Pennsylvania following the announcement of proposed changes to retiree health

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION

1.

(No. C-07-4830 VRW)

1  benefits.  The union representing certain of Mack's employees, the United Automobile, Aerospace

2  and Agricultural Implement Workers of America ("UAW") vehemently opposed the proposed

3  changes and Mack, in response, filed for a judicial declaration that Mack is able to implement the

4  intended changes on April 1, 2008.  The matter is assigned to United States District Judge Thomas

5  M. Golden in the Reading Division (Civ 07-3737 TMG).

6           On September 20, 2007, Plaintiffs Evitt and Ortega filed an identical action for

7  declaratory relief in this Court and sought a temporary restraining order, arguing that Mack intended

8  to make changes to retiree benefits on or shortly after October 1, 2007.  Plaintiffs dropped their

9  request for a TRO after Mack's counsel indicated to Plaintiffs and to this Court, consistent with each

10  and every other statement made by Mack in connection with this issue, that no changes would occur

11  before April 1, 2008.  Like the Pennsylvania action, Plaintiffs also seek a class consisting of "all

12  persons who are retirees of Mack, their surviving spouses, or their dependents and are currently

13  receiving medical benefits under the Mack Plan."  *See* Plaintiffs' Amended Complaint ¶35 (Docket

14  No. 17).  The Court set the preliminary injunction for hearing on November 1, 2007, along with

15  Defendants' Motion to Change Venue, which was filed on October 8, 2007.

16  **III.    STATEMENT OF FACTS**

17     **A.    The Master Agreements**

18         **1.    The Pre-1992 Master Agreements**

19           Mack and the UAW have entered into consecutive Master Agreements covering

20  certain employees at Mack's facilities since at least 1959.  Each of the agreements had a specific

21  duration and expired by its terms.  Since at least 1980, Appendix B of each Master Agreement has

22  included an insurance program.  This insurance program provides the UAW bargaining unit

23  employees and retirees from those bargaining units with group health insurance coverage for

24  medical expenses, including hospitalization, doctor visits, surgical care, prescription drugs, dental

25  care and vision care.  Huxta Decl. ¶3.

26           The 1987 Master Agreement and Appendices made clear that Mack's commitment to

27  provide retirees with health care benefits was limited to the duration of the Agreement.  Specifically,

28  Article I, Section 1 of the 1987 Appendix B states:

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION     2.     (No. C-07-4830 VRW)
FOR PRELIMINARY INJUNCTION

1    Continuation of Program – The Insurance Program which was attached
2    as Appendix B to the Collective Bargaining Agreement between the
     parties dated February 1, 1983 (hereinafter called the '1983 Insurance
3    Program') shall be amended, effective as of January 1, 1985, as herein
     set forth, and *maintained by the Company as amended for the*
4    *duration of the Collective Bargaining Agreement of which this*
     *Appendix B is a part.* (Emphasis added)

5    *See* Exhibit A to Bressler Decl., filed with Plaintiffs' Motion for Preliminary Injunction (Docket

6    No. 7).   Appendix B to every successive Master Agreement carried that language forward and

7    reinforced the conclusion that Mack's commitment to continue retiree coverage under the Medical

8    Benefit Program is limited to the duration of the specific Master Agreement.   Plaintiffs have

9    conveniently ignored this durational language in their motion.

10          **2.    The 1992 Master Agreement**

11          The 1992 Master Agreement contained the same durational language (except for

12   changing the effective dates) as the above provisions.  *See* Bressler Decl. Exh. C.  The 1992

13   Agreement also added so-called "caps," which are express dollar limitations on Mack's commitment

14   to pay the cost of Retiree/Surviving Spouse health care benefit costs under the Insurance Program.

15   Bressler Decl., Exh. C Article IV, Section 7(D).  The caps were negotiated because of a then new

16   accounting standard (FAS 106), which required companies providing post-retirement welfare plans

17   to recognize the expense of providing the benefit at the time an employee earns the right to the

18   benefit, rather than when the claim is actually paid.  Huxta Decl. ¶4; *see, e.g., UAW v. Skinner*

19   *Engine Co.*, 188 F.3d 130, 136 (3d Cir. 1999) (discussing the impact of FAS 106 on retiree benefits

20   plans negotiated with the UAW); *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 932 (5th Cir. 1993)

21   (describing FAS 106 as requiring employers to "reflect on their balance sheets the present value of

22   the estimated future costs for retirees' medical benefits.").

