# EXHIBIT A

**NOVEMBER, 1992**

*SPECIAL UAW REPORT*

# HIGHLIGHTS OF THE PROPOSED NEW UAW-MACK TRUCKS MASTER AGREEMENT 1992-1995

- Wage Parity Increases
- Full COLA Protection
- 45 Paid Holidays: Veteran's Day Breakthrough
- Group Insurance Improvements
- Strengthened Job Security Program
- Big Pension Gains
- Profit Sharing Plan Significantly Improved
- Important Gains In Health and Safety

# A Report to UAW-Mack Trucks Members and Families

*Solidarity House*

CABLE: "UAW DETROIT"

8000 EAST JEFFERSON AVE.
DETROIT, MICHIGAN 48214
PHONE (313) 926-5000

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA—UAW

OWEN F. BIEBER, PRESIDENT    BILL CASSTEVENS, SECRETARY-TREASURER

VICE-PRESIDENTS: CAROLYN FORREST • ERNEST LOFTON • STAN MARSHALL • STEPHEN P. YOKICH

Dear UAW-Mack Member:

In the 1992 negotiations with Mack Trucks, the greatest challenges faced by your UAW-Mack Master Negotiating Committee centered on the needs to maintain and strengthen the job and income security of UAW-Mack workers, to improve substantially the opportunities for retirement with greater economic security, and to assure current and future Mack retirees that their lifetime retirement benefits would be guaranteed.

As a key part of UAW's effort, substantial parity increases were achieved for certain classifications at several locations, covering close to half of the workforce.

Simultaneously, the UAW bargaining team was determined to maintain a comprehensive program of health care protections for UAW-Mack workers and your families. The UAW bargaining committee was also determined to strengthen on-the-job health and safety protections and to make those enhanced protections uniform across the Mack chain of facilities.

The challenge of making progress in this round of negotiations was made especially difficult by the current national economic climate, which has affected sales and production of Mack trucks along with other employers in the truck-building industry. Against that economic backdrop, your Union negotiating team successfully resisted demands by management to erode the health care program, and to weaken the security of retirement benefits.

While protecting your hard-won gains of the past, your UAW negotiators were successful in making progress in a number of areas, including a breakthrough establishing Veteran's Day as a new paid holiday, along with provisions for unbroken four-day Independence Day holiday weekends in each year of the proposed new agreement and vastly improved potential profit sharing payouts.

We are pleased to report that the parties' overall positive relationship passed the test of the serious challenges which faced us in the 1992 negotiations.

None of the gains achieved would have been possible without the outstanding support of the UAW-Mack Master Negotiating Committee by the UAW-Mack members and families. Thank you for your outstanding support and solidarity.

Fraternally,

Bill Casstevens

Bill Casstevens
Secretary-Treasurer and Director
UAW-Mack Trucks Department



opeiu494
PRINTED IN USA

## WAGE PARITY ADJUSTMENTS AND CONTINUED COLA PROTECTION

Wages and incomes of UAW-Mack workers will increase over the course of the proposed agreement as a result of negotiated provisions.

Base wage rates will be increased at the start of the new agreement through fold-in of all but 5 cents, which will continue as a "float," of the cost-of-living adjustment (COLA) amount which accumulated under the prior agreement at each location.

COLA protection is continued throughout the new agreement, with quarterly adjustments based on the formula of an increase of 1 cent for each .26 upward change in the Consumer Price Index.

Additionally, the Union negotiated substantial parity increases for certain classifications at several locations. The parity adjustments are intended to bring into balance the base wages of workers performing the same kinds of work throughout the Mack chain. The company agreed to make the parity adjustments at six-month stages at most locations beginning on January 4, 1993. The adjustments are to be provided to close to half of the workforce. They come after the special wage rate increases of between $1.00 and $2.00 per hour implemented in 1991 for much of the balance of the workforce.

