# EXHIBIT B

EP-22 97 16:04 FROM:MACUNGIE FRONT OFF. 6109666095 TO:610 709 2186 PAGE:01
Case 3:07-cv-04830-VRW   Document 28-3   Filed 10/15/2007   Page 2 of 5

APR 16 '93 06:56AM MACK TRUCK HR   215 439 3699

4/15/93

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement is entered into this 15TH day of April 1993 by and between Mack Trucks, Inc. (herein referred to as the Company) and the International Union, UAW and its affiliated Local Unions 171, 472, 677, 1247, 2301 and 5841 (herein referred to as the Union). All provisions, appendices, letters and related understandings of the 1992-95 Collective Bargaining Agreement (the "Existing Agreement") shall continue in effect during the term of this Memorandum except as specifically modified herein.

The Union has agreed to the contractual modifications described below for the express purpose of enhancing the long-term job security of Mack-UAW members. The Union has urged the Company to make the capital expenditures necessary to ensure both the long-term viability of Mack-UAW operations and the job security of Mack-UAW members. In recognition of the substantial economic value represented by the contractual modifications provided herein, and its own genuine commitment to the job security needs of Mack-UAW members, the Company pledges to use its best efforts to make the capital investments necessary to allow Mack-UAW facilities to be fully competitive with the other domestic heavy truck manufacturing and truck equipment producers. For its part, the Union pledges to work with the Company to obtain the appropriate regulatory and tax rulings at the state level that would facilitate such investments.

I. The parties agree to implement the following modifications to the 1992-95 Collective Bargaining Agreement:

   A. The expiration date and related notice/termination provisions shall be extended from October 26, 1995 to October 30, 1998 (the "Extension Period").

   B. The Company will neither close nor phase down any UAW-represented facility during the term of this Memorandum.

   C. Three fourths (75%) of each COL adjustment otherwise payable to UAW-represented employees for the seven quarters beginning with the June 1993 adjustment and ending with the December 1994 adjustment shall not be paid. In those instances where the application of this provision would result in a fractional COL adjustment, the amount not paid will be rounded in each such instance to the next whole one cent ($.01) based on the engineering method of rounding.

   D. Full regular COL adjustments will resume beginning with the March 1995 adjustment and be paid each successive quarter thereafter up to and including the September 1998 quarterly adjustment.

   E. The current $.13 per hour contribution to the SUB fund shall be suspended. The Company will, however, continue to determine benefit levels as required under the Existing Agreement, i.e. on the assumption that the $.13 contribution, related interest accruals and benefit payments will be no different from what they would have been in the absence of the contribution suspension.

   F. The Joint Training Fund account balance as of the end of the day prior to the day upon which this Memorandum becomes effective shall revert to the Company.

Post-It™ brand fax transmittal memo 7671 | # of pages ▸ 4
To: Mike Helm
From: Betsy Carter

G. Beginning with the effective date of this Memorandum, the Company's contribution obligation to the Joint Training Fund shall be equal to $.08 for all hours worked, including overtime hours, by UAW-represented employees.

H. The existing 26 week "grow-in" requirement provided under the PEG program will be waived in the case of job openings specifically created as a direct result of work transferred to Macungie pursuant to the closing of the Company's Oakville, Ontario plant. That is, the Macungie PEG Number will not be increased to reflect the addition of such jobs.

The 26 week "grow-in" requirement will, nevertheless, remain in effect for all other jobs, i.e. all jobs unrelated to work specifically transferred to Macungie as a direct result of the Oakville closing.

I. The existing "Equality of Sacrifice" letter is hereby expanded to provide that the Company will neither pay nor accrue profit-based incentive or bonus awards for management personnel with respect to any year in which profit sharing payments are not provided under the Mack-UAW Profit Sharing Plan.

J. The Company may, after consultation with the International Union and the affected Mack-UAW Local Unions, implement the following transfers of operations:

1. "CKD Operations" from Macungie to Atlanta.
2. "Expediting functions" from Allentown OBU to Winnsboro.
3. "Transmission yoke" final assembly from Macungie and Winnsboro to Hagerstown.

