Fred H. Altshuler (SBN 43878)
Linda Lye (SBN 215584)
Jamie L. Crook (SBN 245757)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94109
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-Mail: faltshuler@altshuleberzon.com
E-Mail: llye@altshulerberzon.com
E-Mail: jcrook@altshulerberzon.com

*Attorneys for Plaintiffs Robert M. Evitt, Sr.,
Joel Ortega, Loretta Evitt, and
the proposed Plaintiff Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ROBERT M. EVITT, Sr., JOEL ORTEGA, and LORETTA EVITT, on behalf of themselves and a class of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MACK TRUCKS, INC., AND MACK HEALTH, DISABILITY, AND LIFE BENEFITS FOR UAW EMPLOYEES PLAN, <br><br> Defendants. | **Case No. C-07-4830 VRW** <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** <br><br> Date:  November 1, 2007 <br> Time:  2:30 pm <br> Ctrm:  Courtroom 6, 17th Floor <br> The Honorable Vaughn R. Walker |

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.   Mack's Anticipatory Effort To Adjudicate Plaintiffs' Rights In A Defendant Class
     Declaratory Judgment Action – Filed Against Different Parties At Virtually The Same Time
     As This Case – Takes No Priority Over This Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.   The Threshold "First-To-File" Factors Are Not Present. . . . . . . . . . . . . . . . . . . . . . 9

     B.   Mack Engaged In Forum Shopping By Filing An Anticipatory Declaratory Judgment
          Defendant Class Action In Pennsylvania. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.  The Balance Of Inconvenience And The Interest Of Justice Weigh Overwhelmingly Against
     Transfer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     A.   Defendant Bears The Heavy Burden Of Demonstrating That The Transferee Forum is
          "Substantially Superior.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     B.   The Relevant Factors Strongly Favor Plaintiffs' Choice Of Forum. . . . . . . . . . . . . 15

          1.   Plaintiffs' Choice Of Forum Is Entitled To Substantial Weight. . . . . . . . . 15

          2.   All Parties Have Substantial Contacts In California And The Balance of
               Inconveniences Tips Sharply In Plaintiffs' Favor. . . . . . . . . . . . . . . . . . . . 17

          3.   Plaintiffs' claims arise in California. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          4.   Transfer would not increase convenience of and access to third-party
               witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          5.   Transfer will not increase access to sources of proof. . . . . . . . . . . . . . . . 24

          6.   California has a strong interest in deciding this controversy. . . . . . . . . . . 24

          7.   The interest of justice weighs strongly against transfer. . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,*
        404 U.S. 157 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Alltrade, Inc. v. Uniweld Products, Inc.,*
        946 F.2d 622 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*America Federal of Grain Millers v. International Multifoods Corp.,*
        116 F.3d 976 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Brotherhood of Trustees v. Baylor Heating & Air Conditioning, Inc.,*
        702 F. Supp. 1253 (E.D. Vir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21, 23

*CNH America LLC v. UAW, No. 04-C-0148* (E.D. Wis. Aug. 3, 2004) . . . . . . . . . . . . . . . . . . . . 10

*Capital Records, Inc. v. Optical Recording Corp.,*
        810 F. Supp. 1350 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cedars-Sinai Medical Ctr. v. Shalala,*
        125 F.3d 765 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cochran v. NYP Holdings, Inc.,*
        58 F. Supp. 2d 1113 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

*Commodity Fut. Trading Commission v. Savage,*
        611 F.2d 270 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

*Core-Vent Corp. v. Nobel Industrial AB,*
        11 F.3d 1482 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Decker Coal v. Commonwealth Edison,*
        805 F.2d 834 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 15

*Defrancesco v. First Horizon Home Loan Corp.,*
        2006 U.S. Dist. LEXIS 80781, 2006 WL. 3196838 (S.D. Ill. Nov. 3, 2006) . . . . . . 3, 17, 23

*E. & J. Gallo Winery v. F. & P. S.p.A.,*
        899 F. Supp. 465 (E.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 18

*Ellis v. Costco Wholesale Corp.,*
        372 F. Supp. 2d 530 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Factors Etc., Inc. v. Pro Arts, Inc.,*
        579 F.2d 215 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*First Franklin Finance Corp. v. Mortgage Academy, Inc.,*
        2006 U.S. Dist. LEXIS 76109, 2006 WL. 3734624 (N.D. Cal. Dec. 18, 2006) . . . . . . . . 22

*Florens Container v. Cho Yang Shipping,*
        245 F. Supp. 2d 1086 (N.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Goldstein v. RadioShack Corp.,*
    2007 U.S. Dist. LEXIS 32278, 2007 WL 1342533 (E.D. Tex. May 1, 2007) . . 3, 17, 20, 23

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Holland v. Psychological Assessment Resources, Inc.,*
    2004 WL 964201 (D. Md. April 27, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*International Brotherhood of Painters & Allied Traders Union v. Best Painting & Sandblasting*
*Co., Inc.,*
    621 F. Supp. 906 (D.D.C. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*International Brotherhood of Teamsters v. N. America Airlines,*
    2005 WL 947083 (N.D. Cal. Apr. 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Langford v. Ameritanz,*
    2006 U.S. Dist. LEXIS 32823, 2006 WL 1328223 (E.D. Cal. May 13, 2006) . . . . . . . 2, 21

*Miracle v. N.Y.P. Holdings, Inc.,*
    87 F. Supp. 2d 1060 (D. Hawaii 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Munoz v. UPS Ground Freight, Inc.,*
    2007 U.S. Dist. LEXIS 47537, 2007 WL 1795696 (N.D. Cal. June 20, 2007) . . . . . *passim*

*Pacesetter System, Inc. v. Medtronic, Inc.,*
    678 F.2d 93 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Peterman v. United States,*
    2006 WL 2806417 (N.D.N.Y. Sept. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rene v. Godwin Gruber, LLP,*
    2005 WL 1871117 (W.D. Wash. Aug. 2, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*STX, Inc. v. Trik Stik, Inc.,*
    708 F. Supp. 1551 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21, 22

*Saleh v. Titan Corp.,*
    361 F. Supp. 2d 1152 (S.D. Cal 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sec. & Exch. Common v. Rose Fund, LLC,*
    2004 U.S. Dist. LEXIS 22491, 2004 WL 2445242 (N.D. Cal. Jan 9, 2004) . . . . . . . . 2, 22

*Smith+Noble v. S. Jersey Vinyl, Inc.,*
    1998 U.S. Dist. LEXIS 15930, 1998 WL 650079 (C.D. Cal. May 11, 1998) . . . . . . . . . 24

*Stomp, Inc. v. NeatO, LLC,*
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*U.S. v. One Oil Painting Entitled "Femme en Blanc,",*
    362 F. Supp. 2d 1175 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Varsic v. U.S. District Ct.,*
    607 F.2d 245 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*Voluntary Employees Beneficiary Association for Employees of Independent Electric*
*Supply, Inc. v. Ross,*
    1994 U.S. Dist. LEXIS 13553, 1994 WL. 544481 (N.D. Cal. Sept. 22, 1994) . . . . . . . . . 16

*Winnett v. Caterpillar, Inc.,*
    2006 U.S. Dist. LEXIS 95973, 2006 WL. 1722434 (M.D. Tenn. June 20, 2006) . . . . . . . 17

*Xoxide, Inc. v. Ford Motor Co.,*
    448 F. Supp. 2d 1188 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 11, 12

*Z-Line Designs, Inc. v. Bell'O International LLC,*
    218 F.R.D. 663 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Zeta-Jones v. Spice House,*
    372 F. Supp. 2d 568 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.,*
    16 F. App'x 433, 438 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES AND RULES

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 14, 16

Fed. R. Civ. P. 23(c)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Local Rule 3-4(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

**INTRODUCTION AND SUMMARY OF ARGUMENT**

2    Defendants promised to provide Plaintiffs with "lifetime" medical benefits, but now seek to

3    break that promise.  Plaintiffs Robert Evitt, Loretta Evitt, and Joel Ortega brought suit here, in the

4    Northern District of California – the judicial district in which they reside and receive their medical

5    benefits – to prevent Defendants from terminating or reducing those benefits.  Any breach by

6    Defendants of their promise to Plaintiffs will harm Plaintiffs *in this judicial district*.  Congress

7    intended elderly retirees to be able to bring suit to enforce their rights under the Employee

8    Retirement Income Security Act ("ERISA"), as Plaintiffs seek to do here, "where the breach took

9    place."  29 U.S.C. §1132(e)(2).  Defendants have utterly failed to meet their "heavy burden" of

10    demonstrating "by particular circumstances" that the Northern District of California is so

11    "inappropriate" a venue and the Eastern District of Pennsylvania is so "substantially superior" a

12    forum as to warrant upsetting Plaintiffs' choice of their home forum.[1]  Indeed, the balance of

13    inconvenience and the interest of justice weigh overwhelmingly in favor of this case proceeding in

14    this judicial district.

