# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 947083 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

H
International Broth. of Teamsters v. North American Airlines
N.D.Cal.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Plaintiff,
v.
NORTH AMERICAN AIRLINES, Defendant.
No. C05-0126 TEH.

April 20, 2005.

Duanne B. Beeson, Oakland, CA, William R. Wilder, Washington, DC, for Plaintiff.
Evan J. Spelfogel, New York, NY, Joseph D. Miller, Steven R. Blackburn, San Francisco, CA, for Defendant.

HENDERSON, J.
*1 Currently pending before the Court are a motion for preliminary injunction filed by Plaintiff International Brotherhood of Teamsters ("IBT") and a motion to dismiss or transfer venue filed by Defendant North American Airlines ("North American"). After carefully considering the parties' written submissions, the Court finds oral argument on the motion to dismiss or transfer to be unnecessary. With good cause appearing, the Court now DENIES the motion for the reasons set forth below.

### BACKGROUND

North American is a Delaware corporation with its principal place of business at JFK International Airport in Jamaica Queens, New York, and a secondary base of operations at Oakland International Airport in Oakland, California. The company is certified to conduct passenger flights, internationally scheduled and charter service, domestically scheduled and charter service, and supplementary operations under the Federal Aviation Act. It is undisputed that the company is a carrier subject to the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq.

Prior to 2004, North American's pilots were not represented by a union. In January 2004, the National Mediation Board certified the IBT to represent North American's pilots during collective bargaining. The parties have been engaged in collective bargaining since April 2004 and have had several series of negotiation sessions. The majority of these sessions have taken place in New York, New York, but the parties did negotiate for three days in November 2004 in San Francisco, California, and several future negotiation sessions are scheduled to occur in Washington, D.C. The parties have yet to agree to or execute a collective bargaining agreement covering any of North American's pilots or other employees.

On November 5, 2004, North American notified the IBT that the company would be imposing changes to the working conditions and benefits of its employees. Of particular relevance to the pilots who are represented by the IBT, these changes included reducing wage rates, revising scheduling guidelines, reducing monthly guarantees for number of hours worked, changing the formula for calculating overtime, and requiring employees to pay a portion of their health insurance premiums. Some of these changes took effect in January 2005, while others did not take effect until the following month. The parties continued to negotiate over the collective bargaining agreement after the changes were announced but before they took effect, and it appears that the parties' negotiations are ongoing.

On December 17, 2004, North American filed a suit for declaratory relief in the United States District Court for the Southern District of New York. *N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters,* Case No. 04-CV-9949 (KMK). North American sought a judgment declaring that, where there was no existing collective bargaining agreement, North American was not restricted by the RLA from unilaterally changing the terms and conditions of its pilots' employment.

*2 The IBT filed this action on January 7, 2005,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-04830-VRW   Document 37-2   Filed 10/18/2007   Page 3 of 6

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 947083 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

after several of North American's unilateral changes took effect. The IBT contends that the implementation of these changes violated North American's obligations under the RLA. Among other relief, the IBT seeks an order from the Court requiring North American to rescind the changes that the company implemented without reaching agreement with the IBT. The IBT also seeks an injunction requiring North American to continue to engage in negotiations with its pilots under the RLA and under the auspices of the National Mediation Board without unilaterally implementing any changes to the terms and conditions of employment. In addition to injunctive relief, the IBT also seeks lost wages and benefits, including interest, and costs.

On January 14, 2005, the IBT filed a motion for preliminary injunction in this case. On January 24, 2005, North American filed a motion to dismiss or transfer this action to the Southern District of New York. In addition, at the outset of this case, the parties indicated that the IBT intended to file a motion to dismiss the New York action. The New York court held a conference with the parties on February 4, 2005, and instructed the IBT to file its motion by February 16, 2005, with oral argument scheduled for February 25, 2005.

On February 16, 2005, this Court explained that it found "good cause to stay consideration of the IBT's motion for preliminary injunction until after it resolves North American's motion to dismiss or transfer venue. If this action is dismissed or transferred, there would be no reason for the Court to consider IBT's motion." Feb. 16, 2005 Scheduling Order at 1. The Court further stayed consideration of North American's motion to dismiss or transfer pending resolution of the motion to dismiss the earlier-filed New York action. *Id.*

In an order signed on March 20, 2005, Judge Kenneth Karas granted the IBT's motion to dismiss the New York action. Specifically, Judge Karas held that his court lacked jurisdiction to hear the case because the complaint, in which North American sought declaratory relief, did not state an actual case or controversy. Opinion & Order at 2-3, 14-34.

