# EXHIBIT B

**Westlaw.**

Slip Copy  
Slip Copy, 2006 WL 2806417 (N.D.N.Y.)  
**(Cite as: Slip Copy)**

Page 1

C  
Peterman v. U.S.  
N.D.N.Y.,2006.  
Only the Westlaw citation is currently available.  
United States District Court,N.D. New York.  
James PETERMAN and Cynthia Peterman, Plaintiffs,  
v.  
UNITED STATES of America, Defendant.  
**Civil Case No. 04-CV-1454 (NAM/DEP).**

Sept. 28, 2006.

Cherundolo Bottar & Leone, John C. Cherundolo, Esq., of counsel, Syracuse, NY, for Plaintiffs.  
Glenn T. Suddaby, United States Attorney, Northern District of New York, William F. Larkin, Asst. U.S. Attorney, of counsel, Syracuse, NY.

Hon. NORMAN A. MORDUE, Chief U.S. District Court Judge.

### I. INTRODUCTION

*1 On or about December 22, 2004, plaintiffs filed a complaint pursuant to the Federal Tort Claims Act (FTCA"), 28 U.S.C. § 2671 et seq. in the United States District Court for the Northern District of New York, alleging negligence in the medical care and treatment provided to plaintiff, James Peterman, while a patient at the Palo Alto Veterans Administration Medical Center in Palo Alto (PAVAMC), California. Plaintiffs' complaint alleges four causes of action. The first three claims allege that the PAVAMC, through its physician employees, was negligent in the medical care and treatment provided to plaintiff, James Peterman. Plaintiffs assert that defendant's negligence is evidenced by the undisputed fact that a surgical needle was dislodged into, dropped and left in plaintiff James Peterman's abdomen during the final suturing phase of plaintiff Peterman's gastric bypass surgery. The Court concludes from evidence in the record to date that although physicians employed by defendant thereafter attempted to remove the needle, they were unable to do so and the needle remains in plaintiff's abdomen. The fourth cause of action is a derivative claim by plaintiff's wife, Cynthia Peterman for her own pain and suffering and the loss of services of her husband.

The government moves to transfer of venue in this matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a). According to the government, a change of venue will enhance the convenience of the parties, enhance the convenience of the witnesses, and be in the interest of justice as the events which are the subject of this action occurred in California since all of the defendants and potential witnesses other than plaintiffs reside in California. Further, the government contends and it appears clear to the Court that determination of plaintiffs' claims herein will be governed by California law. See 28 U.S.C. § 1346(b) (under the FTCA, the United States has waived immunity from suit for claims of property damage or personal injury caused by the "negligent or wrongful act or omission" of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.")

Plaintiffs oppose the government's motion for transfer on the ground that they would be inconvenienced by having to travel to California to litigate this case. Specifically, plaintiffs' counsel argues that plaintiffs would be forced to retain new counsel and incur substantial expense if the Court were to grant the government's motion. Plaintiffs also assert that James Peterman's nineteen treating physicians and health care providers located in Syracuse, New York, would not be subject to the jurisdiction or subpoena power of the Northern District of California.

Although little to no discovery occurred in this case prior to defendant filing the afore-referenced motion for transfer, plaintiffs filed a cross-motion for summary judgment supported by operative reports prepared by one of the physicians who performed the subject surgeries on plaintiff James Peterman.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2806417 (N.D.N.Y.)
(Cite as: Slip Copy)

Page 2

Since the physician acknowledged both dropping and leaving the subject needle in plaintiff Peterman's abdomen, plaintiffs argue that defendant's negligence has been established as a matter of law via the doctrine of *res ipsa loquitur*.[FN1] Plaintiffs also include an affidavit in support of their cross-motion from Dr. Michael Leitman, a physician, who opines that the various doctors involved in plaintiff James Peterman's treatment at PAVAMC deviated from the applicable standard of surgical care by leaving a surgical needle in Peterman's peritoneal cavity.

