# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CNH AMERICA LLC,

    Plaintiff,

v.

Case No. 04-C-0148

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, UAW LOCAL UNION 152,
UAW LOCAL UNION 180, UAW LOCAL
UNION 763, UAW LOCAL UNION 807,
UAW LOCAL UNION 1304, UAW LOCAL
UNION 1306, UAW LOCAL UNION 1356C,
and UAW LOCAL UNION 1356T,

    Defendants.

**DECISION AND ORDER**

**I. PROCEDURAL AND FACTUAL BACKGROUND**

This action was commenced on February 11, 2004, when the plaintiff, CNH America LLC ("CNH"), filed a complaint seeking declaratory relief from this court. More precisely, in its complaint CNH asserts the following:

> CNH brings this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1132. CNH seeks a declaratory judgment that pursuant to the express and unambiguous language of the applicable collective bargaining agreements and the associated Group Benefits Plans and Summary Plan Descriptions applicable to CNH employees represented by the UAW who retired on or after July 1, 1994 ("Post-IPO Retirees"), such retirees are not entitled to lifetime, vested health care benefits. CNH further seeks a declaration that because the benefits are not vested, CNH may modify or terminate the benefits at its discretion upon expiration of the current bargaining agreement.

(Compl. at ¶ 2.) On March 31, 2004, the defendants, the UAW International and eight UAW Locals (collectively the "Union" or the "UAW") filed a motion to dismiss or, in the alternative, to transfer this case to the United States District Court for the Eastern District of Michigan. The defendants' motion is now fully briefed and is ready for resolution.

A bit of background is necessary in order to fully understand and appreciate the parties' respective positions in this matter. That background can be gleaned from the parties' respective filings.

J.I. Case Company dates back to 1842 when Jerome I. Case started a threshing machine company in Racine, Wisconsin. In 1967, Tenneco Inc. acquired J.I. Case, which subsequently became a wholly-owned subsidiary of Tenneco. Tenneco continued to operate J.I. Case as a wholly-owned subsidiary through June 1994. In 1994, Tenneco underwent a reorganization and made a public offering of its agricultural and construction business. That transaction was accomplished in two steps: (1) Tenneco sold its agricultural and construction assets (consisting of both J.I. Case assets as well as other Tenneco assets) to a newly-formed, independent corporation called Case Equipment Corporation; and (2) Tenneco then sold the stock of the new Case Equipment Corporation in a July 1, 1994 initial public offering ("IPO").

As part of the 1994 transactions that formed Case Equipment Corporation, Tenneco, J.I. Case, and the newly-formed Case Equipment Corporation signed a Reorganization Agreement and an Allocation Agreement that allocated liability for, among other things, retiree health care benefits. Pursuant to the terms of those agreements, Tenneco retained all liability for J.I. Case Company retiree benefit plans for UAW-represented employees who retired before the July 1, 1994 IPO ("the Pre-IPO retirees").

2

After the July 1994 IPO, the old J.I. Case continued to exist as a wholly-owned subsidiary of Tenneco. That company, now known as EPEC Corporation, exists today.

After the July 1, 1994 IPO was complete, Case Equipment Corporation changed its name to Case, LLC. On January 1, 2004, Case, LLC changed its name to CNH America LLC, the plaintiff in this action.

The relationship between CNH and its UAW-represented employees is governed by a series of central collective bargaining agreements negotiated between CNH and the UAW (and ratified by UAW local unions 152, 180, 807, 1304, and 1306), as well as separate collective bargaining agreements with UAW local unions 763, 1356C, and 1356T. In total, eleven collective bargaining agreements (collectively, the "CBAs"), govern the retirement health care benefits for CNH post-IPO retirees.

Each time that CNH entered into a new central collective bargaining agreement, CNH also negotiated and entered into a Group Benefit Plan, under which CNH agreed to provide active and retired CNH post-IPO employees with various insurance and health care benefits. Each CBA includes an identical provision that explicitly incorporates by reference the corresponding Group Benefits Plan.

