# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 964201 (D.Md.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**
Holland v. Psychological Assessment Resources, Inc.
D.Md.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Maryland.
John L. HOLLAND
v.
PSYCHOLOGICAL ASSESSMENT RESOURCES, INC.
No. Civ. CCB-04-437.

April 27, 2004.

Craig E. Smith, Maria E. Rodriguez, Venable, Baetjer and Howard LLP, George Cochran Doub, Jr., George C. Doub PC, Baltimore, MD, for Plaintiff.
Ralph S. Tyler, Elizabeth F. Harris, Hogan and Hartson LLP, Baltimore, MD, for Defendant.

BLAKE, J.
*1 Now pending before this court is a motion by the defendant, Psychological Assessment Resources, Inc., to transfer this case to the Middle District of Florida, Tampa Division. The issues in this motion have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the court will deny the motion to transfer.

BACKGROUND

Plaintiff John L. Holland, Ph.D. ("Holland") is the author of *The Self Directed Search, A Guide to Educational and Vocational Planning* ("the SDS"), a career interest inventory and guide. The SDS is designed to sort individuals into six different personality types, and then direct them to occupations and work environments that match their personality types. Holland is a Maryland resident. The defendant Psychological Assessment Resources, Inc. ("PAR") publishes and sells testing instruments, psychological texts, computer software, and related materials. PAR is a Florida corporation, with its principal place of business near Tampa, Florida.

Holland first published the SDS in 1971. In 1986 Holland entered into a publishing contract which granted PAR "the exclusive right to print, publish, license, sell, and use [the SDS] in all media in any language throughout the world."(Am. Compl. at Ex. 1, at 1.) In exchange, Holland would receive royalties from all net sales by PAR. In 1989 Holland and PAR entered into a revised publishing contract, which is the subject of the parties' current dispute. This contract granted PAR the same exclusive right to publish the SDS in exchange for payment of royalties to Holland. The contract states that a "revised edition" of the SDS would be published and printed by PAR "as determined by mutual agreement between the Author and the Publisher."( *Id.* at Ex. 2.) A contemporaneous letter from R. Bob Smith, III, Ph.D., President of PAR, to Holland states that "publication and printing of any revisions ... will be determined by mutual agreement."( *Id.* at Ex. 3, at 2.) Holland argues that the cited provision of the 1989 contract and the assurance in Smith's letter require PAR to obtain Holland's prior approval and consent before it publishes any revisions to the SDS.

During 1997 and 1998, PAR developed an Internet version of the SDS, which was first published online in September 1998. The PAR web site for the Internet version of the SDS identifies Holland as the developer of the SDS and includes a link to a short biography. Holland alleges that the Internet version is a revised edition of the SDS, because it omits certain information, includes additional information, and changes the way an individual's responses are scored. Holland states that he disapproves of the Internet version of the SDS, and that it was published without his prior approval or consent. PAR alleges that it provided Holland with a draft version of the Internet product in 1998, that Holland provided comments on this draft to PAR, and that PAR incorporated the majority of these comments.

*2 Holland originally filed this suit in the Circuit Court for Baltimore City, Maryland on January 20,

1999, seeking a declaratory judgment that PAR's publication of the Internet version of the SDS without his prior approval or consent constituted a material breach of the 1989 contract, and that PAR had miscalculated the royalties owed to Holland from the Internet sales of the SDS. On February 5, PAR removed the suit to federal court on the basis of diversity jurisdiction. On June 29, this court remanded the suit, holding that PAR had failed to meet its burden of establishing that the amount in controversy exceeded $75,000. The suit proceeded through motions to dismiss and for summary judgment in state court, which narrowed the issues to whether the publication of the Internet version of the SDS without Holland's prior approval or consent breached the 1989 contract.