23          The Retiree Health Care Benefits letter, which is referred to in Article IV,

24   Section 7(D) and is attached as "Letter #7" to the 1992 Master Agreement, describes the caps and

25   states, in part, "after reviewing the various alternatives to minimize the negative impact of these

26   financial accounting standards, the parties agreed to the so-called "cap approach" contained in

27   Appendix B of the Health Insurance Program."  The letter also contains the following language:

28   "[t]he Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION                3.                (No. C-07-4830 VRW)
FOR PRELIMINARY INJUNCTION

1    for Mack-UAW employees have been and will continue to be lifetime benefits, and the

2    establishment of these 'caps' in no way modifies or negates this commitment."

3            The UAW supported this change, but also understood the "steeply rising health care

4    costs and changes in financial accounting standards" that faced Mack. Kloosterman Decl. Exh. A

5    (November 1992 UAW Report). In particular, the Report notes that the caps, which "establish

6    outside limits upon the company's financial obligations for retiree health care expenditures in each

7    year of the proposed agreement" would "protect retirees and surviving spouses from any potential

8    cost sharing *throughout the term of the agreement.*" *Id.* (emphasis added).

9            **3.    The 1993 Modifications To And Extension Of The 1992 Master**
10                   **Agreement**

11           In early 1993, Mack advised the UAW that it needed to close one of its

12   manufacturing facilities due to overcapacity. Mack proposed to keep the UAW-represented

13   Macungie, Pennsylvania facility open and instead close another non-UAW represented facility in

14   exchange for concessions to the newly negotiated collective bargaining agreement. The UAW

15   agreed and on April 15, 1993, the parties signed a Memorandum of Agreement that confirmed the

16   negotiated concessions, extended the expiration date and related notice/termination provisions of the

17   1992 Master Agreement from October 26, 1995 to October 30, 1998 (the "Extension Period"), and

18   left the caps in place. However, the Memorandum of Agreement gave the UAW the right to reopen

19   the agreement on the caps as of October 25, 1995 and strike if the parties could not reach agreement

20   on all of the issues surrounding retiree health care, including the level of the caps during the

21   Extension Period. Huxta Decl. ¶5.

22           It further provided that "the Company reserves the right to raise potential concerns it

23   may have regarding the cost of health care in the context of its competitive environment, and the

24   Union likewise reserves the right to raise its concerns about the appropriate utilization of actual and

25   potential savings that would flow to the Company through adoption of a national health care

26   program." Kloosterman Decl. Exh. B at Sec. III. In other words, the parties agreed to bargain over

27   retiree health care issues.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION          4.          (No. C-07-4830 VRW)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4. The 1998 Master Agreement

The 1998 Master Agreement did not result in any substantial changes. It carried forward the above provisions regarding the "caps" as set forth in the 1992 Insurance Program, and incorporated verbatim that language into the 1998 Insurance Program, along with Letter #7. Additionally, as in the prior agreements, the 1998 Master Agreement contained the durational language discussed above. Bressler Decl. Exh. 9.

### 5. The 2001 Master Agreement

In negotiations for the 2001 Master Agreement, the UAW demanded an increase in the "caps." Mack refused. The parties compromised and agreed to contribute $30 million to a Voluntary Employee Benefit Association ("VEBA") trust to cover the costs in excess of the "caps" for the duration of the new agreement and to restore the VEBA's balance to $30 million at the expiration of the contract and to contribute whatever additional funds are necessary to fund projected costs in excess of the caps during the term of the successor agreement. Huxta Decl. ¶6. Again, the 2001 Agreement, like the prior agreements, did not change the durational terms. Bressler Decl. Exh. G.

### 6. The 2004 Master Agreement

The 2004 Master Agreement, which was set to expire on October 1, 2007, but has been extended to October 31, 2007 by mutual agreement, renewed the Company's retiree health coverage commitment. Huxta Decl. ¶2. In negotiations for the 2004 Master Agreement, the UAW demanded a similar funding agreement with respect to the VEBA. Mack refused but did agree to contribute $11,644,000 to the VEBA Trust established under the 2001 Master Agreement and agreed to contribute such additional funds if necessary to ensure that the VEBA Trust would not become insolvent during the term of the 2004-07 Master Agreement. Huxta Decl. ¶ 7. As with all prior agreements, the 2004 Agreement again specified in Article I, Section 1 that "[t]he Insurance Program which was attached as Appendix B to the Collective Bargaining Agreement between the parties . . .shall be amended . . . and *maintained by the Company as amended for the duration of the Collective Bargaining Agreement of which this Appendix B is a part*." Bressler Decl. Exh. I (emphasis added).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION

5.