## JOB AND INCOME SECURITY PROGRAM STRENGTHENED

Provisions strengthening the job and income security of Mack workers were negotiated in the Mack Protected Employee Group (PEG) Program.

Among the improvements, the Union secured provisions assuring that the protected employee group (PEG) at each bargaining unit would constitute no less than the jobs of 90 percent of the active employees in the unit as of the effective date of the new agreement. In certain cases, the jobs of up to 100 percent of the current active workforce will be protected under the PEG program, depending on the location and the growth of its active workforce since July 1, 1991.

In most cases, the new PEG numbers result in a higher number of jobs being protected than previously. Under the improved program, for the first time the jobs of workers at the Macungie facility are protected at the 90 percent PEG level; previously, the jobs at Macungie were not protected under PEG because of attrition-related charges related to the closing of Allentown operations.

The union was successful in eliminating the financial cap on Mack's obligations to carry out the negotiated PEG program commitments and protections.

Also among the improvements, the UAW negotiated a "grow-in" provision. It assures that the PEG protections will be expanded to cover additional jobs when workers who are recalled under the new agreement work a total of 26 weeks following the effective date of the agreement.

The union agreed that the company may schedule up to nine weeks of layoff in each contract year in each unit for market-driven volume declines. In the event of such layoffs, workers will be eligible for guaranteed Supplemental Unemployment Benefits (SUB) of $200 per week if governmental unemployment compensation is also payable, or of $250 per week if no unemployment compensation is payable. The guaranteed benefits will provide SUB payments for up to 26 weeks of layoff for a worker who has fewer than 10 years of service, and for up to 52 weeks of layoff for a worker with 10 or more years of service. The guaranteed SUB benefits are minimums, which could be higher in the event that the SUB Fund is restored to sufficient levels.

Other basic provisions of the PEG Program under the prior agreement are continued under the proposed new agreement, including the range of circumstances covered, the PEG pools, administrative rules, and other provisions.

## AT LEAST 18-MONTH CONTINUATION OF ARTICLE 28 BAN ON CLOSINGS, OUTSOURCING, TRANSFERS

The union negotiated a continuation for at least 18 months of the provisions of Article 28, which protects workers against plant closings, outsourcing or transfers of operations except by mutual agreement.

The continuation is subject to a letter of understanding that would, after the 18 months, permit a reopening of discussions between the UAW and Mack concerning the prohibition against plant closings, upon written notice from the company. The reopener provision would not include matters related to outsourcing or transfers of operations.

In the event of such a notice from Mack, the parties would enter into "discussions concerning the impact of the Company's plans and the income protections, benefits and other arrangements that would need to be implemented for affected Mack-UAW employees."



UAW Secretary-Treasurer Bill Casstevens (center), director of the Union's Mack Trucks Dept., reviews economic and job security proposals in a late-night bargaining strategy session with, left, Frank Musick, director of UAW Special Projects, and, at right, Casstevens' administrative assistant, Phil Cabreros.

# HEALTH AND SAFETY IMPROVEMENTS

Your UAW-Mack Negotiating Committee attained improvements in health and safety provisions, while achieving standardized language which will now apply uniformly across the Mack chain of facilities.

As part of the negotiations to attain uniform language covering all UAW-Mack locations, the parties agreed to coordinate health and safety language from various local agreements into the Master Agreement. Many provisions which may have been provided previously in certain local agreements are now incorporated for all units into the Master Agreement.

Among the gains, the UAW negotiators improved the provisions covering the periodic Safety Talks conducted in facilities by supervisors. Workers will be allowed to raise health and safety issues during Safety Talks, with the expectation that corrections will be made and/or that feedback will be given on any concerns which are raised.

The Ergonomics process will be continued where it is in effect and will begin where it does not exist at this time.

Improved language also provides for:

- An earlier review of new processes and equipment by the Health and Safety Representative;

- Joint investigation of serious or potentially serious accidents;

- Improved procedures covering imminent danger situations;

- Material Safety Data Sheets to be more readily available to workers;

- Improved language on working alone;

- Identification of all confined spaces in each facility;

- Implementation of a Noise Abatement Program in all facilities;

- Improved liability language for the Union and union members of joint committees.