* Job-related losses stemming from the transfer of CKD and transmission yoke operations will be fully absorbed by existing or new work at each of the affected facilities; i.e., no one will be laid off or placed in a PEG Pool either as a direct or indirect result of such transfers.

* An Allentown OBU employee affected either directly or indirectly (an "affected employee") by the transfer of expediting functions will be offered an opportunity to move with such work to Winnsboro. The parties will establish a package of mutually agreeable moving and other financial arrangements for affected employees who choose to accept such an offer. An affected employee who declines an opportunity to move will be placed, seniority permitting, on an available open job within the Allentown OBU or, in the absence of such a job, in a PEG Pool.

K. The following paid holidays will be observed during the Extension Period:

| | Contract Years | | |
|---|---|---|---|
| | 1995-96 | 1996-97 | 1997-98 |
| Veteran's Day | Nov. 10, 1995 | Nov. 11, 1996 | Nov. 10, 1997 |
| Thanksgiving Day | Nov. 23 | Nov. 28 | Nov. 27 |
| Day After Thanksgiving | Nov. 24 | Nov. 29 | Nov. 28 |
| Christmas-New Year's Shutdown: | Dec. 25 | Dec. 23 | Dec. 24 |
| | Dec. 26 | Dec. 24 | Dec. 26 |
| | Dec. 27 | Dec. 26 | Dec. 29 |
| | Dec. 28 | Dec. 26 |  |
| | Dec. 29 | Dec. 27 |  |
| | | | Dec. 29 |
| | | Dec. 30 | Dec. 30 |
| | | Dec. 31 | Dec. 31 |
| | Jan. 1, 1996 | Jan. 1, 1997 | Jan. 1, 1998 |
| Martin Luther King Jr. Birthday | Jan. 15 | Jan. 20 | Jan. 19 |
| Good Friday | Apr. 5 | Mar. 28 | Apr. 10 |
| Memorial Day | May 27 | May 26 | May 25 |
| Before Independence Day | | | |
| Independence Day | July 4 | July 4 | July 3 |
| After Independence Day | July 5 | | |
| Labor Day | Sept. 2 | Sept. 1 | Sept. 7 |

L. The parties agree that the "R" model truck may be used as a "swing" model between Macungie and Winnsboro only for the following express purposes: (1) balancing overall production requirements; (2) reducing unnecessary overtime; or (3) avoiding layoffs or the creation of PEG Pool slots at either facility. No less than 14 calendar days prior to any anticipated shift in "R" model production between the two plants, the Company shall provide the Union with a written statement describing why the shift in production is necessary, when it will occur, how many units and jobs will be affected, and how long it will last.

M. Beginning with the effective date of this Memorandum, the Company's contribution obligation to the Legal Service Fund shall be $.08 for all hours worked, including overtime hours, by UAW-represented employees. If it is determined that additional funds are needed in order to maintain the existing level of Legal Services plan benefits during the Extension Period, the Union will develop a mutually acceptable mechanism -- through additional diversions or otherwise -- that will preserve such benefits at no additional cost to the Company.

II. This Memorandum shall become effective on the first Monday following notice from the Union that this Memorandum has been ratified by the membership. It shall terminate automatically on October 30, 1998 unless the Union provides written notice to the Company of its desire to extend this Memorandum beyond that date, in which case it shall be extended on a year-to-year basis thereafter.

4

III. Notwithstanding any other provision contained either in this Memorandum or in the Existing Agreement, the Union will be free to take concerted action, including the right to strike, as of October 26, 1995 if the parties fail to reach a mutually satisfactory agreement concerning all of the issues surrounding retiree health care during the Extension Period, particularly those related to the existing post-retirement health expenditure "caps".

As part of these discussions, the Company reserves the right to raise potential concerns it may have regarding the cost of health care in the context of its competitive environment, and the Union likewise reserves the right to raise its concerns about the appropriate utilization of actual and potential savings that would flow to the Company through adoption of a national health care program.

FOR THE COMPANY:                                FOR THE UNION:

_____                 Bill Castensen
_____                 _____
_____                 _____
_____                 _____
_____                 _____

FM:sd
opeiu494
fmmack3
Rev