15    First, there is nothing "inappropriate" about this forum.  *Commodity Fut. Trading Comm'n*

16    *v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979).  Plaintiffs have a substantial connection to this forum

17    and little or no connection to Pennsylvania, where Defendants seek to transfer this case:  They have

18    lived for decades here, worked for Mack here, accrued their right to retiree health care based on

19    their employment here, receive medical benefits under the Plan here, were informed by Mack that it

20    intended to reduce their benefits here, and would suffer any reductions of or terminations in their

21    healthcare here.  Under these circumstances, Congress expressly authorized Plaintiffs to bring suit

22    here.  29 U.S.C. §1132(e)(2).  Mr. and Mrs. Evitt have never set foot in Pennsylvania.  Mr. Ortega

23

24    [1]*See Decker Coal v. Commonwealth Edison*, 805 F.2d 834, 843 (9th Cir. 1986) (defendant
      "must make a strong showing of inconvenience to warrant upsetting" plaintiff's choice of forum);
25    *Commodity Fut. Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979) (party seeking
      transfer must "justify by particular circumstances that the transferor forum was inappropriate");
26    *Munoz v. UPS Ground Freight, Inc.*, 2007 U.S. Dist. LEXIS 47537, 2007 WL 1795696, at *4 (N.D.
      Cal. June 20, 2007) (moving party must show that transferor forum is "substantially superior"); *E. &*
27    *J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466-67 (E.D. Cal. 1994) ("heavy burden of
      showing a clear balance of inconveniences").
28

was last in Pennsylvania 23 years ago and is not in touch with anyone in that state. While Plaintiffs have a strong connection to California and little or no connection to Pennsylvania, Defendants have connections to both fora. Mack operated a manufacturing facility here for a decade and a half, and continues to conduct substantial sales here. Moreover, the balance of inconvenience tips sharply in Plaintiffs' favor. Plaintiffs are all elderly retirees with serious medical conditions, for whom travel would impose enormous hardship. Defendants have not even attempted to claim that litigation in California would impose on them hardship of any kind.

Second, Defendants have plainly failed to meet their burden of showing – and the record negates the possibility – that Pennsylvania is a substantially superior forum. *Munoz v. UPS Ground Freight, Inc.*, 2007 U.S. Dist. LEXIS 47537, 2007 WL 1795696, at *4 (N.D. Cal. June 20, 2007). The primary justification for overturning a plaintiff's choice of forum is convenience of the witnesses, particularly third-party witnesses. A party seeking to transfer must specifically identify the witnesses it intends to call, and also describe their location, the subject of their testimony, and its relevance to the case. *See Cochran v. NYP Holdings, Inc.,* 58 F. Supp.2d 1113, 1119 (C.D. Cal. 1998); *Int'l Bhd. of Teamsters v. N. Am. Airlines*, 2005 WL 947083, at *4 (N.D. Cal. Apr. 20, 2005) ("*Teamsters*");[2] *Sec. & Exch. Common v. Rose Fund, LLC*, 2004 U.S. Dist. LEXIS 22491, 2004 WL 2445242, at *3 (N.D. Cal. Jan 9, 2004). The purpose of this inquiry is to determine if the defendant would be placed at an unfair disadvantage because a third-party witness with information crucial to the defense is not subject to compulsory process, and would be unwilling to appear voluntarily, in Plaintiffs' chosen forum. *See Langford v. Ameritanz*, 2006 U.S. Dist. LEXIS 32823, 2006 WL 1328223, at *9 (E.D. Cal. May 13, 2006).

Defendants have failed to identify a single witness – let alone describe her location, her testimony, and its relevance. Because they "make[] only vague generalizations about the witnesses [they] intend[] to call," they have not "met [their] burden and [their] motion [must] be denied."

---

[2]Plaintiffs cite several cases that were available on Westlaw but not on Lexis. For the Court's convenience, Plaintiffs have attached true and correct copies of these cases as obtained from Westlaw to their Request for Judicial Notice (hereinafter "RJN"). *Teamsters*, 2005 WL 947083, is attached thereto as Exhibit A.

1    *Peterman v. United States,* 2006 WL 2806417, at *2 (N.D.N.Y. Sept. 28, 2006), RJN, Exh. B.  In

2    addition, the unidentified Pennsylvania witnesses to whom Defendants allude, located where Mack

3    is headquartered and the Plan is administered, would be Defendants' employees.  Defendants can

4    compel their employees to testify here, and thus would suffer no prejudice if the case proceeds here.

5    *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988).

6        At the same time, Plaintiffs demonstrate that third-party witnesses with evidence relevant to

7    Plaintiffs' claims, and whom Plaintiffs intend to call to testify, are not located in Pennsylvania and

8    are willing to testify in California.  Plaintiffs' rights to lifetime healthcare benefits arise out of

9    collective bargaining agreements between Mack and the International Union, United Automobile,

10   Aerospace and Agricultural Implement Workers of America, AFL-CIO ("UAW").  The UAW is

11   based in Michigan.  UAW witnesses have relevant information about the bargaining history of the

12   agreements at issue in this case.  Although Defendants invoke UAW witnesses in support of

13   transfer, Defendants nowhere assert they intend to call them, and their location actually undermines

14   Defendants' position.  The fact that these witnesses reside outside Pennsylvania, negates any

15   showing that Pennsylvania is a "substantially superior forum."  *Munoz*, 2007 U.S. Dist. LEXIS

16   47537, 2007 WL 1795696, at *4.  And the willingness of these witnesses to testify in California

17   undercuts any claims by Defendants that it would be inconvenient for them to testify here.

18        Nor does the location of putative class members suffice to tip the scales in favor of transfer.

19   This is so because Plaintiffs would face enormous hardships if the case were transferred, the

20   existence of relevant witnesses outside Pennsylvania negates any showing that Pennsylvania is a

21   "demonstrably more convenient" forum, and Plaintiffs, who receive their benefits in this district,

22   will suffer harm in this district.  *See Goldstein v. RadioShack Corp.*,  2007 U.S. Dist. LEXIS 32278,

23   2007 WL 1342533, at *3, *5-*6 (E.D. Tex. May 1, 2007) (denying transfer, even though plurality of

24   potential class members lived in transferee district, where defendant did not show foreign venue was

25   "demonstrably more convenient" than plaintiff's chosen forum and harm by ERISA plaintiffs will

26   be suffered where benefits received); *Defrancesco v. First Horizon Home Loan Corp.*, 2006 U.S.

27   Dist. LEXIS 80718, 2006 WL 3196838, at *2 (S.D. Ill. Nov. 3, 2006) (denying transfer, although

28

plurality of potential class members resided outside plaintiffs' choice of forum, where plaintiff would suffer hardship in the event of transfer and location of potential class members was not "determinative as a measure of party convenience"); *see also Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 544 (N.D. Cal. 2005).

Third, the equities weigh overwhelmingly in favor of this case proceeding in California. Defendants emphasize that Mack filed a declaratory judgment action in Pennsylvania before Plaintiffs filed this suit. In fact, there is every indication that Mack was engaging in blatant forum shopping and gamesmanship when it preemptively filed a declaratory judgment action and deployed the unusual device of a defendant class action. Anticipatory lawsuits are "disfavored because they are examples of forum shopping," "thwart settlement negotiations," and "precipitat[e] a disorderly race to the courthouse." *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003); *see also id.* ("The Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing."). Indeed, such suits are so disfavored that courts *dismiss* declaratory judgment actions that – although filed first – were preemptive efforts to deprive a plaintiff of its choice of forum. *Id.* at 667; *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1189 (C.D. Cal. 2006). Transferring this case to Pennsylvania would reward Mack for its gamesmanship. The motion to transfer should be denied.