Judge Karas further explained that, even if the complaint did state an actual controversy, the court would "decline [ ] to exercise its discretion to grant North American its requested relief ... because the lawsuit will not settle the legal dispute between the parties, and because it rewards North American for abandoning the collective bargaining process prematurely and racing to the courthouse." *Id.* at 3-4; *see also id.* at 34-46.

On March 23, 2005, the parties filed a joint statement, pursuant to this Court's February 16, 2005 order, discussing the impact of Judge Karas's order on this case. The parties agree that dismissal of the New York action moots North American's motion to dismiss, and the Court accordingly DENIES that motion. Thus, the only remaining issue from North American's motion is whether transfer of venue would be appropriate. North American does not challenge that venue is proper in this district-i.e., that this case had to be brought in New York because it could not have been brought here-but, instead, asserts that this Court should transfer the case pursuant to 28 U.S.C. § 1404(a).

LEGAL STANDARD

*3 Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To successfully move for transfer under this section, the moving party must establish that the action could originally have been brought in the district to which transfer is sought. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir.1979). The moving party also bears the burden of "establishing that an action should be transferred." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 89 F.R.D. 497, 499 (C.D.Cal.1981), *aff'd,* 726 F.2d 1381 (9th Cir.1984).

In ruling on a motion to transfer, a district court must consider each of the factors enumerated in § 1404(a)-i.e., convenience of the parties, convenience of the witnesses, and the interests of justice.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-04830-VRW    Document 37-2    Filed 10/18/2007    Page 4 of 6

Not Reported in F.Supp.2d                                                                                         Page 3
Not Reported in F.Supp.2d, 2005 WL 947083 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

*Id.* Other relevant factors include: the plaintiff's choice of forum; the local interest in the issue; the relative ease of access to evidence; the availability of compulsory process for unwilling witnesses and the cost involved in securing willing witnesses; and the practical issues that make a case easier or more difficult to try in a given forum, such as familiarity of each forum with applicable law and the relative court congestion in each forum. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986); *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.,* No. C-99-4787 MJJ, 2000 WL 246599, at *2 (N.D.Cal. Mar.1, 2000).

DISCUSSION

North American and the IBT do not dispute that this case could have been brought either here or in a district court in New York. Thus, North American's motion to transfer turns on whether the Court finds it appropriate to transfer the case to New York "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

1. Plaintiff's Choice of Forum

With certain exceptions, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.,* 805 F.2d at 843. In this case, however, North American disputes the degree of deference owed to the IBT's choice of forum because it argues, first, that the IBT was attempting to change the forum already established by North American's filing suit in New York prior to the initiation of this action and, second, that there is an "almost complete absence of any connection between this dispute and this District." Mot. at 11; *see also Royal Queentex,* 2000 WL 246599 at *3 (little deference given to plaintiff's choice of forum in cases of anticipatory suits and forum shopping); *Joe Boxer Corp. v. R. Siskind & Co.,* No. C 98-4899 SI, 1999 WL 429549, at *9 (N.D.Cal. June 28, 1999) (same in cases "where the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum"). Judge Karas has already disposed of North American's first argument by finding that it was improper for North American to file suit when it did in New York. Because the New York court lacked jurisdiction to hear the case, North American's filing did not establish a forum for resolving the parties' disputes.[FN1]

> FN1. Ironically, the Court finds North American's actions to be more apparent examples of forum shopping than IBT's behavior. As Judge Karas found, North American improperly abandoned the collective bargaining process in an attempt to race to the courthouse to preempt the IBT from being able to choose a forum in which to litigate. In addition, North American filed suit in, and seeks transfer of this case to, the Southern District of New York, even though the company's headquarters are based at JFK, which is located in the Eastern District of New York.

*4 This Court also rejects North American's second argument because it finds that this district has a concrete connection to the disputes in this case. According to North American's chief operating officer, the company's main base is at the JFK facility in New York, but the company also conducts some operations out of Oakland, California. Harfst Decl. ¶ 4. North American employs 124 pilots, with a "small [but unspecified] number" based at the Oakland facility. *Id.* Not all of the Oakland-based pilots live in California, but approximately ten percent of North American's pilots are California residents. *Id.* Similarly, seven percent of North American's "staff personnel" work at the Oakland facility and live in California.[FN2] *Id.* ¶ 5. While it therefore appears that New York may have a greater connection to the disputes in this case than California, the Court cannot say that this district lacks a significant connection to the dispute. Oakland, which is located in this district, is a secondary base of operations for North American, and approximately twelve California residents work as pilots for North American and are affected by the changes in terms and conditions of employment at issue in this lawsuit. In addition, the parties conducted three days of negotiations in San Francisco, also in this district. Thus, North

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-04830-VRW   Document 37-2   Filed 10/18/2007   Page 5 of 6

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2005 WL 947083 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

American is hardly correct when it claims "almost a complete absence" of any connection between this district and the events underlying the IBT's lawsuit, and this Court therefore gives deference to the IBT's choice of forum.