> FN1. Ordinarily, the standard of care required of a doctor, and whether he exercised such care, can be established only by the testimony of experts in the field." *(Hurn v. Woods,* 132 Cal.App.3d 896, 901 (1982) (citations omitted.) "But to that rule there is an exception that is as well settled as the rule itself, and that is where 'negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required since scientific enlightenment is not essential for the determination of an obvious fact.' " *Friedman v. Dresel,* 139 Cal.App.2d 333, 341 (1956) (quoting *Lawless v. Calaway,* 24 Cal.2d 81, 86 (1944)). Under the doctrine of *res ipsa loquitur* and this common knowledge exception, it is proper to instruct the jury that it can infer negligence from the happening of the accident itself, if it finds based on common knowledge, the testimony of physicians called as expert witnesses, and all the circumstances, that the injury was more likely than not the result of negligence. *Bardessono v. Michels,* 3 Cal.3d 780, 784, 793 (1970). Cases in which a foreign object has been left in the patient's body during an operation fall within this common knowledge application of the res ipsa doctrine. *See Ales v. Ryan,* 8 Cal.2d 82 (1936) [sponge left in abdominal cavity]; *Armstrong v. Wallace,* 8 Cal.App.2d 429 (1935) [same]; *Leonard v. Watsonville Comm. Hosp.* 47 Cal.2d 509 (1956) [clamp left in abdomen].

*2 The government opposes plaintiffs' request for summary judgment and cross-moves for discovery pursuant to Fed.R.Civ.P. 56(f). Specifically, the government contends that *res ipsa loquitur* is not applicable to the facts of this case. Further, the government argues that summary judgment is inappropriate at this early stage of the litigation based on inadequacy of the discovery conducted by the parties. Specifically, the government contends that plaintiffs failed to comply with its demand for expert disclosure and that it is entitled to conduct a deposition of Dr. Leitman.

## II. DISCUSSION

### A. *Change of Venue*

"[D]istrict courts [have] discretion to transfer cases according to 'an individualized, case-by-case consideration of convenience and fairness."*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988))."For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a). In applying this standard, two inquiries must be made. First, it must be determined whether the action sought to be transferred is one that "might have been brought" in the transferee court. *See Oriska Ins. Co. v. Brown & Brown of Texas, Inc.,* 2005 WL 894912, at *4 (N.D.N.Y. April 8, 2005). Second, a court must determine whether, considering the "convenience of parties and witnesses' and the interest of justice, a transfer is appropriate."*Id.* (citing *Lynch v. Nat'l Prescription Adm'rs,* 2004 WL 385156, at *1 (S.D.N.Y. Mar. 1, 2004); *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.,* 976 F.Supp. 174 (W.D.N.Y.1997)).

Whatever the merits of the parties' contentions regarding the relative convenience of one venue versus another, they are not supported by a scintilla of evidence. Neither plaintiffs nor their counsel have submitted factual affidavits which identify the alleged witnesses who would be called to testify on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

behalf of James Peterman, nor have plaintiffs stated the nature the alleged testimony these witnesses are expected to offer. Also notably absent is any factual averments by plaintiffs concerning the nature of the hardship that would inure to them should the Court grant defendant's motion for transfer of this case. However, it is the government's failure to provide factual affidavits detailing the necessity for transfer of the case that governs resolution of the venue question. The Court notes that while it may be true, as the government asserts, that venue would be equally if not more appropriate in the Northern District of California, the government has not met its evidentiary burden as the proponent of a transfer pursuant to 28 U.S.C. § 1404(a).