CNH currently provides retiree health care benefits to a diverse group of union-represented and non-union represented employees and retirees, including persons who retired from the post-IPO entities then known as Case Corporation and Case LLC. The post-IPO retiree health care benefits are self-funded by CNH. In 2001, in response to escalating health care costs, CNH introduced a new retiree care plan for the majority of its retirees (including non-union hourly and salaried employees, but not including UAW represented post-IPO retirees).

3

As stated previously, Tenneco retained the liability to pay for retiree health care benefits for all J.I. Case pre-IPO retirees, pursuant to the express terms of the Reorganization Agreement. The entity now known as El Paso Tennessee Pipeline Co. ("El Paso") acquired that liability after Tenneco and El Paso Natural Gas Company merged in 1996. In August 2002, El Paso informed the pre-IPO retirees that, given the escalating costs of retiree health care, those retirees would have to begin paying a monthly premium starting September 1, 2003. In response to that announcement, the UAW and a group of pre-IPO retirees filed a putative class action lawsuit on October 29, 2002 in the United States District Court for the Eastern District of Michigan. Plaintiffs purported to represent a class of J.I. Case retirees and surviving spouses who retired form J.I. Case prior to July 1, 1994 (i.e., before the IPO). On December 23, 2002, the plaintiffs in that lawsuit voluntarily dismissed that action and re-filed without the UAW participating as a plaintiff (i.e., the Pre-IPO Retiree Lawsuit). The Pre-IPO Retiree Lawsuit is currently pending before United States District Judge Patrick J. Duggan in the Eastern District of Michigan. That lawsuit is captioned *Yolton, et al. v. El Paso Tennessee Pipeline Company and Case Corporation*, Case No. 02-75164 ("*Yolton Detroit Lawsuit*" or "*Yolton*").

On December 31, 2003, Judge Duggan granted the plaintiffs' motion for preliminary injunction in *Yolton*. Judge Duggan's order directed El Paso to "resume paying the full cost of health insurance benefits for retirees and surviving spouses of retirees who retired from Case prior to October 3, 1993." (Memorandum Order). On January 22, 2004, the defendants in *Yolton* filed a Notice of Appeal to the Sixth Circuit Court of Appeals from Judge Duggan's Order granting the plaintiffs' motion for preliminary injunction.

4

At the time the instant lawsuit was filed on February 11, 2004, by CNH, CNH's CBA with the UAW was set to expire in May 2004. Again, according to CNH, the post-IPO retirees then were receiving (and still receive) "essentially free health care." (Defs.' Br. at 10.) CNH believes that under the 1990, 1995, and 1998 CBAs (the contracts under which the post-IPO retirees retired), CNH has the right to modify those benefits unilaterally because the benefits are not vested under ERISA. Because the UAW disagrees, CNH filed the instant action seeking a declaratory judgment from this court "that, pursuant to LMRA Section 301, ERISA Section 502, federal common law of labor contracts, and the unambiguous language of the CBAs, Group Benefit Plans, and SPDs [Summary Plan Descriptions] applicable to CNH Post-IPO Retirees, the retirees are not entitled to lifetime, vested health care benefits." (Defs.' Br. at 11.)

On February 18, 2004 (seven days after the instant action was filed), six post-IPO retirees filed a class action in the United States District Court for the Eastern District of Michigan challenging the right of CNH to cut the health care coverage which is the subject of the instant declaratory judgment action. That case is captioned *Reese, et al. v. CNH America LLC* ("*Reese Detroit Lawsuit*" or "*Reese*"). On March 3, 2004, *Reese* was reassigned to Judge Duggan as a companion case to *Yolton*.