On February 2, 2004, Holland filed an amended complaint in the Circuit Court for Baltimore City which asserts claims for a declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing for PAR's publication of the Internet version of the SDS without his consent or approval. The amended complaint also asserts that by representing on its web site that Holland approves of this version of the SDS, PAR is liable for invasion of privacy-false light, and violation of the Maryland Unfair or Deceptive Trade Practices Act, Md.Code Ann., Com. Law § 13-301, and the federal Lanham Act, 15 U.S.C. § 1525. On February 19, PAR removed this suit to federal court, based on the presence of a federal question under the Lanham Act. PAR subsequently filed a motion to transfer the case to the Middle District of Florida, Tampa Division, which Holland opposes.

ANALYSIS

The court may transfer a civil action if (1) the transferee court is a court where the action might have been brought,[FN1] (2) the transfer is for the convenience of the parties and the witnesses, and (3) the transfer is in the interest of justice. 28 U.S.C. § 1404(a). The moving party bears the burden of showing by a preponderance of the evidence "that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."*Brown v. Stallworth*, 235 F.Supp.2d 453, 455 (D.Md.2002) (internal quotation and citation omitted)."Ordinarily, a plaintiff is entitled to select his forum unless there are factors of convenience sufficiently important to the parties and the court to occasion denying him that choice."*Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F.Supp.2d 461, 465 (D.Md.2000). Courts consider a variety of factors in applying § 1404(a), including: "1) the plaintiff's choice of forum; 2) relative ease of access to sources of proof; 3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; 4) possibility of a view of the premises, if appropriate; 5) enforceability of a judgment, if one is obtained; 6) relative advantage and obstacles to a fair trial; 7) other practical problems that make a trial easy, expeditious, and inexpensive; 8) administrative difficulties of court congestion; 9) local interest in having localized controversies settled at home; 10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and 11) avoidance of unnecessary problems with conflicts of laws."*Brown*, 235 F.Supp.2d at 456 (quoting *Helsel v. Tishman Realty & Constr. Co.*, 198 F.Supp.2d 710, 711-12 (D.Md.2002) (internal citations omitted)).

> FN1. Neither party disputes that the Lanham Act claim could have been brought in the Middle District of Florida, which is the district where the only defendant in this action resides. See 28 U.S.C. § 1391(b).

*3 The defendant relies on an affidavit submitted by R. Bob Smith, III, the chairman and chief executive officer of PAR, to argue that transfer of this case to the Middle District of Florida would be best for the convenience of the parties and the witnesses. Smith states that any conduct related to Holland's claims occurred in Florida, and that all witnesses and documents related to the allegations are in Florida, except for Holland himself. (Def.'s Mem. at Ex. 1, Smith Aff., at ¶ 5.) Specifically, Smith states that the Internet version of the SDS

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 964201 (D.Md.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

was developed in Florida, all documents and materials related to this product are in Florida, and all PAR employees and consultants who were involved in the development of this product are in Florida. (*Id.* at ¶ 4.) PAR argues that the court should not defer to Holland's choice of venue because "none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy."*Lynch v. Vanderhoef Builders,* 237 F.Supp.2d 615, 617 (D.Md.2002).

Smith's affidavit is not sufficient for PAR to carry its burden of establishing "that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."*Brown,* 235 F.Supp.2d at 455. The party moving for a change of venue ordinarily must submit affidavits from witnesses or parties detailing the inconveniences they will experience if the case is not transferred. *See id.* at 457;*see also Helsel,* 198 F.Supp.2d at 712. Smith's affidavit states that there are approximately 14 PAR employees and five non-employee consultants in Florida who have knowledge about "matters potentially at issue in this case."(Def.'s Mem. at Ex. 1, Smith Aff., at ¶ 4.) These nineteen potential witnesses are not identified by name, they have not submitted affidavits to this court, and Smith's affidavit provides no further details regarding the inconveniences they would experience.[FN2]

> FN2. Similarly, PAR has not specifically identified the "documents" and "materials" in Florida which it states may be relevant to this dispute, or explained why producing these items in Maryland would be burdensome. (Def.'s Mem. at Ex. 1, Smith Aff., at ¶ 4-5.) Although "relative ease of access to sources of proof" is a factor for the court to consider, *Brown,* 235 F.Supp.2d at 456, PAR has not carried its burden of establishing this factor.