(No. C-07-4830 VRW)

7.    **The August 2007 Letter to Retirees**

On August 13, 2007, the Company advised the UAW and the individual retirees and surviving spouses that it intended to continue retiree medical benefits as they currently exist until April 1, 2008, but would thereafter implement certain changes. Specifically, Mack recognized that the exploding costs of health care would negatively impact the company's viability. The effect of rising health care costs is widespread and has affected all companies in the automotive industry. These costs have resulted in some companies closing, which results in cutting-off all retiree benefits. *See, e.g., UAW et al. v. General Motors Corp. et al*, 497 F.3d 615, 620-21 (6th Cir. 2007) (discussing the impact of retiree health care on the automotive industry in the context of class actions against General Motors and Ford). Accordingly, Mack issued letters to retirees specifying the particular changes that would be made to their benefits on April 1, 2008. Huxta Decl. ¶8; Kloosterman Decl. Exh. C. The attachments laid out what costs would be absorbed by the Company and what costs would be absorbed by the retiree or surviving spouse.

8.    **The Pennsylvania Declaratory Relief Action**

The UAW opposed Mack's decision to change retiree benefits. In response to that opposition, Mack filed the above-described declaratory relief action in the Eastern District of Pennsylvania. Huxta Decl. ¶8. In the Complaint in that matter, Mack expressly states that the changes to the retiree benefits would absolutely not take effect before April 1, 2008. The Complaint, in providing a factual background, indicated that the 2004 Agreement was set to expire on October 1, 2007, but in no way claimed or projected that it intended to implement the changes to the retiree health care plan before April 1, 2008. *See* Exhibit A to Defendants' Request for Judicial Notice (Docket No. 24).

## IV.    PRELIMINARY INJUNCTION STANDARD

"The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). To establish entitlement to a preliminary injunction, a moving party must demonstrate either:

(1) a combination of probable success on the merits and the possibility of irreparable harm, or

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION                    6.                    (No. C-07-4830 VRW)

1     (2) that there exist serious questions regarding the merits and the balance of hardships

2 tips sharply in its favor.

3                     *Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987);

4 *California Cooler, Inc. v. Loretto Winery*, 774 F.2d 1451, 1455 (9th Cir. 1985). These factors are

5 examined on a continuum. *See Johnson Controls, Inc. v. Phoenix Control Sys.*, 886 F. 2d 1173,

6 1174 (9th Cir. 1989); see also *Alexander & Alexander Benefits Servs. v. Benefit Brokers &*

7 *Consultants, Inc.* , 756 F. Supp. 1408, 1411 (D. Or. 1991) (test is a "sliding scale in which the

8 required degree of irreparable harm increases as the probability of success decreases").

9 Accordingly, the courts examine whether the impact of a preliminary injunction on the party to be

10 enjoined is more severe than the injury the moving party would suffer if the injunction was not

11 granted. *Litton Sys. v. Sundstrand Corp.*, 750 F.2d 952, 959 (Fed. Cir. 1984). As discussed below,

12 Plaintiffs can establish neither that they have a reasonable probability of success on the merits, nor

13 that irreparable harm is likely, let alone imminent.

14 **V.     PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS**
       **BECAUSE MACK'S RETIREE BENEFITS ARE NOT VESTED**

15

16       **A.     Benefits Do Not Vest Unless The Employer Unambiguously Intended To Do So**

17     The primary issue in this matter is whether the retirees' benefits are vested. As

18 discussed below, if they have not, Mack may change retiree benefits. Mack asserts that they clearly

19 are not vested and Plaintiffs have no likelihood on the merits.

20     Collective bargaining between employers and unions is generally legislated by the

21 National Labor Relations Act ("NLRA"), 29 U.S.C. §151 *et seq.* The NLRA requires employers to

22 bargain with labor organizations over their employees' terms and conditions of employment. But

23 medical benefits for employees who have already retired from the bargaining unit are not a

24 mandatory subject of bargaining – the employer and union may bargain over them but are not

25 required to do so. *Chemical Workers v. Pittsburgh Plate Glass*, 404 U.S. 157 (1971). The rationale

26 for this is that retirees are not "employees" as that term is defined in §2(3) of the NLRA, 29 U.S.C.