Improvements were made in providing health and safety representation. Representation was provided in both bargaining units of Local 1247 in the person of the Bargaining Chairs. In the manufacturing units at Allentown, Macungie, Hagerstown and Winnsboro, alternates may now function when the health and safety representative is absent for one full day. Health and safety representatives at the manufacturing locations will now all be appointed by the International Union. Provisions were made for better representation in the parts distribution centers, providing for alternate health and safety representatives.

The Union negotiated improved language on the makeup of the Joint Committees on Health and Safety in all locations. Provisions were made for the joint development of facility safety programs and the UAW health and safety representative will now co-chair the joint committee meetings.

In addition, the International Joint Committee on Health and Safety will meet at least twice a year to review facility programs and to recommend training for health and safety representatives and their alternates.

## TUITION REFUND PROGRAM

The UAW negotiated a commitment from Mack to join with the Union in developing deferred payment plans with local educational institutions for courses taken by UAW-Mack workers which are eligible for tuition refund.

The goal is to develop deferred payment plans with the educational, vocational and technical institutions, which would permit the institution to be paid directly by the company for eligible tuition and fees following the worker's successful completion of the course. If the worker does not complete the course successfully, the tuition and fees would be the employee's responsibility.

## PROFIT SHARING

Your bargaining team made two significant improvements in the profit sharing plan that will substantially enhance payout opportunities when the company returns to profitability.

The first set of improvements involve raising the payout percentages at each step of the formula to a new maximum payout of 22 percent of Mack's U.S. profits, compared to the old maximum of 15 percent.

The second change removes the historical inflation adjustments that had previously been made to each payout bracket; this change allows potential payout levels to expand rather than contract over time.

## DURATION, RATIFICATION & TEXT

The proposed agreement would be effective, following ratification, for the three-year period from October 28, 1992, until midnight, October 25, 1995.

None of these proposed changes will take effect until the tentative agreement is ratified by a majority of the membership, and only then on the appropriate effective dates specified.

This summary is intended to highlight provisions of the tentative agreement. In all cases, the actual language of the contract will govern.

## *Veteran's Day: A Breakthrough*
# 45 PAID HOLIDAYS AT MACK

The proposed agreement provides for 45 paid holidays, including a breakthrough to provide Veteran's Day as a paid holiday.

The newly negotiated holiday will be provided beginning Veteran's Day in 1993 and continuing again in the third year of the proposed agreement in 1994.

Also newly included are unbroken, four-day Independence Day holiday weekends in 1993, 1994, and 1995.

Continuation is assured of the paid Christmas-through-New Year's shutdowns, the birthday of the late Rev. Dr. Martin Luther King Jr., and all other traditional holidays in each year of the new agreement.

Following are the holidays with pay:

### 1992-1993
November 26, 1992, Thanksgiving Day
November 27, 1992, Day After Thanksgiving
December 24, 1992
December 25, 1992
December 28, 1992  } Christmas-through-New Year's Shutdown
December 29, 1992
December 30, 1992
December 31, 1992
January 1, 1993
January 18, 1993 Martin Luther King Jr. Birthday
   (Observed)
April 9, 1993, Good Friday
May 31, 1993, Memorial Day
July 2, 1993, Friday Before Independence Day
July 5, 1993, Independence Day (Observed)
September 6, 1993, Labor Day

### 1993-1994
November 12, 1993, Veteran's Day
November 25, 1993, Thanksgiving Day
November 26, 1993, Day After Thanksgiving
December 24, 1993
December 27, 1993
December 28, 1993  } Christmas-through-New Year's Shutdown
December 29, 1993
December 30, 1993
December 31, 1993
January 17, 1994 Martin Luther King Jr. Birthday
   (Observed)
April 1, 1994, Good Friday
May 30, 1994, Memorial Day
July 1, 1994, Friday Before Independence Day
July 4, 1994, Independence Day
September 5, 1994, Labor Day