## FACTUAL BACKGROUND

***Plaintiffs have substantial connections to northern California.*** All three plaintiffs reside in the Northern District of California. Mr. and Mrs. Evitt live in Hayward, and have lived in California continuously for the last 44 years. Robert Evitt Decl. at ¶2; Loretta Evitt Decl. at ¶2.[3] Mr. Ortega lives in Milpitas, and has lived in California for a total of 45 years. He has lived in California continuously for the last 23 years. Ortega Decl. at ¶2. Mr. Evitt and Mr. Ortega both worked at Mack's plant in Hayward, California for approximately a decade and a half. Robert Evitt Decl. ISO TRO & PI at ¶4 (Doc. 8); Joel Ortega Decl. ISO TRO & PI at ¶4 (Doc. 9). Based on their

---

[3]Unless otherwise indicated, all declarations cited in this brief are declarations, filed herewith, in opposition to Defendants' Motion to Transfer.

1   employment for Mack in Hayward, California, they accrued their rights to medical coverage under

2   Mack's group health plan – Defendant Mack Health, Disability and Life Benefits for UAW

3   Employees ("Mack Plan") – for themselves and their dependents.  All three Plaintiffs receive

4   medical benefits, pursuant to their coverage under Defendant Mack Plan, here in northern

5   California.  They visit doctors in Hayward, Union City, Milpitas, San Jose, and Fremont, and

6   purchase prescription drugs at pharmacies in the Hayward and Milpitas/San Jose areas.  Ortega

7   Decl. at ¶5; Robert Evitt Decl. at ¶4; Loretta Evitt Decl. at ¶4.

8        In August 2007, Mack mailed an announcement to Plaintiffs at their respective homes in

9   Hayward and Milpitas that it intended to reduce substantially their healthcare benefits.  Robert Evitt

10  Decl. ISO TRO & PI at ¶8; Ortega Decl. ISO TRO & PI at ¶9.

11       Neither Mr. Evitt nor Mrs. Evitt has ever set foot in Pennsylvania.  Mr. Ortega has not been

12  in Pennsylvania since 1984.  None of the Plaintiffs has any personal contacts in Pennsylvania.

13  Ortega Decl. at ¶4; Robert Evitt Decl. at ¶3; Loretta Evitt Decl. at ¶3.

14       ***Plaintiffs' claims arise entirely out of conduct occurring in California.***  Plaintiffs contend

15  that any reduction or termination by Defendants in their medical benefits without their consent

16  violates Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and Section 502 of

17  the ERISA, 29 U.S.C. § 1132.  Plaintiffs currently receive medical benefits in Union City, Hayward,

18  Milpitas, San Jose, and Fremont, California.  Defendant announced that it intends to reduce these

19  medical benefits, effective April 1, 2008, by sending a letter to Plaintiffs at their homes in Hayward

20  and Milpitas, California.  If Defendants ultimately terminate or reduce Plaintiffs' health insurance

21  coverage, Plaintiffs will cease receiving medical benefits, or experience reductions in these benefits,

22  in Hayward, Milpitas, San Jose, and Fremont, California.  In short, all of the complained-of conduct

23  by Defendants has occurred, will occur, and will harm Plaintiffs in this judicial district.

24       ***Defendants have substantial resources and connections to California.***  Defendant Mack is

25  an international corporation with substantial resources.  "[O]ne of North America's largest

26  producers of heavy-duty trucks," it posted profits in 2006 of approximately $400 million.  Bressler

27  Decl. at ¶5; Crook Decl. at ¶ 12.

28

1    In addition, Mack has a substantial connection to and presence in California.  Mack operated

2  a manufacturing plant in Hayward, California for approximately a decade and a half – where

3  Plaintiffs Robert Evitt and Joel Ortega both worked.   Evitt Decl. ISO TRO & PI at ¶ 4; Ortega

4  Decl. ISO TRO & PI at ¶ 4.  At the time this complaint was filed, Mack shipped its trucks to be sold

5  at eleven dealer locations in California, including two dealerships in this District.  Mack conducts

6  sales operations out of California, providing a toll free calling number for "Mack Sales of Southern

7  California."  Crook Decl. at ¶ 12.

8    Moreover, over two dozen Mack retirees and their beneficiaries, in addition to the named

9  plaintiffs, reside in California and receive benefits under the Mack Plan in California.  Correll Decl.

10  ISO Defs.' Mot. To Transfer, Exh. A (Doc. 25).

11    ***Third-party witnesses reside outside Pennsylvania.***  Plaintiffs' vested rights to lifetime

12  healthcare benefits coverage under the Mack Plan at company expense arise out of collective

13  bargaining agreements between Mack and the UAW.  As set forth in Plaintiffs' memorandum in

14  support of their motion for a preliminary injunction, Mack and the UAW adopted language in the

15  multiple collective bargaining agreements that stated:  "The Company fully recognizes,

16  acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have

17  been and will continue to be lifetime benefits . . . ."  *See* Pltfs.' Mem. ISO Mot. for Prel. Inj. at 6-7

18  & App. A (Doc. No. 6).  UAW witnesses, who are third-parties to this case, participated in the

19  negotiation of these agreements, have relevant information about the parties' mutual understanding

20  and agreement regarding Mack's on-going obligation to provide lifetime retiree healthcare benefits.

21    Plaintiffs' initial investigation has already revealed at least two such third-party witnesses.

22  Stephen L. Jones and Robert Evans both served on the UAW negotiating team over the 2004

23  collective bargaining agreement between Mack and the UAW.  Mr. Evans resides in Detroit,

24  Michigan and Mr. Jones resides in Warren, Michigan.  These witnesses have personal knowledge of

25  relevant bargaining history:  Their testimony will show that the oral and written communications

26  exchanged by the Union and Mack made clear that the parties intended retiree healthcare benefits to

27  be lifetime benefits and that those benefits did not and would not expire upon the expiration of any

28

1   collective bargaining agreement.  These witnesses do not reside in Pennsylvania, and are willing to

2   testify in California.  Evans Decl. at ¶3, 5; Jones Decl. at ¶1, 3-4.

3        ***Defendants sought to deprive Plaintiffs of their right to select their forum by filing a***

4   ***preemptive declaratory judgment action in Pennsylvania.***  In a letter dated August 16, 2007, Mack

5   notified UAW retirees and surviving spouses of its intention to implement unconsented-to

6   reductions of their medical coverage.  Doyle Decl. ISO TRO & PI, Exhs. A & B (Doc. 10).  The

7   UAW immediately responded, in a letter to Mack on August 17, 2007, that it "adamantly

8   oppose[d]" Mack's threatened changes.  Bressler Decl., Exh. A.  The UAW further announced that

9   it would "utilize every possible resource to ensure that . . . retiree rights are protected."  *Id.*, Exh B.[4]

10        But before the retirees or the UAW had any opportunity to respond to Mack's announced

11   changes, Mack preemptively filed a declaratory judgment action in the Eastern District of

12   Pennsylvania on September 7, 2007.  Defs.' RJN at ¶1 (Doc. 24). Mack named as defendants the

13   UAW, five UAW locals, and one retiree, Carl C. Breininger, "in his individual capacity and as a

14   representative of [a defendant class of] all Mack retirees and their surviving spouses and

15   dependents, as well as all surviving spouses and dependents of deceased retirees and deceased

16   employees who are receiving the health benefit coverage for Retired Employees and Surviving

17   Spouses provided by the Mack-UAW Insurance Program."  *Id.*, Exh. A at ¶¶2-7, 9.

18        Mack concedes that it filed suit in Pennsylvania "in response" to the UAW's announced

19   opposition to Mack's announced benefit reductions.  Defs.' Mem. In Opp. to Pltfs.' Mot. for Prel.

20   Inj. at 2, 6 (Doc. No. 26); *see also*  Defs.' Mem. ISO Mot. To Transfer, at 2 (Doc. 21) (hereinafter

21   "Defs.' Mem.") ("Because of the UAW's adamant opposition to Mack's proposed changes to retire

22   benefits, . . . Mack filed an action for declaratory judgment.").

23        In the Pennsylvania action, Mack contends that it "owes *no legal duty* to the Unions or the

24   defendant Class to continue the Mack-UAW Retiree Medical Program after October 1, 2007" when

25

26        [4]The UAW's statement that it would "utilize every possible resource to . . . protect retiree

27   rights" was set forth in a letter to retirees.  Bressler Decl. Exh. B.  Mack was clearly aware of this
   statement, as the Complaint it subsequently filed in federal quote quotes this letter virtually

28   verbatim.  *See* Defs.' RJN, Exh. A. at ¶18.