> FN2. North American has approximately 589 total employees, including pilots, flight attendants, dispatchers, ground maintenance, and office, clerical, sales, and management staff. Harfst Decl. ¶ 5. It is unclear how many of these employees North American considers to be "staff personnel" for purposes of calculating the seven percent figure.

### 2. Convenience of the Parties

Regarding the convenience of the parties, it is not disputed that both parties have a presence in this district, with the IBT having several local unions here and North American having a secondary base of operations in Oakland. While it may be more convenient for North American to litigate this case in New York because the company has its principal place of business there, the Court does not find this factor to be sufficient to overcome plaintiff's choice of forum.

### 3. Convenience of the Witnesses and Access to Evidence

The Court also finds that North American has failed to meet its burden regarding the convenience of the witnesses and access to evidence. "To demonstrate an inconvenience to witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance."*Sec. & Exch. Comm'n v. Rose Fund, LLC,* No. C 03-04593 WHA, 2004 WL 2445242, at *3 (N.D.Cal. Jan.9, 2004); *see also Royal Queentex,* 2000 WL 246599 at *6. When weighing the convenience of witnesses, a court should give primary consideration to third-party witnesses because employee witnesses may be compelled to testify by their employer. *Royal Queentex,* 2000 WL 246599 at *6. In this case, North American has failed to identify any witnesses whose testimony will be necessary, let alone any third-party witnesses or the relevance of any witnesses' testimony. Similarly, North American has not established that voluminous documents remain to be exchanged by the parties, or that any documents that exist in New York would have to be transferred to California rather than made available and copied in New York. Thus, the convenience of witnesses and access to evidence do not weigh in favor of transfer.

### 4. Other Factors

*5 The Court finds other factors that courts have considered in deciding a motion to transfer to be neutral. This case is based on federal law, and so both this court and any potential transferee court in New York would have the same familiarity with applicable law. In addition, because Judge Karas dismissed the case filed in New York by North American, no consolidation of claims could occur if this case were transferred. Beyond that, as noted above, both this Court and a New York court would have an interest in this litigation because the parties have a presence in both areas and North American pilots are based in both this district and New York. Finally, there is no evidence that court congestion or average time to trial differs significantly between this district and the Southern or Eastern Districts of New York.[FN3] The Court therefore does not find that the interests of justice favor transfer of this case to New York.

> FN3. Although North American seeks a transfer to the Southern District of New York, North American's principal place of business is in the Eastern District of New York. Thus, if this Court were to consider granting transfer, it would likely consider transfer to the Eastern rather than Southern District.

### CONCLUSION

In sum, the Court agrees with North American that the IBT "may have its rights and responsibilities under the RLA resolved just as well in New York as in California."Mot. at 12. However, that conclusion does not warrant transfer of this case to New

Not Reported in F.Supp.2d                                                                                                              Page 5
Not Reported in F.Supp.2d, 2005 WL 947083 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

York. Although a New York court may have a stronger connection to this case because the majority of North American's employees and pilots are based there, a not insignificant number of employees and pilots also work out of North American's facility in this district. The Court does not find the IBT's choice of forum to be purely tactical and therefore gives deference to the union's choice to litigate this case here rather than in New York. The Court further concludes, for the reasons discussed above, that North American has failed to carry its burden of establishing that this action should be transferred pursuant to 28 U.S.C. § 1404(a). Accordingly, with good cause appearing, North American's motion to transfer is DENIED.

In addition, the Court notes North American's request to postpone consideration of the IBT's preliminary injunction motion until after North American has had an opportunity to file a counterclaim. The Court agrees that all related disputes should be resolved in the same action, and that North American should therefore be permitted to file any related counterclaims. However, North American provides no explanation or justification for its request that its intended counterclaim be ruled on simultaneously with the IBT's motion. Thus, the Court does not find good cause to postpone the hearing on the IBT's motion until after North American has had an opportunity to file a counterclaim and notice a dispositive motion regarding that counterclaim. Instead, IT IS HEREBY ORDERED that the hearing on the IBT's motion for preliminary injunction shall be held before this Court on Monday, May 23, 2005, at 10:00 AM. The initial case management conference currently scheduled for May 9, 2005, at 1:30 PM, shall be held immediately following the motion hearing. The parties shall file a joint case management statement no later than Monday, May 16, 2005.

*6 IT IS SO ORDERED.

N.D.Cal.,2005.
International Broth. of Teamsters v. North American Airlines
Not Reported in F.Supp.2d, 2005 WL 947083 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.