Upon requesting a change of venue pursuant to 28 U.S.C. § 1404(a), the moving party must support its motion with an affidavit containing detailed factual statements explaining why the motion should be granted including, among other things, the location of events giving rise to the suit, convenience of the parties and witnesses, transferee forum is more convenient. See *Matera v. Native Eyewear, Inc.,* 355 F.Supp.2d 680, 687 (E.D.N.Y.2005) (citing *Parfums v. Rivera,* 872 F.Supp. 1269, 1271 (S.D.N.Y.1995). Convenience of both party and non-party "witnesses is probably the single-most important factor in the analysis of whether transfer should be granted."*Berman v. Informix Corp.,* 30 F.Supp.2d 653, 657 (S.D.N.Y.1998) (citations omitted)."[W]hen a party seeks to transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."See *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). If the moving party makes only vague generalizations about the witnesses it intends to call, it will not have met its burden and its motion will be denied. See *In re Bennett Funding Group, Inc.* 259 B.R. 243, 249 (N.D.N.Y.2001) (citing *Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203, 208-09 (S.D.N.Y.1998). Since the government presented no factual affidavits in support of its motion for transfer of the case, it has not met its burden under 28 U.S.C. § 1404(a) to make a "clear" showing that transfer would be appropriate. Based thereupon, defendant's motion for a change of venue must be denied.

B. *Summary Judgment*

*3 In each of the cases cited by plaintiffs in support of their contention that the present case is a "classic" foreign-object-left-in-the-body-during-surgery case governed by the doctrine of *res ipsa loquitur,* there is no evidence that any of the plaintiffs or the defendant physicians in those cases had any notion during the subject surgeries that an object had been inadvertently left in the plaintiffs' bodies. In each case, it was only after the subject surgery when a patient was experiencing continued pain or symptoms of infection that a foreign object was discovered to be the cause of the post-surgical complication.

In contrast, it appears from the operative reports relied upon by plaintiffs in this case that Dr. Safadi, who performed the subject gastric bypass surgery, was keenly aware of the fact that the needle had dislodged and dropped into plaintiff Peterman's abdomen. To wit, Dr. Safadi wrote: "As I was pulling out the last 3-0 silk suture through the [left upper quadrant] port, the needle was dislodged and dropped in the abdomen. I attempted to retrieve the needle but with the abundance of fat in the abdomen I could not locate. At that time the patient had been under ansesthesia [sic] for > 5.5 hours and I decided to abort the procedure and get an X-ray."The operative reports indicate that subsequent attempts by Dr. Safadi to locate and retrieve the needle were unsuccessful. Based on the record presently before the Court there is a material question of fact concerning defendant's liability. Even assuming the truth of the facts set forth in Dr. Safadi's operative reports and of the opinions in Dr. Leitman's affidavit, the Court concludes that reasonable jurors could find under applicable law that Dr. Safadi's decision to abandon his attempt to retrieve the dislodged surgical needle was based on his "best medical judgment" at the time of the procedure. See *Maher v. Saad,* 99 Cal.Rptr.2d 213, 218 (Cal.Ct . App.2000). Based thereupon, plaintiffs'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motion for summary judgment must be denied.

### C. *Discovery*

Given the Court's determination to deny plaintiffs' motion for summary judgment on its merits, the Court need not address the government's argument that the need to conduct discovery pursuant to Fed.R.Civ.P. 56(f) is a basis on which to deny plaintiffs' motion. To the extent that the government is otherwise deemed to have moved for an order requiring the parties to conduct usual and customary discovery, the Court will grant this request. However, the nature, scope and extent of the discovery to be conducted will be determined by the Magistrate Judge who has already issued a Scheduling Order in accordance with Rule 16 of the Fed.R.Civ.P. and the Local Rules of the Court.

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the motion of the United States to transfer this matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a) is DENIED; and it is further

*4 ORDERED that plaintiffs' cross-motion for summary judgment is DENIED; and it is further

ORDERED that the government's motion for discovery is GRANTED to the extent referenced above.

IT IS SO ORDERED.

N.D.N.Y.,2006.
Peterman v. U.S.
Slip Copy, 2006 WL 2806417 (N.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.