Shortly thereafter, the defendants in *Reese* filed a motion to stay or dismiss *Reese*, arguing that the instant action (this Milwaukee case) was the "first-filed" suit in which was raised the question of the rights of the post-IPO retirees to health care benefits. On June 30, 2004, Judge Duggan denied the defendants' motion to dismiss *Reese*. Instead, Judge Duggan stayed *Reese* pending this court's deciding "whether the first-to-file rule applies or whether special circumstances exist suggesting that the rule should be rejected." (Op. and Order at 6.)

5

## II. DISCUSSION

The Union's motion to dismiss or, in the alternative to transfer, is predicated on several grounds. First, the Union argues that CNH has "no standing to seek a declaratory judgment action under ERISA to clarify the rights of [CNH] (the employer) regarding retiree health care benefits." (Defs.' Mot. at 2). This is because 29 U.S.C. § 502(a)(3) provides, in pertinent part, that "[a] civil action may be brought . . . by a . . . fiduciary . . . (B) to obtain any other appropriate equitable relief . . . (ii) to enforce any . . . terms of the plan." However, in seeking a declaratory judgment to eliminate the claimed vested health care benefits of retirees under the plan, CNH cannot be said to be seeking, as a fiduciary, to "enforce" the rights of those retirees. Consequently, the court has no jurisdiction over CNH's claim under 29 U.S.C. § 502(a)(3).

Second, the Union argues that

> [u]nder Section 301 of the LMRA [29 U.S.C. § 185] federal district courts have jurisdiction over suits for a violation of labor contracts but not over declaratory judgment actions regarding the meaning of labor contracts. Therefore, [CNH's] Section 301 claim seeking a declaration regarding the meaning of the labor contract (i.e. that [CNH] is permitted to cut retiree health care benefits) should be dismissed for lack of subject matter jurisdiction.

(Defs.' Mot. at ¶ 3).

Third, the Union argues that this court cannot, in any event, adjudicate the rights of non-party retirees to health care benefits under the relevant collective bargaining agreements precisely because those retirees are not parties to this action. According to the Union, the instant case (the "*CNH Milwaukee Lawsuit*") "<u>cannot</u> adjudicate the rights of the *Reese* plaintiffs to health care benefits. A judgment against the UAW, which as a matter of law is not the exclusive bargaining representative of retirees, <u>cannot</u> resolve the issue of whether [CNH] is entitled to cut retiree health care. Every

6

retiree and surviving spouse targeted by the [the *CNH Milwaukee Lawsuit*] will still have the right to sue [CNH] under Section 301 and ERISA to vindicate his/her right to vested health care benefits." (Defs.' Br. at 3 (emphasis in original)).

Finally, the Union argues that the court should, in its discretion, decline to exercise jurisdiction over this declaratory judgment action and dismiss it. In the alternative, the court should transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). According to the Union, once this action is transferred it "undoubtedly will be consolidated with the *Reese, et al. Detroit Lawsuit* – the only action which can actually decide the rights of the retirees and the obligations of [CNH]." (Defs.' Br. at 34 (emphasis in original)).

CNH responds to the Union's motion as follows. First, CNH argues that 29 U.S.C. § 502(e) grants subject matter jurisdiction to this court on the plaintiff's ERISA claim. According to CNH, the Union's argument is actually a challenge to CNH's standing to bring this action as a fiduciary under § 502(a)(3). Regardless, CNH asserts that it is indeed "a plan 'fiduciary' of the self-funded welfare plans governing the Post-IPO Retirees, as that term is defined by ERISA. *See* 29 U.S.C. § 1002(21)(A)." (Pl.'s Br. at 14.) Furthermore, CNH argues that its actions in bringing this lawsuit are not inconsistent with its fiduciary responsibilities. Indeed, "CNH believes that as the plan fiduciary it has the obligation to clarify the vesting status of retiree health care benefits so retirees do not make unalterable retirement decisions based on the UAW's incorrect advice that they are entitled to vested benefits as long as they retire before the new CBA goes into effect." (Pl.'s Br. at 16.)