Moreover, it is not clear what evidence each of these potential witnesses might provide, and whether their testimony would be relevant to the issues presented in Holland's amended complaint. For example, Smith states that some of the 14 PAR employees have knowledge regarding "product sales data, and royalty payments to Holland" (Smith Aff., at ¶ 4), but claims related to the royalty payments were dismissed in state court. PAR also argues that the five non-employee consultants probably would not be subject to compulsory process in Maryland, a relevant factor for the court to consider. *See Brown,* 235 F.Supp.2d at 456. It is not clear, however, what evidence these consultants could provide or whether PAR intends to call them as witnesses.[FN3] "There is nothing to show that the testimony would be material to the action, and the court has no real basis upon which to render a decision to transfer the case."*Dev. Co. of Am. v. Ins. Co. of N. Am.,* 249 F.Supp. 117, 119 (D.Md.1966) (denying the defendant's motion for transfer, where the defendant listed potential witnesses but gave no indication of the substance of their testimony); *see also, e.g., Carona v. Falcon Servs. Co. Inc.,* 68 F.Supp.2d 783, 785-86 (S.D.Tex.1999) (same).

> FN3. Indeed, when Holland filed interrogatories seeking information on the individuals who participated in the preparation of the Internet version of the SDS (which apparently includes these five consultants), PAR objected that this request did not seek information "reasonably calculated to lead to the discovery of admissible evidence," based on a decision from the Maryland Court of Special Appeals which had narrowed the issues presented. (Pl.'s Opp. Mem. at Ex. 3.) Holland notes that PAR has not deposed any of these consultants or proffered affidavits from any of them.(*Id.* at 15-16.)

*4 PAR also understates the connection between Maryland and the parties' dispute. The plaintiff's claims revolve around the 1989 contract between Holland and PAR. Holland states that Smith traveled to Maryland to negotiate the contract with Holland, and that PAR initiated other contacts with Holland in Maryland related to the contract. (Pl.'s Opp. Mem. at Ex. 1, Holland Aff., at ¶ 3-6.) While

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the parties' dispute also has a strong connection to Florida, it cannot fairly be said that "none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy."*Lynch,* 237 F.Supp.2d at 617. Under these circumstances, the plaintiff's choice of forum is a factor that is entitled to some deference. *See Choice Hotels Int'l, Inc. v. Madison Three, Inc.,* 23 F.Supp.2d 617, 622-23 (D.Md.1998)

Several other factors weigh against transfer of this case. Maryland appears to be the "forum that is at home with the state law that must govern the action," *Brown,* 235 F.Supp.2d at 456, because the parties and the Maryland courts have assumed that Maryland law governs the plaintiff's contract claims.[FN4] Indeed the case has been litigated for five years in Maryland courts. Holland also has submitted an affidavit stating that he is 84 years old, has high blood pressure, and broke his left leg about 18 months ago, and that as a result his walking is limited and he no longer travels by airplane. (Holland Aff.) Other courts have pointed to the plaintiff's poor health as a factor that can weigh against transfer. *See Mason v. SmithKline Beecham Clinical Labs.,* 146 F.Supp.2d 1355, 1360 (S.D.Fla.2001); *Moore v. McKibbon Bros., Inc.,* 41 F.Supp.2d 1350, 1357 (N.D.Ga.1998); *Rothman v. Emory Univ.,* 828 F.Supp. 537, 543 (N.D.Ill.1993). At best, PAR has shown that transferring venue to the Middle District of Florida would "shift the greater burden and inconvenience of trial from defendants to plaintiff, which is not a proper purpose of a transfer of venue."*Choice Hotels Int'l,* 23 F.Supp.2d at 622. For the reasons stated, the defendant's motion to transfer will be denied.

> FN4. PAR argues that Maryland and Florida law are the same on the basic contract principles at issue in this case, but does not dispute that Maryland law applies. (Def.'s Reply at 7-8.)

A separate order follows.

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the defendant's motion to transfer (docket no. 5) is DENIED; and
2. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.

D.Md.,2004.
Holland v. Psychological Assessment Resources, Inc.
Not Reported in F.Supp.2d, 2004 WL 964201 (D.Md.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.