27 §152(3), and their benefits do not "vitally affect" the terms and conditions of employment of

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION        7.        (No. C-07-4830 VRW)

1    bargaining unit employees. *Id.* Accordingly, Mack has no obligation to bargain with the UAW over

2    retiree medical benefits.

3        Both this action and the action pending in the Eastern District of Pennsylvania allege

4    claims arising from the Labor Management Relations Act ("LMRA") and the Employee Retirement

5    Income Security Act ("ERISA"). Section 301 of the LMRA, 29 U.S.C. §185, provides a cause of

6    action for breach of a collective bargaining agreement. After a collective bargaining agreement

7    expires "an employer generally is free to modify or terminate any retiree medical benefits that the

8    employer provided pursuant to that CBA." *American Federation of Grain Millers v. Int'l Multifoods*

9    *Corp.*, 116 F.3d 976, 979 (2d Cir. 1997), citing to *Litton Fin. Printing Div., a Div. of Litton Bus. Sys.*

10   *v. NLRB*, 501 U.S. 190, 207 (1991). Similarly, under ERISA, employers are free "for any reason at

11   any time, to adopt, modify or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514

12   U.S. 73, 78 (1995). But under both statutory schemes (LMRA and ERISA), ***an employer***

13   ***relinquishes its right to terminate or change retiree benefits if, and only if, those benefits have***

14   ***vested.*** *Int'l Multifoods, supra*, 116 F.3d at 980; *Inter-Modal Rail Employees Ass'n v. Atchison*,

15   *Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515 (1997). Thus, unless Plaintiffs' benefits have vested,

16   Mack can change them at any time after the expiration of the collective bargaining agreement

17   containing those benefits.

18       What does it mean to "vest" benefits? "It must be remembered that to vest benefits is

19   to render them ***forever unalterable***." *Skinner Engine, supra*, 188 F.3d at 139 (emphasis added).

20   Accordingly, "an employer's commitment to vest benefits is not to be inferred lightly and must be

21   stated in clear and express language." *Id.*, citing to *In re Unisys Corp. Retiree Medical Benefit*

22   *ERISA Litig.*, 58 F.3d 896, 902 (3d Cir. 1995). A promise to vest retiree medical benefits must be

23   set forth in the plan documents. *Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995).

24       If a collective bargaining agreement or other plan document unambiguously indicates

25   that retiree medical benefits are limited to the term of the agreement, the unambiguous language

26   must be enforced. *Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1223 (9th Cir. 1984); *Int'l Multifoods*,

27   *supra*, 116 F.3d at 980. But the inverse is not true – an agreement "that does not unambiguously

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION                    8.                    (No. C-07-4830 VRW)

1   limit medical benefits to the term of the agreement does not result in presumptively vested benefits."

2   *Angotti v. Rexam, Inc.*, 2006 WL 1646135 at *8 (N.D. Cal. June 14, 2006) (Wilken J.).

3          The legal framework for determining whether retiree benefits have vested is best

4   explained by the Seventh Circuit's recent decision in *Cherry v. Auburn Gear, Inc.*:

5              1. If a collective bargaining agreement is completely silent on the
               duration of health benefits, the entitlement to them expires with the
6              agreement, as a matter of law (that is, without going beyond the
               pleadings), unless the plaintiff can show by objective evidence that the
7              agreement is latently ambiguous, that is, that anyone knowledgeable
               about the real-world context of the agreement would realize that it
8              might not mean what it says. This is the *Bidlack* presumption and its
               latent-ambiguity rebuttal.
9
               2. If the agreement makes clear that the entitlement expires with the
10             agreement, as by including such a phrase as "during the term of this
               agreement," then, once again, the plaintiff loses as a matter of law
11             unless he can show a latent ambiguity by means of objective evidence.
               This is a general rule of contract law, independent of but consistent
12             with *Bidlack*.