### 1994-1995
November 11, 1994, Veteran's Day
November 24, 1994, Thanksgiving Day
November 25, 1994, Day After Thanksgiving
December 26, 1994
December 27, 1994
December 28, 1994  } Christmas-through-New Year's Shutdown
December 29, 1994
December 30, 1994
January 2, 1995
January 16, 1995 Martin Luther King Jr. Birthday
   (Observed)
April 14, 1995, Good Friday
May 29, 1995, Memorial Day
July 3, 1995, Monday Before Independence Day
July 4, 1995, Independence Day
September 4, 1995, Labor Day

## VACATIONS

Effective January 1, 1993, the vacation credit year will be placed on a calendar-year basis of January 1 through December 31.

During the transition to this new vacation year system, the former vacation credit year ending May 31, 1992 will apply to the vacation "take year" period ending May 31, 1993. Thereafter, effective June 1, 1993, the vacation credit year period of June 1, 1992 through December 31, 1992 will apply to a transitional vacation take year period extending from June 1, 1993 to December 31, 1993.

Following are the credit year and the take periods under the new agreement:

| Credit Year | Take Period |
| --- | --- |
| Concluding 5/31/92 | Concluding 5/31/93 |
| 6/1/92 to 12/31/92 | 6/1/93 to 12/31/93 |
| 1/1/93 to 12/31/93 | 1/1/94 to 12/31/94 |
| 1/1/94 to 12/31/94 | 1/1/95 to 12/31/95 |

# GROUP INSURANCE GAINS FOR UAW-MACK WORKERS

Important improvements were negotiated in the group life, accident and sickness, (A&S), accidental death and dismemberment (A.D. & D.) and long term disability (LTD) insurance program benefits.

The benefits under the program will be increased in four stages over the term of the proposed agreement. Following is a table showing the newly negotiated improvements:

### NEW BENEFITS EFFECTIVE*

|       | Current Benefit | Nov. 1 1992 | Aug. 1 1993 | May 1 1994 | Mar. 1 1995 |
|-------|-----------------|-------------|-------------|------------|-------------|
| A & S | $ 375           | $ 395       | $ 410       | $ 430      | $ 445       |
| LTD   | $ 1,350         | $ 1,425     | $ 1,475     | $ 1,550    | $ 1,600     |
| Life**| $37,500         | $38,750     | $40,000     | $41,000    | $42,000     |

*Each new benefit amount is effective for claims commencing on or after the listed effective date.

**The option for installment payments of Life Insurance for Totally and Permanently disabled employees will continue at the current rate of $20 for each $1,000 of the Life Insurance amount, payable in 50 equal installments. Accidental death and dismemberment benefits continue to be 50 percent of the life insurance.

### Retiree Life Insurance Coverage

Current and future retirees will now have life insurance protection equal to 25 percent of the amount in effect for them as active employees, or the scheduled amounts listed below, whichever is greater. The listed amounts represent an increase of $500 over the amounts under the prior agreement.

|                    | Life Insurance Amounts | |
|--------------------|-----------------------|--------------|
| Date of Retirement | Effect. 1/1/93        | Effect. 1/1/94 |
| Pre 1/1/65         | $3,750                | $4,000       |
| 1/1/65 to 1/1/74   | $4,750                | $5,000       |
| 1/1/74 to 1/1/76   | $5,750                | $6,000       |
| 1/1/76 to 1/1/77   | $6,750                | $7,000       |
| 1/1/77 to 3/1/80   | $7,250                | $7,500       |
| 3/1/80 and after   | $7,750                | $8,000       |

In addition, effective January 1, 1993, the company may no longer reduce A&S or LTD benefits by the amount of any permanent partial disability payments awarded under state workers' compensation laws for illnesses or injuries unrelated to the disability for which A&S or LTD benefits are payable.