1   the current collective bargaining agreement expires, and is therefore "free to implement the [changes

2   announced in its August 17, 2007 letter] *or to otherwise change the plan* of health benefits presently

3   provided to the defendant Class under the Mack-UAW Retiree Medical Program." Defs.' RJN,

4   Exh. A at ¶26 (emphasis added).  Through the unusual device of a defendant class action, Mack

5   seeks to bind all Mack retirees, surviving spouses, and their dependents to a judgment in that case.

6           In light of the drastic legal position that Mack staked out – that it had *no legal duty* to

7   continue to provide retiree healthcare once the current collective bargaining agreement expires – and

8   because the agreement was about to expire on October 1, 2007, it appeared that Mack might seek to

9   reduce or perhaps even entirely terminate benefits as early as October 1, 2007.  Plaintiffs therefore

10  filed this action on September 20, 2007, in the judicial district in which they reside and receive

11  benefits, to protect their vested rights to healthcare.  *See* Complaint (Doc. No. 1).[5]  Only thirteen

12  days separates the filing of the two actions.  At the hearing on Plaintiffs' motion for a temporary

13  restraining order in this case, Defendants agreed to represent on the record that they would not

14  implement any reductions until April 1, 2008.  9/25/2007 Transcript (Doc. 16).

15          Litigation has not progressed in Mack's Pennsylvania action.  Mack filed the action on

16  September 7, 2007, and then waited almost four weeks to serve the defendants in that action.  It did

17  not serve any defendant in the Pennsylvania case until October 4, 2007, Bressler Decl. at ¶4, just

18  two court days before it filed the motion to transfer venue in this action.[6]

19                                          **ARGUMENT**

20  **I.    Mack's Anticipatory Effort To Adjudicate Plaintiffs' Rights In A Defendant Class
          Declaratory Judgment Action – Filed Against Different Parties At Virtually The Same
21        Time As This Case – Takes No Priority Over This Action.**

22          In an effort to preempt the retirees and the UAW from filing suit and to bind Plaintiffs and

23  all Mack retirees, surviving spouses, and dependents through a putative defendant class action,

24  _____

25          [5]According to a declaration submitted by Defendants in opposition to Plaintiffs' motion for a
    preliminary injunction, Mack and the UAW have since agreed to extend the current collective
26  bargaining agreement until October 31, 2007.  Huxta Decl. ISO Defs.' Opp. to Pltfs.' Mot. for Prel.
    Inj. at ¶2 (Doc. 27).
27

28          [6]Defendants' motion was filed on October 8, 2007.  Defs.' Mot. To Transfer (Doc. 20).

1   Mack rushed to court in Pennsylvania.  This Court should not countenance Mack's gamesmanship.

2   Its anticipatory suit for a declaratory judgment against a defendant class is a classic case of forum

3   shopping and is owed no deference or priority over this action.  Moreover, the differences between

4   the two cases demonstrate that this case is the superior vehicle for resolving the underlying question

5   of Mack's legal obligations to retirees.

6        Mack's reliance on the "first-to-file" principle is misplaced.  The principle reflects a doctrine

7   of federal comity that "permits a district court to decline jurisdiction over an action when a

8   complaint involving the same parties and issues has already been filed in another district."

9   *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).  It "is not a rigid or

10  inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of

11  sound judicial administration."  *Id.* at 95.  Even when the three threshold factors – chronology, same

12  parties, and same issues – are met, a court will dispense with the rule when equity so requires, for

13  example "when the filing of the first suit evidences bad faith, anticipatory suit, or forum shopping,"

14  *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006); *see also Alltrade,*

15  *Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991), or when "the balance of

16  convenience [weighs] in favor of the second action," *Capitol Records, Inc. v. Optical Recording*

17  *Corp.*, 810 F. Supp. 1350, 1353 (S.D.N.Y. 1992).

18        **A.    The Threshold "First-To-File" Factors Are Not Present.**

19        Defendants cannot establish any of the three threshold factors for application of the first-to-

20  file principle.  The chronology factor receives little or no consideration where, as here, just thirteen

21  days separate the filings of the two complaints.  *See Capital Records*, 810 F. Supp. at 1366

22  (explaining that chronology of filing is "less important . . . when the competing actions are filed

23  within a short period of time" and rejecting first-to-file rule because "[o]nly twenty days elapsed

24  between the filing of the two complaints and no discovery or other pretrial proceedings had occurred

25  in either forum at that time"); *see also Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 66

26  (N.D. Cal. 2003) ("Considering this relatively short time period between the two filings, the

27  importance of the earlier filing date is diminished.").

28

1    Equally to the point, the parties and the issues in the two actions are not the same.  *See*

2  *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) (requiring that the actions

3  involve "the same parties and issues").  And the parties and issues that are encompassed by this

4  action demonstrate that this case is the better vehicle for resolving the underlying question of

5  Mack's obligation to provide lifetime healthcare benefits.

6    In addition to Mack, the Mack Plan is a named defendant in Plaintiffs' ERISA claim in this

7  case because Plaintiffs seek to prevent both Mack and the Plan from terminating or reducing their

8  benefits under the Plan.  But the Mack Plan is not a named party to the Pennsylvania action and thus

9  might not automatically be bound to any judgment issued in that case.  Inclusion of the Mack Plan

10  in this case thus facilitates a prompt and thorough resolution of Plaintiffs' rights under the Plan.

11    Moreover, the Pennsylvania action was brought by Mack against the UAW, five UAW

12  locals, and an individual as the representative of a purported defendant class.[7]  *None* of the

13  defendants in the Pennsylvania action is a party in this case.

14    Mr. Breininger, the individual defendant in the Pennsylvania action, is not a party here.

15  Because the putative defendant class in the Pennsylvania action has not yet been certified, there is

16  no argument that Mr. Breininger is somehow in privity with any of the Plaintiffs in this case.

17    Nor is any of the union entities a plaintiff here.  Although Defendants contend the "crux" of

18  this case is a dispute between Mack and the UAW, Defs.' Mem. at 1, this case is really about the

19

20    [7] The union is an improper defendant for Mack's ERISA claim in the Pennsylvania action.

21  Section 502(a)(1) and (3) only provide a cause of action to plan participants, beneficiaries, and

22  fiduciaries in order to enforce the terms of an ERISA plan.  Mack is neither a plan participant or

beneficiary: to the extent it is suing as a fiduciary, it cannot enforce the terms of the plan it

23  administers against the union or Mr. Breininger.  The Eastern District of Wisconsin recently

dismissed an ERISA claim brought by an employer against a union and several locals, through

24  which the employer sought a declaratory judgment that retirees' healthcare benefits were not vested.

*See CNH America LLC v. UAW*, No. 04-C-0148, at 1, 11 (E.D. Wis. Aug. 3, 2004), RJN, Exh. C

25  (dismissing ERISA claim for lack of jurisdiction because "an action seeking such relief is not an

action seeking 'enforcement' of the plan").  The court likewise dismissed the employer's claim for a

26  declaratory judgment that it owed no duty under Section 301 of the LMRA to provide lifetime,

vested healthcare benefits to retirees under the terms of the applicable collective bargaining

27  agreement because the employer had not alleged a violation of the collective bargaining agreement

28  and because the Union had no authority to "'hijack' the retirees' claim" to vested benefits.  *Id.* at 14.

1  vested right of Mack *retirees* to healthcare benefits.  Because the right to medical benefits are vested

2  in the retirees, these rights cannot be reduced or terminated without their consent – and any

3  "agreement" by the Union to modify those vested rights would be invalid.  *See, e.g., Allied Chem. &*

4  *Alkali Workers of Am. v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n.20 (1971) ("Vested

5  retirement rights may not be altered *without the pensioner's consent*.") (emphasis added).  This case

6  is therefore the superior vehicle for resolving Mack's obligations with regard to healthcare because

7  it focuses on the retirees, without whose consent no reductions or terminations can be effected.

8  **B.  Mack Engaged In Forum Shopping By Filing An Anticipatory Declaratory Judgment Defendant Class Action In Pennsylvania.**

9

10  Equity weighs overwhelmingly in favor of allowing this action to proceed, rather than giving

11  the Pennsylvania action any priority.  The Ninth Circuit recognizes an exception to the first-to-file

12  principle when the circumstances indicate "bad faith, anticipatory suit, and forum shopping."

13  *Alltrade*, 946 F.2d at 628.  "A suit is anticipatory when the plaintiff filed upon receipt of specific,

14  concrete indications that a suit by defendant was imminent."  *Z-Line Designs*, 218 F.R.D. at 665;

15  *see also Xoxide,* 448 F. Supp.2d at 1193.  Such suits are "disfavored because they are examples of

16  forum shopping" and "thwart settlement negotiations."  *Z-Line Designs,* 218 F.R.D. at 665.