Moreover, CNH argues, citing *Winstead v. J.C. Penney Co., Inc.* 933 F.2d 576, 579 (7th Cir. 1991), that a "fiduciary's claim to determine its rights under the health care plan [is] a suit to

7

'enforce' the plan. . . . '[t]o enforce is to effectuate' – meaning that to 'enforce' a plan is to give effect to the terms of the plan." (Pl.'s Br. at 16.)

Finally, CNH argues that

under settled Seventh Circuit law a declaratory judgment action such as this one seeks equitable relief. *See Spitz v. Tepfer*, 171 F.3d 443, 450 (7th Cir. 1999) ("This court, along with others, has characterized suits by fiduciaries under ERISA for declaratory judgments, injunctions, and restitution as actions in pursuit of 'appropriate equitable remedies' under [ERISA].").

(Pl.'s Br. at 17.)

CNH also argues that the court has subject matter jurisdiction over its declaratory judgment claim pursuant to § 301 of the LMRA, 29 U.S.C. § 185, even though (as of yet) there has been no affirmative violation of any labor contract. CNH asserts that "'under § 301(a) *any disputes* about the *meaning* or validity of collective bargaining agreements come within the jurisdiction of federal courts.'" (Pl.'s Br. at 18 (*quoting Int'l Brotherhood of Elec. Workers, Local 481 v. Sign-Craft, Inc.*, 864 F.2d 499, 502 (7th Cir. 1988) (emphasis added)).

CNH further asserts:

Despite CNH citing 28 U.S.C. § 1331 and 28 U.S.C. § 2201 as additional bases for subject matter jurisdiction in its complaint . . . , the UAW has not argued these statutory provisions. At a minimum, this Court has subject matter jurisdiction over this action under both of those provisions.

(Pl.'s Br. at 20.)

Finally, CNH argues that transfer of this case to the Eastern District of Michigan is not warranted. CNH's argument is predicated on several bases: first, by filing the instant lawsuit CNH is not engaging in improper forum shopping; second, contrary to the Union's assertion, the "Pre-IPO Retiree Lawsuit" currently pending in the Eastern District of Michigan is not the first-filed suit; third,

8

the instant action is not an improper preemptive lawsuit; and finally, according to CNH, the Union has not demonstrated that the transferee forum, i.e., the Eastern District of Michigan, is clearly more convenient and that the interests of justice call for such transfer.

### A. CNH's Claim under ERISA

Even assuming that CNH is a "fiduciary" for purposes of ERISA, the court is persuaded that, absent there having been a claimed violation of the plan, CNH's effort to obtain a declaratory judgment regarding the meaning of the terms of the plan is not countenanced by Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). That section grants to "a participant, beneficiary, or fiduciary" the right to bring a civil action to, *inter alia*, "obtain . . . appropriate equitable relief . . . to enforce any provisions of . . . the terms of the plan." But, CNH's suit does not seek an order enforcing a provision of the plan. Instead, it seeks an order clarifying CNH's obligations under the plan. Such relief is only available to a participant or beneficiary. See § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). That Congress would so clearly make available such remedy only to participants and beneficiaries leads to the inescapable conclusion that it did not intend to give such remedy to fiduciaries. Such was the conclusion reached by the court in *Gulf Life Insur. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987).

In *Gulf Life*, the plaintiff insurance company, as a fiduciary, brought a declaratory judgment action seeking a determination of its liability for benefits claimed by a former employee who participated in its employee benefit plan. In granting the defendant's motion to dismiss, the court stated:

> It also is clear to us that Gulf Life's suit does not seek "to enforce" the subchapter or the terms of the plan. "The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably

9

> determined the right to enter federal court was necessary to further the statute's purposes." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21, 103 S.Ct. 2840, 2852, 77 L.Ed.2d 420 (1983). Gulf Life's declaratory judgment action simply is unnecessary to further the statute's purpose. The purpose essential to section 1132(a)(3)(B) is to enforce the terms of the plan or ERISA; all Gulf Life need do to enforce the terms of the plan, assuming it contends the claim for benefits is invalid, is deny payment. Moreover, an action "to enforce" means an action to compel someone to do something or not to do something, such as make contributions, that ERISA or the plan requires be done or not done. . . . Gulf Life's action is defensive in nature; the company simply wishes to avoid making payment that Arnold claims is due. Seeking a declaration of its liability does not "enforce" the plan.
>
> . . . .
>
> Congress stated in section 1132(a)(1) that a participant or beneficiary could bring a civil suit not only to recover benefits, but also "to clarify his rights to future benefits under the plan." 29 U.S.C.A. sec. 1132(a)(1)(B). Obviously, this section expressly acknowledges the right of participants/beneficiaries to seek a declaratory judgment; just as obviously, fiduciaries are omitted as parties that can bring such an action regarding benefits. This omission is significant.
>
> Under Gulf Life's view, participants, beneficiaries *and* fiduciaries could bring a suit for declaratory judgment under section 1132(a)(3) to clarify a participant's/beneficiary's rights to benefits. That interpretation would usurp the language of section 1132(a)(1) – in which Congress limited such actions solely to participants and beneficiaries – and thereby render section 1132(a)(1) meaningless, or at least redundant. Absent clear congressional intent to the contrary, we will assume the legislature did not intend to pass vain or meaningless legislation.

*Gulf Life*, 809 F.2d at 1523-24; *see also TransAmerica Occidental Life Insur. Co. v. DiGregorio*, 811 F.2d 1249, 1252-53 (9th Cir. 1987).

Indeed, in *Massey Ferguson Div. of Varity Corp. v. Gurley*, 51 F.3d 102 (7th Cir. 1995), the plaintiff fiduciary of a pension plan had filed an action seeking a declaratory judgment that the defendant was not entitled to a pension. The Seventh Circuit Court of Appeals stated (albeit in dicta):

> Massey Ferguson is the Plan's administrator and so is a "fiduciary" of the Plan, but it is not seeking to "enforce" any provision of ERISA or the Plan. Gurley, a would-be

10

> pensioner, isn't violating the Plan or ERISA, so there is nothing to "enforce" against him.

*Massey Ferguson*, 51 F.3d at 103.

The bottom line is that, in my opinion, ERISA does not afford a fiduciary like CNH (assuming *arguendo* that CNH is a fiduciary under ERISA) the right to bring an action seeking a declaratory judgment that would-be beneficiaries (like the post-IPO retirees) do not have vested lifetime health care benefits under the applicable collective bargaining agreements and the associated Group Benefits Plans and Summary Plan Descriptions. Simply stated, an action seeking such relief is not an action seeking "enforcement" of the plan. Consequently, to the extent CNH's declaratory judgment action is jurisdictionally predicated on ERISA, the defendant's motion to dismiss will be granted.

### B. CNH's Claim under the LMRA

Section 301(a) of the Labor Management Relations Act, 1947, provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction over the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a)

According to the Union, § 301 affords this court no jurisdiction to entertain CNH's claim precisely because CNH does not allege that there has been any "violation" of what the parties agree is a valid collective bargaining agreement. Instead, all that CNH seeks is a judgment declaring the respective rights of the parties under that CBA. CNH seeks such relief so that it will, thereby,

11

become insulated from future liability when it unilaterally modifies the health care benefits currently being provided to the post-IPO retirees.