13             3. If there is language in the agreement to suggest a grant of lifetime
               benefits, and the suggestion is not negated by the agreement read as a
14             whole, the plaintiff is entitled to a trial. Of course, if the agreement
               expressly grants such benefits, the plaintiff is entitled, not to a trial, but
15             to a judgment in his favor. We are speaking of a case in which merely
               suggestive language creates a patent ambiguity.
16

17   441 F.3d 476, 481-82 (7th Cir. 2006), citing to *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539,

18   547 (7th Cir. 2000) and *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir. 1993) (en banc).

19          Accordingly, to prevail, Plaintiffs have to rebut the presumption that their benefits

20   expire along with the appropriate Master Agreement (and are not vested) by showing either a latent

21   ambiguity or that any language suggesting lifetime benefits is not negated by the agreement read as a

22   whole. Even if they get through those barriers, which they cannot do, Plaintiffs then have to

23   convince the trier of fact that their interpretation is correct. Plaintiffs cannot do so.

24   **B.    The Pre-1992 Master Agreements Unambiguously Limit Retiree Benefits To The
            Duration Of The Contract, Meaning Those Benefits Did Not Vest**
25

26          As stated above, the Master Agreements, including the 2004 Master Agreement, are

27   unambiguously limited in duration. Appendix B of each Master Agreement since at least 1980 has

28   unambiguously stated that the benefits contained within would be maintained "for the duration of the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION          9.          (No. C-07-4830 VRW)
FOR PRELIMINARY INJUNCTION

1    Collective Bargaining Agreement of which this Appendix B is a part." Accordingly, in negotiations

2    for each successor Master Agreement, Mack was free to negotiate changes to the retiree program and

3    impose those changes on the existing retirees or even eliminate the program. There is nothing

4    contained in the plan documents or anywhere else in any of the pre-1992 Master Agreements that

5    calls this durational language into question.

6            The 1992 Master Agreement also contained this durational language in Appendix B.

7    But the 1992 Master Agreement also included, for the first time, the side letter (Letter #7) that the

8    Plaintiffs rely upon to support their theory that their benefits are vested. Accordingly, there can be

9    no question that Mack retirees who retired before 1992, such as Plaintiff Evitt, have no argument

10   that their retiree health benefits are vested – there is nothing in the pre-1992 Master Agreements or

11   plan documents that would assist Plaintiffs in meeting their burden of showing a "latent ambiguity"

12   that calls the express durational language into question. Additionally, since Mack and the UAW

13   negotiated the caps in 1992 (and have negotiated other retiree medical issues since then), it is clear

14   that the retiree benefits were not vested – if they were, they could not have been changed. *Skinner*

15   *Engine, supra*, 188 F.3d at 139 (vested benefits are "forever unalterable").

16       **C.    The "Lifetime" Language Contained In The Side Letters To The Post-1992**
              **Master Agreements Must Be Read In Conjunction With The Durational**
17            **Reservation Of Rights Language And Does Not Serve To Vest Retiree Benefits**

18           Post-1992 retirees, such as Plaintiff Ortega, rely on Letter #7, which indicates that

19   retiree benefits will be "lifetime benefits." But this must be read in the context of the entire

20   agreement. The side letter cannot, as Plaintiffs want, be read alone. As noted, Letter #7 has been

21   contained in Appendix B of each Master Agreement since 1992. But each such agreement also

22   contains the above-referenced durational language (retiree benefits will be maintained "for the

23   duration of the Collective Bargaining Agreement of which this Appendix is a part"). This durational

24   language is a reservation of rights. *Auburn Gear, supra*, 441 F.3d at 484 (language limiting benefits

25   "for the term of this agreement" is a reservation of rights clause); *Barnett v. Ameren Corp.*, 436 F.3d

26   830, 834 (7th Cir. 2006) (ibid).

27           Precedent is perfectly clear that *if language purporting to grant lifetime benefits is*

28   *contained in the same agreement as a reservation of rights clause, then there is no ambiguity in*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION        10.
FOR PRELIMINARY INJUNCTION                            (No. C-07-4830 VRW)

1   *the agreement and the benefits do not vest* – they are limited to the duration of the agreement.