PHOTOS BY KARL MANTYLA

Rank-and-file members of the UAW-Mack Master Negotiating Committee gather during a brief respite from the intensive bargaining which yielded a comprehensive tentative agreement 3½ days after the old agreement expired.

# MAJOR PENSION GAINS ACHIEVED

Pension benefits will be increased by substantial amounts for workers retiring under the proposed agreement. These major gains in retirement security are spread over the three-year agreement in four stages of increases and include:

- An increase of $4.40 per month per year of credited service in the basic Life Income Benefit for workers retiring under the new agreement, raising the benefit rate to $28.90
- An increase in the monthly "30-and-Out" retirement benefit of $275, to a new maximum of $1,645.
- An increase of $3.45 in the monthly Temporary Benefit rate per year of credited service, which is payable to Total and Permanent Disability retirees who are not in receipt of Social Security disability benefits and to workers who retire with a mutually satisfactory pension or a special early pension.

Additionally, the Union negotiated three lump sum payments for current retirees and surviving spouses.

### I. Retirements under the New Contract

Major gains in the newly negotiated Pension Plan will be made in each of the benefit categories in four separate stages. In each benefit category, the principle of step-rate increases has been preserved, with all workers who retire on or after the effective date enjoying all of the benefit increases which commence on or after their retirement dates.

The following table illustrates these pension benefit gains for retirements under the proposed agreement.

### Monthly Pension Increases For Future Retirements

| Benefit Category | Benefit Payable 11/1/92 | Benefit Payable 8/1/93 | Benefit Payable 5/1/94 | Benefit Payable 3/1/95 | Total Contract Increase 1992-1995 |
|---|---|---|---|---|---|
| Life Income Benefits (Per year of credited service) | $26.45 | $27.45 | $28.40 | $28.90 | $4.40 |
| 30-and-Out Maximum | $1,495.00 | $1,555.00 | $1,615.00 | $1,645.00 | $275.00 |
| Temporary Benefit (Per year of credited service) | $21.15 ($634.50 max.) | $21.95 ($658.50 max.) | $22.70 ($681.00 max.) | $23.10 ($693.00 max.) | $3.45 ($103.50 max.) |

### II. Current Retirees

Three lump-sum payments (totaling a maximum of $900) will be made to current retirees; and surviving spouses will also receive three lump-sum payments (totaling a maximum of $495) on the same effective dates. Each payment will be $300 for retirees and $165 for surviving spouses as described below:

| Payment Date | Amounts |
|---|---|
| January 1, 1993 | $300 / $165 |
| January 1, 1994 | $300 / $165 |
| January 1, 1995 | $300 / $165 |

The above maximum amounts will be pro-rated for retirees with fewer than 30 years of credited service, as well as for their survivors.

In addition, the monthly Special Survivor Option benefit for some of our oldest widows/widowers has been increased from the current $5 level to $9, multiplied by the worker's credited service. This increase will also be effective November 1, 1992.

Lifelong benefits for current and future retirees and surviving spouses have also been improved by eliminating the charge against monthly pension benefits formerly levied by the company to provide survivor benefit protection under the Pre-Retirement Survivor Option which was established under the Retirement Equity Act of 1984.

Reimbursement for the full amount of the monthly Medicare Part B will continue for eligible retirees and their spouses, along with surviving spouses of retirees.

# RETIREE HEALTH CARE GUARANTEES

One of the most challenging issues facing the UAW-Mack Master Negotiating Committee in the 1992 negotiations was that of maintaining health care benefits for past and future retirees and their surviving spouses as a lifetime benefit in the face of steeply rising health care costs and changes in financial accounting standards.

The accounting standards issue flowed from a new national accounting standard established by the Financial Accounting Standards Board (FASB), which requires corporations to begin recognizing on their financial statements the costs of both already accumulated and future retiree health care benefits. In the case of Mack, the accounting requirement represented a problem involving several hundreds of millions of dollars of immediate, one-time write-offs against the firm's balance sheet.