17  "Further, [t]he Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his

18  conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *Id.*  As

19  this Court explained in *Z-Line Designs,* "[p]otential plaintiffs should be encouraged to attempt

20  settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to

21  take advantage of the opportunity to institute litigation in a district of its own choosing before the

22  plaintiff files a complaint."  *Id.* (quoting *Capitol Records*, 810 F. Supp. at 1354).

23  Given the disfavor with which courts view anticipatory suits, courts have *dismissed*

24  declaratory judgment actions that were – although filed first – preemptive efforts to deprive the

25  natural plaintiff of its choice of forum.  In *Z-Line Designs*, this Court dismissed a first-filed action,

26  concluding the suit to be anticipatory based on the fact that it was a declaratory judgment action

27  triggered by correspondence in which the other party asserted its copyright and trade dress rights.

28  *Id.* at 664, 667.  Similarly, in *Xoxide*, the Central District of California dismissed a first-filed

1   declaratory judgment action that was "preemptively filed" following an exchange of letters between

2   the parties asserting violations of trademark rights: The suit was "initiated in anticipation of Ford's

3   Michigan litigation and was a clear attempt to deprive Ford, the natural plaintiff, of its choice of

4   forum."  448 F. Supp. 2d at 1189.

5        Mack's declaratory judgment action in Pennsylvania was clearly an anticipatory suit

6   intended to deprive Plaintiffs of their choice of forum.  By filing suit on September 7, 2007, just 22

7   days after the date of its August 16, 2007 mailing to retirees and surviving spouses of its intended

8   reductions in their healthcare benefits, Mack preempted the natural plaintiffs – the retirees – from

9   even "attempt[ing] settlement discussions" in response to Mack's letter.  *Z-Line Designs*, 218

10  F.R.D. at 665.  Particularly telling is Mack's surreptitious deployment of a defendant class action.

11  This device would enable Mack to litigate the rights of Plaintiffs and other retirees and surviving

12  spouses, and ultimately to bind them to a declaratory judgment that it owes them "no legal duty" –

13  but without having to serve them with the complaint in the Pennsylvania case, or indeed to notify

14  them of the litigation at all, until the defendant class is actually certified and notice issued to the

15  class.  *See Xoxide*, 448 F. Supp. 2d at 1194 (rejecting first-to-file rule when party "secretly" filed a

16  lawsuit so as to "'keep our place as to filing dates and times' in the event that 'discussions later

17  broke down'"); Fed. R. Civ. P. 23(c)(2)(A) (order certifying Rule 23(b)(1) class may include

18  "appropriate notice to the class").

19       By filing suit in Pennsylvania, Mack also deprived the entity that Defendants believe to be

20  the "natural plaintiff" – the UAW – of its choice of forum.[8]  After the UAW put Mack on notice that

21  it "adamantly oppose[d]" any reductions in retiree health care and would "utilize every possible

22  resource" to protect retiree benefits, Mack preempted the UAW from filing suit and instead rushed

23  to court in its home forum to file a declaratory judgment action – even though it was at the time in

24  negotiations with the UAW.  Bressler Decl. at ¶¶2-3, Exhs. A & B; Defs.' RJN, Exh. A; Bressler

25

26       [8]According to Defendants, the "crux" of the matter is a dispute between Mack and the UAW.
    Defs.' Mem. at 1.  Plaintiffs believe that they are the true natural plaintiffs in this case because their
27  vested rights to healthcare benefits cannot be reduced without their consent.  *See, e.g., Allied Chem.
    & Alkali Workers*, 404 U.S. at 181 n.20.
28

1   Decl. ISO TRO & PI at ¶16.  Indeed, Defendants concede that Mack filed the Pennsylvania action

2   "in response" to the UAW's position that it "vehemently opposed the proposed changes."  Defs.'

3   Mem. In. Opp. to Pltfs.' Mot. for Prel. Inj. at 2; *see also* Defs.' Mem. at 2 (conceding that Mack

4   filed its declaratory judgment action "[b]ecause of the UAW's adamant opposition" to its proposed

5   changes).  By rushing to court in Pennsylvania, Mack also short-circuited any discussions with the

6   union that might have resolved the issue.[9]

7         Mack's delay in serving any of the Pennsylvania defendants until just two court days before

8   bringing the instant motion to transfer this action to Pennsylvania further evidences "gamesmanship

9   and procedural fencing."  *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x

10  433, 438 (6th Cir. 2001) (dismissing first filed suit because it was anticipatory).[10]

11        Mack's declaratory judgment action, preemptively filed before the natural plaintiffs, the

12  retirees, even had the opportunity to "attempt settlement discussions," and also "filed upon receipt

13  of specific, concrete indications that a suit by [the UAW] was imminent," was a classic example of

14  forum shopping intended to deprive the UAW of its "conventional choice of forum and timing."  *Z-*

15  *Line Designs*, 218 F.R.D. at 665.  Given the ample indicia of Mack's gamesmanship in filing the

16  Pennsylvania action, the equities weigh overwhelmingly in favor of this action proceeding.[11]

17  **II.    The Balance Of Inconvenience And The Interest Of Justice Weigh Overwhelmingly
        Against Transfer.**

18        Defendants have utterly failed to meet their heavy burden of showing that Plaintiffs' chosen

19  forum is inappropriate or that Pennsylvania is a superior forum.  Neither the balance of

20  inconvenience nor the interest of justice weighs in favor of transfer.

21  _____

22        [9]The union lacks authority to consent on Plaintiffs' behalf to any reductions or terminations
    in their vested rights to healthcare benefits.  It is possible, however, that the discussions between the
23  union and Mack may have resolved the retiree healthcare issue without any reductions or
    terminations in retiree benefits.
24

25        [10]Citation to the Federal Appendix is appropriate under Local Rule 3-4(a)(4).

26        [11]Courts recognize an additional equitable exception to the first-to-file rule when the balance
    of convenience weighs in favor of the latter-filed cause of action.  *See id.* at 665.  As discussed more
27  fully in the 28 U.S.C. § 1404(a) analysis, the balance in this case weighs strongly in favor of
28  allowing this case to proceed in this judicial District.  *See infra* Part II.

The primary justification for overturning a plaintiffs' choice of forum is the convenience of witnesses, especially third-party witnesses. Defendants have not identified a single witness, stated her location, or described her testimony and its relevance – as they are required to do. Plaintiffs, by contrast, have thus far identified at least two third-party witnesses with relevant information about the bargaining history of the contracts at issue in this case. These witnesses, who are willing to testify in California, do not reside in Pennsylvania. Because the only third-party witnesses that have been identified reside *outside* Pennsylvania, Defendants cannot possibly establish that Pennsylvania is a substantially superior forum. At the same time, transfer of this case would pose significant hardship on Plaintiffs, who are elderly retirees with serious medical conditions and for whom travel poses enormous difficulties, whereas Defendants have made absolutely no showing that litigating in California would be burdensome on them. Furthermore, the interest of justice weighs strongly in favor of this case proceeding in California. By filing an anticipatory declaratory judgment action, Mack was the party that engaged in forum shopping. Transfer to Pennsylvania would, perversely, reward Mack's gamesmanship.

### A. Defendant Bears The Heavy Burden Of Demonstrating That The Transferee Forum is "Substantially Superior."

28 U.S.C. § 1404(a) authorizes a district court, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . [to] transfer any civil action to any other district or division where it might have been brought."[12] "[S]ection 1404(a) is not a mechanism by which to transfer inconvenience from one party to another." *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 541 (N.D. Cal. 2005); *see also Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."). To justify transfer, Defendants must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986); *E. & J. Gallo Winery v. F. & P.*

---

[12]There is no dispute that venue is proper in this district. *See, e.g.,* 29 U.S.C. §1132(e)(2). Defendants did not file a motion under 28 U.S.C. § 1406 (authorizing dismissal for improper venue) and have not argued in their transfer motion that venue in this district is improper.

1  *S.p.A.*, 899 F. Supp. 465, 466-67 (E.D. Cal. 1994) ("heavy burden of showing a clear balance of

2  inconveniences").  As this Court has explained, "Defendants must show that the Eastern District of

3  [Pennsylvania] is a *substantially superior forum* to prevail on its Transfer Motion."  *Munoz*, 2007

4  U.S. Dist. LEXIS 47537, 2007 WL 1795696, at *4 (emphasis added).

5       To succeed in overcoming Plaintiffs' forum preference, Defendants must demonstrate "by

6  particular circumstances" that Plaintiffs' chosen forum is actually "inappropriate."  *Commodity Fut.*,

7  611 F.2d at 279.  "[V]enue can exist in multiple locations," and plaintiffs' "chosen venue does not

8  need to be the best venue."  *Rene v. Godwin Gruber, LLP*, 2005 WL 1871117, at *2 (W.D. Wash.