Relying principally on the Seventh Circuit case of *Int'l Brotherhood of Elec. Workers, Local 481 v. Sign-Craft, Inc.*, 864 F.2d 499 (7th Cir. 1988), CNH argues that this court has jurisdiction under § 301, regardless of the fact that no violation of the CBA has been alleged. In this regard, CNH argues as follows:

> There [in *Sign-Craft*], the court was faced with the issue of whether a union could bring a declaratory judgment action under § 301 of the LMRA for a claim that the employer repudiated a collective bargaining agreement. To resolve the claim of repudiation, the Seventh Circuit noted that it would have to interpret the collective bargaining agreement at issue, which had not yet been violated by either party. The court held:
>
> > [W]e now . . . hold that under § 301(a) any disputes about the meaning or validity of collective bargaining agreements come within the jurisdiction of federal courts.
>
> 864 F.2d at 502 (emphasis added). Accordingly, the Seventh Circuit squarely held – not in dicta as asserted by the UAW – that district courts have subject matter jurisdiction under § 301 of the LMRA to hear declaratory judgment actions concerning the meaning or interpretation of collective bargaining agreements.

(Pl.'s Br. at 17-18.) Indeed, if it were only the Seventh Circuit's decision in *Sign-Craft* that informed this court's decision on the issue presented by the Union's motion, the outcome would be rather straight-forward. However, to the extent that the court's holding in *Sign-Craft* was that federal district courts have jurisdiction under § 301 over all disputes about the meaning of CBAs regardless of whether there has been a violation of those CBAs, the continued vitality of that holding has been called into serious question by the Supreme Court's decision in *Textron Lycoming Reciprocating*

12

*Engine Div. v. United Automobile, Aerospace and Agricultural Implement Workers of America*, 523 U.S. 653 (1998).

In *Textron*, the Union had filed an action seeking a declaratory ruling that its execution of the collective bargaining agreement into which it had entered with Textron had been fraudulently induced, that it was therefore voidable at the option of the Union, and that the Union was entitled to compensatory and punitive damages. However, "[t]he Union [did] not allege that either it or Textron ever violated the terms of the collective-bargaining agreement." *Textron*, 523 U.S. at 655. The Court held that "[b]ecause the Union's complaint allege[d] no violation of the collective-bargaining agreement, neither [the Supreme Court] nor the federal courts below [had] subject matter jurisdiction over this case under § 301(a) of the Labor-Management Relations Act." *Id.* at 661-62.

In reaching its conclusion, the Court examined the express language of the statute and rejected the Government-amicus' argument that § 301(a) "'is broad enough to encompass not only a suit that "alleges" a violation of contract, but also one that concerns a violation of contract, or is intended to establish a legal right to engage in what otherwise would be a contract violation.'" *Id.* at 656 (quoting Gov't's Br.). The Court stated:

> "Suits of violation of contracts" under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated.
>
> This does not mean that a federal court can never adjudicate the validity of a contract under § 301(a). That provision simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense. . . . Similarly, a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid. But in these cases, the federal court's power

> to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate "[s]uits for violation of contracts."

*Textron*, 523 U.S. at 657-58. Given the *Textron* holding, it is most doubtful that this court has jurisdiction under § 301 to adjudicate CNH's claim in this case. Simply stated, CNH has not alleged that the Union (or either party for that matter) has violated any collective bargaining agreement. The court would only have the "ancillary power" to adjudicate the question of the post-IPO retirees' claimed "vested" right to future health care benefits if there was an allegation of a violation of the collective bargaining agreement. *See Teamsters National Automotive Transporters Industry Negotiating Committee v. Troha*, 328 F.3d 325, 329 (7th Cir. 2003) ("The § 301 grant of jurisdiction is extremely limited. The Supreme Court's holding in *Textron* emphasizes this narrowness. . . . The holding of *Textron* is that only cases that allege violations of the collective bargaining agreement fall under the jurisdictional grant of § 301."). Consequently, to the extent CNH's declaratory judgment action is jurisdictionally predicated on § 301 of the LMRA, the defendant's motion to dismiss will be granted.

There is yet a further reason why the court will not entertain CNH's claim under § 301: To do so would be tantamount to allowing the Union to "hijack" the retirees' claim under ERISA that they have a vested right to future health care benefits.