2   *Auburn Gear, supra*, 441 F.3d at 483-84; *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1329-

3   31 (9th Cir. 1996) (no vesting when plan documents contain "lifetime" language but refer back to

4   collective bargaining agreement containing a reservation of rights); *Skinner Engine, supra*, 188 F.3d

5   at 139 ("lifetime" language does not evince an intent to vest retiree benefits when the collective

6   bargaining agreement also contains durational language); *In re Unisys, supra*, 58 F.3d at 903-04 (no

7   vesting where plan documents contained both "lifetime" language and a reservation of rights);

8   *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 950 (8th Cir. 1994) (plan documents ambiguous when they

9   contain both "lifetime" language and a reservation of rights clause); *Angotti v. Rexam, supra)*, 2006

10  WL 1646135 at *9 ("'lifetime' language may not vest benefits when contained in the same

11  document as a clear reservation of rights clause"); *United Mine Workers v. Brushy Creek Coal Co.*,

12  410 F.Supp.2d 723, 727-28 (S.D. Ill. 2006) (agreement is ambiguous when it contains both

13  "lifetime" language and a reservation of rights).

14          Plaintiffs do not, and cannot, dispute this statement of law. *See* Motion at 17:8-15

15  (indicating that precedent does not find vesting when the agreement contains a reservation of rights

16  clause). But Plaintiffs have ignored the durational language creating the reservation of rights clause

17  in this case.

18          Here, the current 2004 Master Agreement, and each preceding Master Agreement,

19  contains both Letter #7, which purports to grant a lifetime benefit, and the durational reservation of

20  rights clause. Precedent from this District, this Circuit and numerous other Circuits holds that in this

21  situation, there is no ambiguity or intent to vest the benefits; accordingly, the benefits are not vested.

22          This matter is strikingly analogous to *Skinner Engine, supra*, which also involved

23  benefits language negotiated by the UAW. In *Skinner Engine*, the Third Circuit reviewed a series of

24  collective bargaining agreements stating that the company "will continue" to provide employees who

25  retire with certain health and insurance benefits at company expense. Each agreement also

26  contained express durational language limiting the term of the agreement.    Following

27  implementation of FAS 106, the company concluded that it was financially beneficial to reduce the

28  benefits provided to retirees. As such, with respect to existing retirees, the company eliminated

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION                11.                    (No. C-07-4830 VRW)

1    certain insurance benefits, increased retiree health benefit deductibles and required the co-payment

2    of certain retiree health benefit premiums.

3        The union and some retirees brought suit to enjoin the changes, alleging that the

4    company's commitment to "continue to provide" retirees with life and medical insurance benefits

5    created a vested right to those benefits upon each employee's retirement.  The company argued that

6    such benefits were terminable at the expiration of the collective bargaining agreement under which

7    the right to the benefits was provided and, therefore, could be changed at that time without the

8    retirees' consent.

9        In analyzing these respective arguments, the Third Circuit stated that "to vest benefits

10   is to render them forever unalterable.  Because vesting of welfare plan benefits constitutes an extra-

11   ERISA commitment, an employer's commitment to vest such benefits is not to be lightly inferred

12   and must be stated in clear and express language."  *Id.* at 139.  The court concluded that the phrases

13   "'will continue' and 'shall remain' do not evince an intent on the part of the union and the employer

14   to vest benefits for retirees."  *Id.* at 141.  Further, "a plain reading of the phrases, 'will continue' and

15   'shall remain,' certainly does not unambiguously indicate that the benefits will continue *ad*

16   *infinitum.*"  Rather, "[a]n equally reasonable interpretation is that the benefits 'will continue until the

17   CBA expires,' or that they 'shall remain . . . until the CBA expires.'  Indeed, the latter interpretation

18   appears to be more reasonable in light of the durational provisions in all of the CBAs."  *Id.*  Thus,

19   the retirees were not vested and the company was free to eliminate benefits and impose cost-sharing

20   requirement upon the retirees.

21       **D.    The Parties' Bargaining History Also Indicates That Retiree Benefits Did Not**
22       **Vest**

23       Mack believes that there is no reason for the Court to review extrinsic evidence of

24   negotiations in this matter.  But doing so leads to the same result – that the parties believed that the

25   retiree benefits were not vested.  Vested benefits are "forever unalterable."  *Skinner Engine, supra,*

26   188 F.3d at 139.  If the retiree benefits here are vested, the question is when did they do so?

27   Certainly not before 1992.  But they also never vested thereafter because they were frequently

28   negotiated over, and thus altered.  There were "caps" instituted in 1992 that identified and limited

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION              12.                (No. C-07-4830 VRW)
FOR PRELIMINARY INJUNCTION

1  the annual amount the Company would contribute to retiree health insurance.  The UAW Report

2  discussing the 1992 Master Agreement refers to the caps as "protect[ing] retirees and surviving

3  spouses from any potential cost sharing *throughout the term of the agreement*."  Kloosterman Decl.