In working out a negotiated, equitable means of resolving the issue, the UAW was determined to protect the principle that retiree health care benefits would continue to be lifetime benefits, to protect those benefits from erosion, and to avoid shifting health care costs from the company to retirees.

Consequently, the UAW and Mack agreed to establish outside limits upon the company's financial obligations for retiree health care expenditures in each year of the proposed agreement. These negotiated limits are significantly higher than any anticipated escalation in health care costs; in fact, the rate of increase used to establish the limits was set at nearly three times the annual escalation in actual costs during the past three years. This should protect retirees and surviving spouses from any potential cost sharing throughout the term of the agreement.

Additionally, in a letter of understanding negotiated by the Union, Mack reaffirmed its commitment to the principle of lifetime retiree health care benefits, stating unequivocally that: "The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits, and that the establishment of these 'caps' in no way modifies or negates this commitment."

The company and the Union agreed to work jointly to control the cost impact of health care on the corporation, while continuing to provide quality professional health care to covered workers and retirees.

## IMPROVED PROCEDURE ON MEDICAL DISPUTES

The Union negotiated improvements in the procedures related to the resolution of medical disputes.

In the event of a medical dispute between a worker's doctor and the company's doctor, the procedure now requires that the disability benefit shall be continued until the results of a scheduled Independent Medical Examination (IME) are received, unless the worker returns to his or her job prior to receipt of the results.

Selection of the physician for the IME must be by mutual agreement or from a previously agreed-upon panel of physicians whose credentials will be reviewed periodically.

## NEW HEALTH CARE OPTION

The Union and the company agreed to develop and implement a mutually acceptable managed health care plan, as an option and a voluntary alternative to the traditional indemnity and the Health Maintenance Organization plans.

The managed care plan would cover hospital, surgical and medical services, excluding psychiatric and substance abuse treatment services. Its goal would be to provide easily accessible, high-quality services with comprehensive coverage, and to help contain the significantly increasing costs of health care. It would feature certain enhancements to the current benefit plans.

The plan would apply, where instituted, to workers, retirees and surviving spouses under age 65 and their eligible dependents.

The UAW and Mack agreed to meet as soon as possible to begin designing the plan for service areas where the parties determine it would be practicable. In the Lehigh Valley at Allentown, the target date for implementation would be no later than July 1, 1993.

Information materials and sessions will be jointly developed to inform UAW-Mack members of the features of the optional managed care health plan.



John Collings (left), senior consultant in the UAW Social Security Department, reviews a pension benefits proposal with Frank Musick, director of UAW special projects.

# HEALTH CARE IMPROVEMENTS

The health care program was improved and upated in several areas. Unless otherwise indicated, the ffective date for improvements will be January 1, 1993.

### PRESCRIPTION DRUG PROGRAM

The Prescription Drug Program has been improved vith the addition of 21 new maintenance legend drugs vailable for a single co-payment in 100-unit doses for hose with various chronic health conditions requiring ngoing medication.

Co-payments for prescription drugs under both the egular program and the mail order program will continue ɔ be $2 for generic drugs, and for brand name drugs when 1ere is no generic equivalent or when a doctor prescribes brand name out of medical necessity. The co-payment /ill be $5 for prescription drugs if a person insists on a rand name when a generic substitute exists, and without a :octor's indication on the prescription form that such a rand name is medically required.

### VISION CARE

The Vision Care Program will now cover the full ost of medically necessary contact lenses for the following onditions: (1.) following cataract surgery (one per lifeime); (2.) following cataract surgery when visual activity annot be restored to better than 20/70 in the better eye; (3.) ollowing cataract surgery for irregular astigmatism; (4.) or irregular corneal curvature; and (5.) for Keratoconus.

### DENTAL CARE

Teeth cleaning services will now be available twice a calendar year and the frequency of complete mouth x-rays will be once in a five-year period, unless medical necessity requires more frequent x-rays. A new benefit will now be paid for dental sealants (to prevent tooth decay) once per lifetime for children age 14 or younger, limited to permanent posterior molars.