9  Aug. 2, 2005), RJN, Exh. D.  Nor should the case be transferred if "transfer would merely shift

10 rather than eliminate the inconvenience."  *Decker Coal*, 805 F.2d at 843; *see also U.S. v. One Oil*

11 *Painting Entitled "Femme en Blanc*,*"* 362 F. Supp. 2d 1175, 1185 (C.D. Cal. 2005).

12       **B.     The Relevant Factors Strongly Favor Plaintiffs' Choice Of Forum.**

13       In considering a motion to transfer under 28 U.S.C. § 1404(a), a court must consider (1)

14 plaintiffs' choice of forum; (2) the parties' contacts with the forum; (3) connection of the plaintiffs'

15 cause of action to the chosen forum; (4) witnesses convenience; (5) access to proof; (6) local interest

16 in deciding local controversies; and (7) the interest of justice.  §1404(a); *Jones v. GNC Franchising,*

17 *Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).[13]  These factors all weigh in Plaintiffs' favor.

18       **1.     Plaintiffs' Choice Of Forum Is Entitled To Substantial Weight.**

19       Plaintiffs chose to file this case in the Northern District of California, the judicial district in

20 which they reside and receive their benefits, and their choice is entitled to substantial weight.  "[A]

21 plaintiff's choice of forum is accorded substantial weight . . . and courts generally will not transfer

22 _____

23       [13]*Jones* listed as additional factors differences in costs of litigation in the two fora; the two
24 courts' familiarity with governing law; the location where relevant contracts were negotiated and
   executed; and the existence of a forum-selection clause.  Here, the location of contract negotiation
25 and execution collapses into the third factor noted in text above: contacts relating Plaintiffs' claim
   to the forum.  As discussed below, that factor weighs strongly against transfer.  *See infra* Part II-B-3.
26 Defendants have made no showing that litigation in Pennsylvania is less expensive than in
   California.  The two courts are equally familiar with the governing law because only federal
27 questions are at issue.  Finally, there is no forum selection clause at issue.  These additional factors
28 therefore weigh against transfer or are neutral.

1    an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere." *Florens*

2    *Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002).  While deference is

3    always due a plaintiff's choice of forum, even "greater deference [is due] when the plaintiff has

4    chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

5        The already substantial consideration owed to Plaintiffs' home forum preference is even

6    greater because this is an ERISA case.  Actions arising under the ERISA are subject to the special

7    venue provision in 29 U.S.C. § 1132(e)(2), which provides that an ERISA claim "may be brought in

8    the district where[, *inter alia*,] the breach took place, or where a defendant resides or may be found,

9    and process may be served in any other district where a defendant resides or may be found."  The

10   Ninth Circuit has described this section as indicating Congress's "liberal intent" to establish broad

11   venue for ERISA claims.  *See Varsic v. U.S. Dist. Ct.*, 607 F.2d 245, 247 (9th Cir. 1979).  Based on

12   ERISA's broad venue provision, courts afford ERISA plaintiffs' choice of forum even greater

13   deference than is already due under the ordinary 28 U.S.C. § 1404(a) analysis.  *See, e.g.*, *Voluntary*

14   *Employees Beneficiary Ass'n for Employees of Independent Elec. Supply, Inc. v. Ross*, 1994 U.S.

15   Dist. LEXIS 13553, 1994 WL 544481, at *2 (N.D. Cal. Sept. 22, 1994); *Bhd. of Trustees v. Baylor*

16   *Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Vir. 1988) (giving even "greater

17   weight" to plaintiff's choice of forum in an ERISA case); *see also Ellis*, 372 F. Supp. 2d at 537

18   ("[A] special venue provision . . . must influence the contours of section 1404(a) analysis.").[14]

19       This heightened deference to Plaintiffs' choice of forum is not diminished by the fact that

20   Plaintiffs are bringing a class action.  *Cf.* Defs.' Mem. at 8 & n. 5. None of the cases on which

21   Defendants rely held that Plaintiffs' choice of forum is entitled to less deference – notwithstanding a

22   special venue provision – simply because the case was brought as a class action.  As this Court has

23   held, when "venue is governed by a more permissive standard [in the statute under which the cause

24   of action arises], a plaintiff's choice is entitled to greater deference as a matter of law, *even where*

25   *that case is brought as a class action*."  *Ellis*, 372 F. Supp. 2d at 537 (emphasis added).  The court

26

27        [14]The Ellis plaintiffs alleged claims under Title VII of the Civil Rights Act of 1964, which,

28   like the ERISA, provides for broad venue.  *See Ellis*, 372 F. Supp. 2d at 536.

1  in *Winnett v. Caterpillar, Inc.*, 2006 U.S. Dist. LEXIS 95973, 2006 WL 1722434, at *3 (M.D. Tenn.

2  June 20, 2006), recently rejected the argument that the heightened deference due an ERISA

3  plaintiff's forum preference is diminished when the case is brought as a putative class action.  *Id.*

4  ("[W]hatever extra deference is afforded to the plaintiffs' choice of venue in other ERISA cases

5  must also be afforded here.").

6          Nor does the nationwide distribution of putative class members diminish the deference due

7  Plaintiffs' forum choice.  *Id.*; *cf.* Defs.' Mem. at 8.  This is particularly true because the named

8  plaintiffs have "brought the action in the judicial district with which [they have] had the most

9  extensive contacts . . . [and because] a liberal venue provision provides additional grounds for

10  deferring."  *Ellis*, 372 F. Supp. 2d at 544; *see also Goldstein*,  2007 U.S. Dist. LEXIS 32278, 2007

11  WL 1342533, at *3, *5-6 (denying transfer motion in ERISA class action because, *inter alia*,

12  "ERISA's remedial purposes favor broad availability of applicable venues"); *Defrancesco,* 2006

13  U.S. Dist. LEXIS 80718, 2006 WL 3196838, at *2 ("The fact that a Plaintiff sues on behalf of a

14  class does not render his forum choice completely irrelevant").

15          And contrary to Defendants' assertion, Defs.' Mem. at 1, "[Plaintiff's] decision to sue in

16  [their] home forum of California does not amount to impermissible forum shopping."  *See Stomp,*

17  *Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999).  Short of intervening as defendants

18  in a distant forum with which they have no contacts, Plaintiffs' only means of protecting their rights

19  was to file this lawsuit, and they logically did so in the forum where they reside and receive medical

20  benefits.  *See Int'l Bhd. of Painters & Allied Traders Union v. Best Painting & Sandblasting Co.,*

21  *Inc.*, 621 F. Supp. 906, 908 (D.D.C. 1985) (plaintiffs who filed in home district after defendant filed

22  preemptive declaratory relief suit in distant forum were not forum shopping but were "forcefully and

23  legitimately pursuing their interests").  On the contrary, it was Defendant Mack that engaged in

24  forum shopping by filing an anticipatory declaratory judgment action.  *See supra* Part I-B.

25                  **2.    All Parties Have Substantial Contacts In California And The Balance of**
                          **Inconveniences Tips Sharply In Plaintiffs' Favor.**

26

27          Defendants cannot sustain their heavy burden under § 1404(a) by simply asserting that

28  Pennsylvania "is undoubtedly the more convenient forum for Mack" because it is headquartered and

1   administers the Plan there. Defs.' Mem. at 8. As this Court has explained, "[w]hile it may be more

2   convenient for [defendant] to litigate this case [where it] has its principal place of business[,] . . .

3   this factor [is not] sufficient to overcome plaintiff's choice of forum." *See Teamsters*, 2005 WL

4   2005 WL 947083, at *4, RJN, Exh. A. Instead, Defendants must show a "clear balance of

5   inconveniences" in their favor. *E. & J. Gallo Winery*, 899 F. Supp. at 466. This they have patently

6   failed to do. Plaintiffs have substantial connections to this district, in which they reside and receive

7   benefits, and have little or no connection to Pennsylvania. Defendants have connections to both

8   fora. And while travel to Pennsylvania would impose enormous hardships on Plaintiffs – elderly

9   retirees with serious medical conditions – Defendants make no attempt to show that litigating in

10  California would be burdensome, let alone that the balance weighs in their favor. *Cf. Miracle v.*

11  *N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000) (denying transfer when, *inter alia*,

12  defendant did not show that litigation in plaintiff's chosen forum would be difficult).