A similar situation was presented to this court in *Rosetto v. Pabst Brewing Co., Inc.*, 128 F.3d 538 (7th Cir. 1997). In *Rosetto*, plaintiff District 10 of the International Association of Machinists and Aerospace Workers AFL-CIO ("District 10") brought an action against Pabst Brewing Co., Inc. ("Pabst") seeking reinstatement of certain retiree health care and death benefits that had been unilaterally terminated by Pabst. According to District 10, the CBAs that had been previously

14

negotiated between it and Pabst gave lifetime benefits to the retirees. Count I of the amended complaint alleged that Pabst breached the CBA in violation of § 301 of the LMRA. Count II alleged that Pabst's refusal to pay retiree health and life benefits constituted a violation of § 502 of ERISA. Count III sought an order compelling arbitration of District 10's grievance and a status quo injunction pending resolution of the grievance. This court granted District 10's motion to compel arbitration and enjoined Pabst from terminating retiree benefits subject to a final ruling by an arbitrator.

The Seventh Circuit vacated this court's order and dismissed Pabst's appeal for lack of jurisdiction. In doing so, the court ruled that, under the relevant CBA, District 10 had no standing to pursue the retirees' grievance to arbitration. More importantly, however, the court also noted:

> The retirees have statutory rights outside the scope of District 10's representative capacity. The retirees are entitled to litigate their ERISA claims, which, contrary to what District 10 asserted at oral argument, are not free-standing – for practical purposes, arbitration would dispose of all of the retirees' claims. District 10 cannot hijack the retirees' right to pursue their statutory claims by forcing arbitration.

*Rosetto*, 128 F.3d at 541. A similar situation would be presented in the case at bar were this court to entertain CNH's § 301 claim. To be sure, unlike the plaintiff in *Rosetto*, CNH is not seeking to have its § 301 claim arbitrated. But, the net result would be the same as in *Rosetto*. By the court's entertaining and ruling upon CNH's claim for declaratory relief under § 301, the post-IPO retirees' ERISA claim (which belongs to them alone) would, to use the Seventh Circuit's colorful term, be "hijack[ed]."

### C. CNH's Claim under 28 U.S.C. §§ 1331 and 2201

This then takes me to the last of CNH's claimed bases for jurisdiction: 28 U.S.C. §§ 1331 and 2201. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Stated another way,

15

the district courts have jurisdiction over actions in which a cause of action arising under federal law is asserted. *See Troha*, 328 F.3d at 329-31.

In *Troha*, the court held that the district court had § 1331 jurisdiction over a cause of action to enforce arbitration subpoenas issued against non-signatories to the collective bargaining agreement that formed the basis of the underlying arbitration. In reaching its conclusion, the court first held that the district court did not have jurisdiction of the subpoena enforcement action under § 301 of the LMRA. This was because the persons who had been subpoened were not signatories to the collective bargaining agreement. However, in holding that the district court had jurisdiction over the subpoena enforcement action under § 1331, the court noted that "the Supreme Court has determined that § 301, beyond expressly authorizing the federal courts to hear suits brought for violations of collective bargaining agreements, also authorizes the federal courts to fashion a body of common law for the enforcement of the collective bargaining agreements over which they have jurisdiction." *Troha,* 328 F.3d at 329. The court thus held:

> [F]ederal common law under § 301 creates a cause of action by which a party to a collective bargaining agreement that is otherwise covered by § 301 can enforce an arbitration subpoena against a non-signatory of the agreement. In turn, because the cause of action arises under federal common law, the district court had jurisdiction over the action under 28 U.S.C. § 1331.

*Troha*, 328 F.3d at 331. Relying principally on *Troha*, CNH argues that this court has § 1331 jurisdiction over its claim seeking court interpretation of the collective bargaining agreement. In my opinion, however, the Seventh Circuit's holding in *Troha* does not support the proposition advanced by CNH.