4  Exh. A (emphasis added).  This indicates that the UAW did not view the 1992 Master Agreement as

5  providing for lifetime retiree benefits, despite the language of Letter #7.

6          The 1993 Memorandum of Agreement indicates that the parties could not reach an

7  agreement on the caps and reserved to the union the right to strike if they did not reach agreement in

8  1995.  There are also the 2001 and 2004 VEBA agreements covering amounts in excess of the

9  "caps."  Huxta Decl. ¶5-7.

10          The UAW's agreement to negotiate over and alter the benefits of individuals who had

11  already retired demonstrates that the UAW knew the benefits were not vested.  *See Pabst Brewing*

12  *Co. v. Corrao*, 161 F.3d 434, 442 (7th Cir. 1998) (changing retiree benefits indicates a belief that the

13  benefits are not vested).  This history confirms that the retiree health insurance benefits could in fact

14  be changed at the end of each Master Agreement, meaning they were alterable and never vested.

15  **VI.    PLAINTIFFS CANNOT SHOW IRREPARABLE HARM OR ANY IMMEDIATE**
16          **THREAT OF HARM**

17          With regard to injunctive relief in a proposed class action, "Plaintiffs must first show

18  proof of particularized harm through affidavits, and then reason to conclude that these harms are

19  representative."  *Angotti, supra*, 2006 WL 1646135 at *15 (N.D. Cal. 2006).

20          Plaintiffs have submitted the declarations of the three Plaintiffs, Mr. & Mrs. Evitt and

21  Mr. Ortega, in support of their Motion for Preliminary Injunction.  Although these declarations

22  provide details regarding the individual Plaintiffs' present health status, they fail to show that such

23  harm is representative of the entire prospective class.  The potential class is over 5,000 people, less

24  than 1% of whom reside in California.  The average age of these retirees and surviving spouses is

25  unknown, as is their present health needs and status.  Further, the Evitts and Mr. Ortega are not

26  similarly situated in that Mr. Evitt retired prior to 1992 (prior to the side letter containing the

27  "lifetime" language) and Mr. Ortega retired after 1992.  Therefore, the Plaintiffs are unable at this

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION                    13.                    (No. C-07-4830 VRW)

1  time to show that their fellow class members are similarly situated and will suffer irreparable harm.

2  Thus, a preliminary injunction should not issue.

3  More importantly, there is no present danger of any harm.  Mack has consistently

4  stated that it will take no action before April 2008.  Plaintiffs "must demonstrate immediate

5  threatened harm."  *Caribbean Marine Serv. Co., Inc. v. Baldridge,* 844 F.2d 668, 674 (9th Cir.

6  1988).  Establishing a risk of irreparable harm in the indefinite future is not enough.  The harm must

7  be shown to be imminent. *Id.*; *Midgett v. Tri–County Metro. Transp. Dist. of Oregon,* 254 F.3d 846,

8  850–851 (9th Cir. 2001).

9  Plaintiffs' assert they need injunctive relief because the 2004 Master Agreement

10 expired on October 1, 2007 and that Mack could take action to change retiree benefits at any time

11 thereafter.  Plaintiffs are just wrong.  First, the Master Agreement is still in effect as of this writing.

12 Second, Mack has continually and unequivocally stated that no changes will be made before April

13 2008.  Mack has stated this to the UAW, to the retirees in the August letters, in its pleadings in the

14 Pennsylvania action, and in papers filed with this Court.  Mack's counsel also stated this fact directly

15 to this Court.  No immediate action will occur and there is no immediate danger of harm.

16 **VII.  CONCLUSION**

17 For the above-stated reasons, Plaintiffs' Motion for Preliminary Injunction should be

18 denied.

19 Dated: October 15, 2007

21                                   /s/

22                                   John C. Kloosterman
                                     LITTLER MENDELSON
23                                   A Professional Corporation
                                     Attorneys for Defendants
24                                   MACK TRUCKS, INC. AND MACK
                                     HEALTH, DISABILITY AND LIFE
25                                   BENEFITS FOR UAW EMPLOYEES

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' OPPOSITION TO MOTION
FOR PRELIMINARY INJUNCTION        14.        (No. C-07-4830 VRW)