### DURABLE MEDICAL EQUIPMENT - PROSTHETIC AND ORTHOTIC DEVICES - (DME-P & O)

Two new coverages were added effective January 1, 1993 to the DME and P & O benefits. Home phototherapy benefits will now be available for newborn children with yellow jaundice so they can be treated safely in the home setting.

Also, a functional accessory for children's wheelchairs - known as a bead seat -- will now be a covered benefit. Three types of such bead seats will be covered.

### HIV TESTING

Coverage will now be provided for testing procedures for the Human Immunodeficiency Virus (HIV). Such tests will be covered on the same basis as other diagnostic tests: the test must be appropriate and necessary for the symptoms, diagnosis or treatment of a medical condition.

*(Continued on page 10)*



)ne of the many thorny bargaining issues that confronted the UAW team is examined by Bill Casstevens (left), UAW ;ecretary-Treasurer who directs the Mack Trucks Department. Clockwise are Phil Cabreros, Casstevens' adminisrative assistant, and International Representatives Roy Goforth and Sam McDowell.


## HEALTH CARE
(Continued from page 9)

### AIR AMBULANCE COVERAGES
Medically necessary air ambulance services will now be covered for the first time. The air ambulance benefit will provide up to a $325 flat payment to the provider, plus $2.75 per mile to the nearest facility that can render treatment.

### MEDICARE PART B PREMIUMS FULLY PAID
The proposed contract continues to pay the full monthly premium required under federal law for the Medicare Part B premium.

In addition, the Union negotiated a new provision, designed to encourage enrollment of those who had not formerly joined the Medicare program. Benefits provided under the UAW/Mack Health Care Program will presume enrollment under Medicare, effective July 1, 1993. However, if the federal system requires any late enrollment penalties to be paid by the member, then the Company will pay such penalties in full, along with the full amount of the regular Medicare Part B premium. All those who are eligible for such Medicare coverages should enroll in the Medicare Program. Failure to do so would reduce the benefits payable under the Mack/UAW health program because it will be assumed that all those eligible for Medicare have been enrolled, now that the Company must pay the full premium, including any late enrollment penalties.

### BALANCE BILLING - HOLD HARMLESS
The Union won a "Hold Harmless" provision in the new contract which will continue the requirement that the Company pay all "balance bills" charged by certain health care providers which are in excess of the plan's determination of the reasonable and customary charge for the service. This protection for our members from overcharges by certain health care providers will continue for the duration of the 1992-1995 agreement, and it will apply both to participating providers under Blue Cross/Blue Shield and to participating providers under the current insurance carrier or any future insurance carrier.

### MENTAL HEALTH AND SUBSTANCE ABUSE BENEFITS
The Union has incorporated into the contract the practice whereby an extra $5,000 of benefits for outpatient psychiatric or substance abuse treatment would be paid by the plan, in addition to the regular $1,000 maximum, when such treatment is recommended by the Cost Care predetermination program as proper medical treatment as an alternative to inpatient care.

In addition, the Union and the company agreed to study the feasibility of a managed psychiatric and substance abuse program which would provide high quality services at reasonable rates through direct contracting with a limited network of quality providers.

### NATIONAL HEALTH INSURANCE
The company has agreed to join with our Union and with major employers in our country to recognize our common objective for a high-quality, cost-effective health care delivery system which is accessible to all. The company has agreed to support approaches directed towards achieving prompt and lasting solutions to the health care delivery crisis. Such approaches to national health insurance should include strong cost containment, equitable financing, and appropriate quality assurance mechanisms.

## COMMITMENTS TO MUTUAL RESPECT AND ACCEPTANCE

Important progress was made toward an improved constructive relationship between Mack Trucks and the Union, as an outgrowth of extensive discussions regarding issues of mutual respect and acceptance.