13          All three plaintiffs reside in this District. Mr. Evitt and Mr. Ortega worked at Defendant

14  Mack's plant in Hayward for almost a decade and a half, accruing their vested lifetime medical

15  benefits from that employment. They also receive health care in this judicial District, pursuant to

16  their enrollment in Mack's group insurance plan. Mr. and Mrs. Evitt have never had any contact

17  with Pennsylvania. Mr. Ortega has not been to Pennsylvania for 23 years and has no current contact

18  with the state whatsoever. Robert Evitt Decl. at ¶¶2-4; Loretta Evitt Decl. at ¶¶2-4; Ortega Decl. at

19  ¶¶2, 4-5; Evitt Decl. ISO TRO & PI at ¶4; Ortega Decl. ISO TRO & PI at ¶4.

20          Mack, however, has contacts to both fora, and its California contacts are significant. It

21  operated a plant in Hayward for approximately a decade and a half and it continues to conduct

22  substantial sales in California. Vickner Decl. ISO Defs.' Mot. to Transfer at ¶ 2 (Doc. No. 23);

23  Crook Decl. at ¶ 12.

24          Plaintiffs would undergo significant hardships were they forced to travel to Pennsylvania. It

25  would take Mr. and Mrs. Evitt well over nine hours and Mr. Ortega well over eight and one half

26  hours to travel from their homes in this district to the courthouse in Pennsylvania. Crook Decl. at

27  ¶¶10-11. Mr. Evitt cannot remain in one position for more than about 45 minutes, must walk with a

28

1 walker, and even then cannot walk for distances longer than a block.  He sleeps with a breathing

2 machine that cannot easily be transported.  Similarly, Mrs. Evitt cannot stand for more than about

3 fifteen minutes and she has been terrified of planes since the September 11 tragedies.  As a result,

4 Mr. and Mrs. Evitt rarely leave their home, and when they do, they do not venture far.  Because of

5 their fragile physical conditions and the difficulty of travel, Mr. and Mrs. Evitt did not attend

6 funerals of close family members in Indiana.  Robert Evitt Decl. at ¶¶5-9; Loretta Evitt Decl. at ¶¶5-

7 8.  Mr. Ortega also has a chronic back condition that makes long distance travel extremely

8 uncomfortable.  His wife depends on him to drive her and if he were required to travel, she would

9 be stranded.  Ortega Decl. at ¶¶6, 8.  All of the plaintiffs have medical conditions that require them

10 to see their physicians regularly.  Travel out of state would be physically exhausting for them,

11 disrupt their routine medical treatment, and prevent them from seeing their normal physicians – who

12 are familiar with their medical history – in the event of an emergency.  *Id.* at ¶¶6-7; Robert Evitt

13 Decl. at ¶¶7-8; Loretta Evitt Decl. at ¶¶5-6.  *See Zeta-Jones v. Spice House*, 372 F. Supp. 2d 568,

14 576 (C.D. Cal. 2005) (weighing Nevada party's medical condition heavily against litigating in

15 California); *Holland v. Psychological Assessment Res., Inc.*, 2004 WL 964201, at *4 (D. Md. April

16 27, 2004), RJN, Exh. E (weighing against transfer the fact that plaintiff was "84 years old, has high

17 blood pressure, and broke his left leg about 18 months ago, and that as a result his walking is limited

18 and he no longer travels by airplane").

19     At the same time, Defendants have failed to identify any hardship – physical or even

20 financial – if they were to litigate in California.  Mack earned profits of $400 million last year and

21 thus cannot claim financial hardship.  Bressler Decl. at ¶5.  Defendants have not identified any of

22 the witnesses or representatives they would call in this case, *see infra* Part II-B-4, and they have

23 made no showing that travel would be physically challenging for these unidentified individuals.

24     Given the enormous hardship imposed on Plaintiffs if they were required to travel to

25 Pennsylvania and Mack's vast financial resources, the balance of inconveniences weighs strongly

26 against transfer.  *Miracle*, 87 F. Supp. 2d at 1073 (defendant could not meet burden of showing

27 balance of inconveniences in its favor when it was "a large corporation that could more easily travel

28

to Hawaii to litigate than could Plaintiff travel to New York"); *cf. Core-Vent Corp. v. Nobel Indus.*
*AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) (weighing "heavily" the relative burdens of long-distance
travel to "individuals with little or no physical contacts with" the foreign forum and "a large
international corporation with worldwide distribution of its products" in *in personam* analysis).

## 3.    Plaintiffs' claims arise in California.

Plaintiffs' causes of action have significant connections to this judicial forum.  Mr. and Mrs.
Evitt and Mr. Ortega seek to protect their vested rights to lifetime medical coverage, rights that
accrued here in California during the years that Mr. Evitt and Mr. Ortega were employed at Mack's
Hayward plant.  The Northern District of California is where Plaintiffs live, where they receive
medical benefits, and where Defendant Mack Plan is "found."  *See Varsic*, 607 F.2d at 249 (benefits
plan is found in any district where it provides benefits to beneficiaries and where it owes fiduciary
duties).  Because Mack's threatened reductions in Plaintiffs' medical coverage will impact Plaintiffs
in California, where they reside, Plaintiffs' legal injury will take place *here*, not in Pennsylvania.
*See Goldstein,* 2007 U.S. Dist. LEXIS 32278, 2007 WL 1342533, at *3 (harm "will be felt where
the Plaintiffs' ERISA Plan benefits" are received).  Although the collective bargaining agreements
were negotiated in Pennsylvania, Mack's breach of the rights arising out of those agreements occurs
here, and it is Mack's breach that gives rise to this action.  Even if Pennsylvania could be deemed to
have a "greater connection" to the dispute, California nevertheless has a "significant connection" to
this dispute.  *See Teamsters*, 2005 WL 947083, at *3, RJN, Exh. A (denying transfer to forum that
"may have a greater connection to the disputes" when California did not "lack[] a significant
connection to the dispute").

## 4.    Transfer would not increase convenience of and access to third-party witnesses.

Defendants have failed to establish that transfer would increase witness convenience.  They
have not identified with specificity any witness, let alone a third-party witness, who is located in
Pennsylvania.  On the contrary, the record indicates that relevant third-party witnesses are located in
Michigan and *not* Pennsylvania.  Defendants have not met their burden of showing, as they are

1  required to do, that Pennsylvania is a "substantially superior forum." *Munoz*, 2007 U.S. Dist.

2  LEXIS 47537, 2007 WL 1795696, at *4.

3        Witness convenience is the primary justification for overturning a plaintiffs' choice of forum.

4  *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal 2005).  Under this factor, "the moving

5  party must identify relevant witnesses, state their location and describe their testimony and its

6  relevance."  *Sec. & Exch. Comm'n*, 2004 U.S. Dist. LEXIS 22491, 2004 WL 2445242, at *3;

7  *Cochran,* 58 F. Supp. 2d at 1119; *Teamsters*, 2005 WL 947083, at *4, RJN, Exh. A; *see also*

8  *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) (requiring that movant "clearly

9  specify the key witnesses to be called . . . [and] what their testimony will cover"); *Bhd. of Trustees*,

10  702 F. Supp. at 1258-59 (requiring "detailed description" of witnesses' likely testimony and

11  "convincing showing that [their] testimony would be probative").

12        The purpose of this inquiry is to determine if the defendant would be placed at an unfair

13  disadvantage because a third-party witness with information crucial to the defense is not subject to

14  compulsory process, and would be unwilling to appear voluntarily, in Plaintiffs' chosen forum.  *See*

15  *Langford*, 2006 U.S. Dist. LEXIS 32823, 2006 WL 1328223, at *9 (favoring transfer "so that the

16  [third-party] witnesses can be subpoenaed").  Accordingly, when weighing this factor, "primary

17  consideration [is given] to third-party witnesses." *Teamsters*, 2005 WL 947093, at *4, RJN, Exh.

18  A; *see also Saleh*, 361 F. Supp. 2d at 1161 (emphasizing "materiality and importance of [non-party]

19  witnesses' testimony and . . . their accessibility and convenience to the forum" (internal quotation

20  marks omitted)).  In contrast, as this Court has explained, the convenience of and accessibility to

21  witnesses who are employees of the defendant "must be discounted." *STX,* 708 F. Supp. at 1556.