In *Troha*, unlike in the case at bar, there had been a claimed violation of the collective bargaining agreement. Such being the case, even though the plaintiff's claim in *Troha* could not be

16

directly predicated on the jurisdictional provisions of § 301, the claim could be indirectly predicated on the jurisdictional provisions of § 1331 because "the purpose of the lawsuit [was to] effectuate[] the goals of § 301." *Troha*, 328 F.3d at 330. As the court stated:

> A collective bargaining agreement that requires arbitration is powerless if the parties to the arbitration cannot present evidence in the form of third person testimony or documents possessed by third parties. Enforcement of an agreement to arbitrate cannot provide the "necessary legal remedy" if the parties to the arbitration have no means of securing valuable evidence other than their own testimony.
>
> Viewed in this light, today's case in distinguishable from *Loss* [*v. Blankenship*, 673 F.2d 942 (7th Cir. 1982)]. We held that the plaintiff in *Loss* failed to state a federal claim not because the defendant was a third party, but because the tortious interference suit was not necessary to the purpose of enforcing the collective bargaining agreement between the signatories. Suits for enforcement of an arbitration subpoena, on the other hand, have a great impact on the arbitration process and are necessary to the purpose of enforcing the agreement to arbitrate. It is therefore appropriate to apply the reach of federal common law to ensure that such subpoenas do not go unenforced.

*Troha*, 328 F.3d at 330.

The relief which CNH seeks in the case at bar cannot really be said to be for the purpose of effectuating the goals of § 301. To the contrary, given the Supreme Court's holding in *Textron* that it is only cases that allege violations of the collective bargaining agreement that fall under the jurisdictional grant of § 301, for this court to find there to be § 1331 jurisdiction over a claim seeking declaratory relief with respect to CBAs that have undisputedly not been violated would run directly counter to the goals of § 301, as construed by the Supreme Court in *Textron*. In other words, such would be tantamount to giving to CNH by the back door that which the Supreme Court has said CNH is not entitled to by way of the front door. Consequently, to the extent CNH's declaratory judgment action is jurisdictionally predicated on 28 U.S.C. § 1331, the defendant's motion to dismiss will be granted.

Finally, CNH argues that

> even if the Court rejects all other basis of jurisdiction, this Court still retains original subject matter jurisdiction to declare CNH and the UAW's respective rights under the CBAs because the Declaratory Judgment Act, 28 U.S.C. § 2201, gives federal courts power to declare rights between a union and employer where an "actual controversy" of federal question exists under § 1331.

(Pl.'s Br. at 22.) First of all, for the reasons stated above, the court has ruled that it does not have jurisdiction under § 1331. Moreover, to the extent that CNH is arguing that § 2201 is an independent basis for federal subject matter jurisdiction, such argument must be rejected. It is well settled that "[t]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Insur. Co. v. Haworth*, 300 U.S. 227, 240 (1937). In other words, it does not provide an independent basis of federal subject matter jurisdiction. "[B]ecause the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878-79, 94 L.Ed.2d 1194 (1950), the district court must possess an independent basis for jurisdiction." *GNB Batteries Technology, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995).

In sum, for the reasons set forth above, the court is persuaded that it does not have jurisdiction over CNH's claims for declaratory judgment under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); under Section 301(a) of the LMRA, 29 U.S.C. § 185; or under 28 U.S.C. §§ 1331 or 2201. Consequently, the defendants' motion to dismiss will be granted.

Such ruling renders moot the defendants' alternative motion to transfer. Such ruling also renders moot the plaintiff's motion to strike the affidavit of Attorney Roger McClow.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion to dismiss be and hereby is **GRANTED**;

18

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the defendants' alternative motion to transfer be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to strike the affidavit of Attorney Roger McClow be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the defendants' "Rule 7.4 Expedited Non-Dispositive Motion" to strike plaintiff's paper correspondence with the court be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this  3rd  day of August 2004, at Milwaukee, Wisconsin.

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