A new letter of understanding expresses commitments by the company to neutrality in the event of an organizing campaign by the Union at a Mack facility, and to recognition of the UAW based upon a card check in which a simple majority of the workers authorizes the Union as bargaining representative.

For the first time, the company assured the UAW in writing that it does not wish in any way "to impede the UAW's legitimate institutional interests in organizing production/maintenance, clerical, technical, or warehouse employees at any Mack Trucks, Inc. facilities."

In the new letter, Mack also agreed to:

"1. Maintain a neutral position with respect both to the UAW and the issues of Union representation generally during any organizing campaign conducted by the UAW at any Mack Trucks, Inc. facilities for an appropriate bargaining unit of production/maintenance, clerical, technical, or warehouse employees.

"2. Recognize the UAW as the sole and exclusive collective bargaining agent for an appropriate bargaining unit of production/maintenance, clerical, technical, or warehouse employees at any Company facilities on the basis of a card check in which a majority (fifty percent plus one) of the employees signed an authorization card.

"3. Extend all terms and conditions of the Master Agreement to any facility whose employees have chosen the UAW as their collective bargaining representative."

## ASSURANCES REGARDING REPLACEMENT WORKERS

The company provided assurances in writing that Mack intends to continue a policy of relying upon the negotiation process to resolve issues.

As part of this policy, Mack noted that even in the instances where strikes by UAW-Mack members have occurred, the company has refrained from continuing production operations by hiring new employees as permanent replacements for striking workers. The company noted that this course of action "had permitted us to address the issue without additional pressure and escalation of the tensions of the situation."

The company affirmed that "it is Mack's intent to continue this long established corporate policy so long as our relationship remains businesslike."



A bargaining issue is discussed with fellow negotiators by Bill Casstevens, UAW Secretary-Treasurer and director of the Union's Mack Trucks Department.



Page 11

# UAW'S Negotiating Team at Mack Trucks



**Bill Casstevens**
Secretary-Treasurer and Director, UAW Mack Trucks Dept.

**Bobby Lee Thompson**
Director, UAW Region 8

**Tom Fricano**
Director, UAW Region 9

**Phil Cabreros**
Administrative Assistant
to Secretary-Treasurer Casstevens

**Frank Musick**
Director,
UAW Special Projects

International Representatives: **Roy Goforth**, UAW Mack Trucks Dept.; **John Collings**, Senior Consultant, UAW Social Security Dept.; **John Clark**, UAW Health and Safety Dept.; **Sam McDowell, Leo Ebner, Gary Pauley, Dave Smith** and **Earlene Collins.**

# UAW-Mack Master Negotiating Committee

**UAW LOCAL 171** - James Stewart, President; **William Nutter**, Shop Chairperson, and Committeepersons **Larry Giordano, Tom Holder** and **Steve Hess.**

**UAW LOCAL 472** - **Robert Roper**, Shop Chairperson, and **LeTony Rouse**, Alternate Shop Chairperson.

**UAW LOCAL 677** - **Kim Blake**, Chairperson of Master Negotiating Committee and Local President; **Bruce Hanna**, Shop Chairperson, and Committeepersons **Steve Marzen, Ron Dannenhower, Robert "Sparky" Barron,** and Pension/Benefits Representative **Paul Brown.**

**UAW LOCAL 1247** - Dale Williams, President; **Bob Lewis**, Engineering Unit Chairperson, and **Joyce Ridgely**, Office Unit Chairperson.

**UAW LOCAL 2301** - Tom Jankowski, President; **Dave Hamill**, Warehouse Unit Committeeperson, and **Sue Falls**, Office Unit Committee Chairperson.

**UAW LOCAL 5841** - David Bortz, President; **Larry Miller,** Shop Chairperson, and Committeepersons **Joey Carnaggio** and **Robert Felker.**

PREPARED FOR THE UAW-MACK MASTER NEGOTIATING COMMITTEE BY THE UAW PUBLIC RELATIONS DEPARTMENT.