22  This is so because when the witnesses are the defendant's own employees, it "can compel [them] to

23  testify" and thus suffers no unfair advantage from the litigation proceeding in plaintiffs' chosen

24  forum.  *Id.*

25        Here, Defendants offer only "vague generalizations about the witnesses [they] intend[] to

26  call" and thus fall woefully short of sustaining their burden to show that transfer would increase

27  access to and convenience of third-party witnesses. *See Peterman*, 2006 WL 2806417, at *2, RJN,

28

1    Exh. B ("[A defendant who] makes only vague generalizations about the witnesses it intends to call,

2    . . . will not have met its burden and its motion will be denied.").  Defendants refer to "witnesses

3    and information about the decision to change benefits . . . [who] can be found" in Allentown, *see*

4    Defs.' Mem. at 9, but fail to identify *any* such witnesses by name, to describe the materiality of their

5    likely testimony, or to establish their location.  *Cf. Rose Fund*, 2004 U.S. Dist. LEXIS 22491, 2004

6    WL 2445242, at *3 (requiring that defendant identify with particularity key witnesses, their likely

7    testimony, and location).  Defendants additionally fail to show that these individuals are not Mack

8    employees such that Mack could not compel them to appear in this District.  *Cf. STX*, 708 F. Supp.

9    at 1556; *Teamsters*, 2005 WL 947083, at *4, RJN, Exh. A.[15]

10          Defendants themselves acknowledge that UAW witnesses are also likely to have relevant

11   information, and, as Defendants correctly assume, several of these UAW witnesses are in Michigan.

12   Defs.' Mem. at 9.  Plaintiffs' investigation has thus far revealed at least two witnesses, whom

13   Plaintiffs intend to call to testify, and who negotiated on behalf of the UAW with Mack over the

14   2004 collective bargaining agreement.  Those witnesses have personal knowledge of written and

15   oral communications that demonstrate that Mack and the Union agreed and understood that retiree

16   healthcare benefits were lifetime benefits that would not expire upon the expiration of any particular

17   collective bargaining agreement.  Neither of these third-party witnesses resides in Pennsylvania and

18   both are willing to testify in California.  Jones Decl. at ¶¶3-4; Evans Decl. at ¶¶3, 5.

19          The only third-party witnesses that have been identified to date are not located in

20   Pennsylvania.  Defendants have not met their burden of showing, and the location of these third-

21   party witnesses in Michigan negates any possible showing, that Pennsylvania is a "substantially

22

23          [15]Defendants submitted one declaration (other than a declaration of counsel purporting to
24   authenticate documents) in opposition to Plaintiffs' motion for a preliminary injunction, but
     nowhere indicated that it intends to call this individual at trial.  In any event, this single declarant is
25   an employee of Mack, Huxta Decl. at ¶1 (Doc. No. 27), and so Mack would suffer no prejudice if
     this case proceeds in California because Mack could require him to appear.  *See, e.g.*, *Teamsters,*
26   2005 WL 947083, at *4, RJN, Exh. A (convenience of employee witnesses given less weight
     because they "may be compelled to testify by their employer"); *First Franklin Fin. Corp. v.*
27   *Mortgage Acad., Inc.*, 2006 U.S. Dist. LEXIS 76109, 2006 WL 3734624, at *4 (N.D. Cal. Dec. 18,
28   2006) (same).

1    superior forum." *Munoz,* 2007 U.S. Dist. LEXIS 47537, 2007 WL 1795696, at *4 (describing

2    defendant's burden on motion to transfer).  In any event, Defendants make no assertion that they

3    intend to call these Michigan-based UAW witnesses, and Defendants' contention that Pennsylvania

4    would be more convenient for these witnesses falls flat, particularly in light of their willingness to

5    testify in California.

6        Furthermore, Defendants' "conclusory" statement that Pennsylvania would be more

7    convenient than California for the majority of class members is "wholly inadequate."  *See Bd. of*

8    *Trustees*, 702 F. Supp. at 1258-59.  Defendants have not asserted that they intend to call any such

9    individuals, or that their likely testimony would be critical to the defense.  Moreover, the location of

10   putative class members does not suffice to tip the scales in favor of transfer because Plaintiffs would

11   face enormous hardships if this case were transferred, the existence of key witnesses outside

12   Pennsylvania negates any showing that Pennsylvania is "demonstrably more convenient," and

13   Plaintiffs will suffer injury here, where they receive their benefits.  *See Goldstein*, 2007 U.S. Dist.

14   LEXIS 32278, 2007 WL 1342533, at *3, *5-*6 (denying transfer, even though plurality of potential

15   class members lived in transferee district, where defendant did not show foreign venue was

16   "demonstrably more convenient" than plaintiff's chosen forum and harm by ERISA plaintiffs will

17   be suffered where benefits received); *Defrancesco*, 2006 U.S. Dist. LEXIS 80718, 2006 WL

18   3196838, at *2 (denying transfer, although plurality of potential class members resided outside

19   plaintiffs' chosen forum, where plaintiff would suffer hardship in the event of transfer); *see also*

20   *Ellis*, 372 F. Supp. 2d at 544 (denying transfer of nationwide class action because the Northern

21   District of California was "the most appropriate forum for litigating the claims of at least one named

22   plaintiff" and was "a forum for which there has been no showing of inconvenience for [defendant

23   corporation]").

24       Finally, Defendants' vague assertions of witness inconvenience should be further discounted

25   because retiree benefit cases are typically resolved prior to trial, and so live witness testimony may

26   not be required at all.  *See, e.g., Am. Fed. of Grain Millers v. Int'l Multifoods Corp.*, 116 F.3d 976

27

28

1  (2d Cir. 1997) (affirming summary judgment).  Should live testimony be required, however, travel

2  would pose much greater hardships on Plaintiffs than Defendants.  *See infra* Part II-B-2.

3       **5.  Transfer will not increase access to sources of proof.**

4       Defendants base their argument under this factor primarily on the location of unidentified

5  witnesses with knowledge of key events but, as discussed above, Defendants have failed to meet

6  their burden of presenting specific facts that prove Pennsylvania to be the superior forum.  Nor do

7  Defendants identify *any* sources of proof that are located in Pennsylvania that could not easily be

8  moved to California.  In addition to witness testimony, the bulk of evidence in this case will

9  comprise the collective bargaining agreements and accompanying letters of agreement.  In this era

10  of electronic data transmission, the ease of scanning, faxing, and emailing documents eliminates any

11  need to litigate this case in the forum where these agreements were originally created and executed.

12  *See Teamsters*, 2005 WL 947083, at *4, RJN, Exh. A (denying transfer when, *inter alia*, defendant

13  did not show that documents located in New York could not be copied and sent to California).

14       **6.  California has a strong interest in deciding this controversy.**

15       California has a strong interest in protecting its citizens' vested rights to lifetime medical

16  coverage.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (local interest in deciding

17  localized controversies).  Although Pennsylvania has an interest in deciding controversies that

18  involve corporations formed under their laws, "this is true in nearly any case involving corporate

19  defendants" and does not favor transfer.  *See Smith+Noble v. S. Jersey Vinyl, Inc.*, 1998 U.S. Dist.

20  LEXIS 15930, 1998 WL 650079, at *6 (C.D. Cal. May 11, 1998) (local interest factor did not

21  require dismissal for lack of personal jurisdiction over foreign corporate defendant).[16]

22       **7.  The interest of justice weighs strongly against transfer.**

23       The interest of justice weights heavily against transfer.  Transfer would simply allow

24  Defendants to profit from Mack's gamesmanship in filing an anticipatory declaratory judgment

25

26      [16]Mack may argue that Pennsylvania has an interest in protecting the rights of its citizens

27  who are retirees.  In light of the fact that Mack has sued a putative defendant class of retirees in
Pennsylvania in an effort to strip them of health care, it cannot seriously contend that it seeks to

28  protect these individuals interests by transferring the case.

1    action in Pennsylvania, an action intended to rob Plaintiffs of their choice of forum.  *See supra* Part

2    I-B.

3                                            **CONCLUSION**

4           For the foregoing reasons, Defendants's motion to transfer should be denied.

5

6           Dated: October 18, 2007                         Respectfully submitted,

7                                                           FRED H. ALTSHULER
                                                            LINDA LYE
8                                                           JAMIE L. CROOK
                                                            Altshuler Berzon LLP
9

10                                                   By:  /s/ Linda Lye
                                                            Linda Lye
11
                                                          Attorneys for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28