Fred H. Altshuler (SBN 43878)
Linda Lye (SBN 215584)
Jamie L. Crook (SBN 245757)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94109
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-Mail: faltshuler@altshuleberzon.com
E-Mail: llye@altshulerberzon.com
E-Mail: jcrook@altshulerberzon.com

*Attorneys for Plaintiffs Robert M. Evitt, Sr.,
Joel Ortega, Loretta Evitt, and
the proposed Plaintiff Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ROBERT M. EVITT, Sr., JOEL ORTEGA, and LORETTA EVITT, on behalf of themselves and a class of those similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MACK TRUCKS, INC., AND MACK HEALTH, DISABILITY, AND LIFE BENEFITS FOR UAW EMPLOYEES PLAN,<br><br>　　　　　Defendants. | **Case No. C-07-4830 VRW**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　November 1, 2007<br>Time:　2:30 pm<br>Ctrm:　Courtroom 6, 17th Floor<br>　　　　The Honorable Vaughn R. Walker |

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   Plaintiffs Have An Overwhelming Likelihood Of Success On The Merits
     Of Their Claim Because Mack Acknowledged That Benefits Were "Lifetime"
     And The Contracts Contain No "Reservation Of Rights" Clause.. . . . . . . . . . . . . . . . . 2

     A.   The Contracts Promise "Lifetime" Benefits And Contain No
          Reservation Of Rights Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   No Presumption Against Vesting Applies In This Case. . . . . . . . . . . . . . . . . . . 3

     C.   Defendants' Remaining Arguments Are Unavailing. . . . . . . . . . . . . . . . . . . . . . 9

     D.   Extrinsic evidence reinforces the conclusion that benefits are vested. . . . . . . . 11

II.  The Balance Of Harms Overwhelmingly Favors Enjoining Any Changes
     To Plaintiffs' Medical Coverage Pending a Hearing On The Merits.. . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allied Chemical & Alkalai Workers of America v. Pittsburgh Plate Glass Co.,*
   404 U.S. 157 (1971) .................................................................. 9

*Angotti v. Rexam, Inc.,*
   2006 U.S. Dist. LEXIS 42104, 2006 WL 1646135
   (N.D. Cal. June 14, 2006) ....................................................... *passim*

*Barnett v. Ameren Corp.,*
   436 F.3d 830 (7th Cir. 2006) ....................................................... 7, 8, 11

*Bland v. Fiatallis North America, Inc.,*
   401 F.3d 779 (7th Cir. 2005) ....................................................... 6, 8

*Bower v. Bunker Hill Co.,*
   725 F.2d 1221 (9th Cir. 1984) ...................................................... 4, 5, 9

*Cabral v. Olsten Corp.,*
   843 F. Supp. 701 (M.D. Fla. 1994) .................................................. 12

*Chalk v. Teledyne, Inc.,*
   751 F. Supp. 1261 (W.D. Mich. 1999) ............................................... 14, 15

*Chalk v. U.S. District Court,*
   840 F.2d 701 (9th Cir. 1988) ....................................................... 13

*Cherry v. Auburn Gear, Inc.,*
   441 F.3d 476 (7th Cir. 2006) ....................................................... 5, 6, 8

*City of Los Angeles v. County of Kern,*
   462 F. Supp. 2d 1105 (C.D. Cal. 2006) .............................................. 13

*Cole v. ArvinMeritor, Inc.,*
   2005 U.S. Dist. LEXIS 38235, 2005 WL 3502182 (E.D. Mich. Dec. 22, 2005) ........... 12, 14

*Fox v. Massey-Ferguson, Inc.,*
   172 F.R.D. 653 (E.D. Mich. 1995) ................................................... 12

*Golden v. Kelsey-Hayes Co.,*
   845 F. Supp. at 415 ................................................................ 12

*Harris v. Board of Supervisors,*
   366 F.3d 754 (9th Cir. 2004) ....................................................... 1, 13

*Helwig v. Kelsey-Hayes, Co.,*
   857 F. Supp. 1168 (E.D. Mich. 1994) ................................................ 15

*Hinkley v. Kelsey-Hayes Co.,*
   866 F. Supp. 1034 (E.D. Mich. 1994) ................................................ 15

*International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Skinner,*
   188 F.3d 130 (3d Cir. 1999) ................................................. 7, 8

*Jensen v. SIPCO, Inc.,*
   38 F.3d 945 (8th Cir. 1994) ............................................. 3, 8, 9, 11

*Johnson v. Cal. State Board of Accountancy,*
   72 F.3d 1427 (9th Cir. 1995) ................................................. 13

*LaForest v. Former Clean Air Holding Co., Inc.,*
   376 F.3d 48 (2d Cir. 2004) ................................................... 14

*LaForest v. Honeywell International, Inc.,*
   2003 WL 23180220 (W.D.N.Y. Sept. 19, 2003), *aff'd by* 376 F.3d 48 ............. 14

*Oakland Tribune, Inc. v. Chronicle Public Co., Inc.,*
   762 F.2d 1374 (9th Cir. 1985) ............................................. 1, 13

*Pisciotta v. Teledyne Industrial, Inc.,*
   91 F.3d 1326 (9th Cir. 1996) .................................................. 8

*Risteen v. Youth For Understanding, Inc.,*
   245 F. Supp. 2d 1 (D.D.C. 2002) .............................................. 12

*Rodde v. Bonta,*
   357 F.3d 988 (9th Cir. 2004) .............................................. 1, 13

*Stearns v. NCR Corp.,*
   297 F.3d 706 (9th Cir. 2002) .................................................. 3

*In re Unisys Corp.,*
   58 F.3d 896 (3d Cir. 1995) ............................................... 3, 6, 8

*United Mine Workers v. Brushy Creek Coal Co.,* _F.3d_,
   2007 U.S. App. LEXIS 24355, 2007 WL 3023979 (7th Cir. Oct. 18, 2007) ..... 6, 7, 8, 11

*United Steelworkers of America v. Textron, Inc.,*
   836 F.2d 6 (1st Cir. 1987) ................................................ 14, 15

*Wood v. Detroit Diesel Corp.,*
   2005 WL 3579169 (E.D. Mich. Dec. 30, 2005) ................................... 12

**FEDERAL STATUTES**

Fed. R. Evid. 803(6) ............................................................. 11

**OTHER**

Schwarzer William W., et al., *California Practice Guide: Federal Civil Procedure Before Trial*
   § 13:55.3 .................................................................... 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants brazenly argue that this Court should not even *hear* Plaintiffs' motion for a preliminary injunction. This argument is simply Defendants' latest attempt to avoid this Court's jurisdiction. Plaintiffs seek a preliminary injunction to prevent Defendants from reducing their healthcare benefits – as Defendants have clearly stated they intend to do on April 1, 2008, just five months away. Neither caselaw nor common sense supports Defendants' absurd position that, because harm will not befall Plaintiffs for several months, it is not irreparable. Defendants' unequivocal representation that they will reduce benefits on April 1, 2008, is precisely the type of concrete threat that warrants preliminary injunctive relief. The purpose of a preliminary injunction is to prevent harm from occurring before the court can reach a final resolution on the merits. That being so, courts routinely issue preliminary injunctions to prevent harm slated to occur months or even years away. *See, e.g., Harris v. Bd. of Supervisors*, 366 F.3d 754, 757-758, 766 (9th Cir. 2004) (funding cutbacks in county healthcare slated to occur over two-year period); *Rodde v. Bonta*, 357 F.3d 988, 994 (9th Cir. 2004) (hospital closure planned to occur in five months). Plaintiffs' prompt efforts to seek a preliminary injunction underscores their showing of irreparable harm. *Cf. Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").

Defendants' attack on the merits of Plaintiffs' claims is equally meritless. Defendants mischaracterize a provision in the contracts at issue here as a "reservation of rights clause." The clause to which Defendants point is instead a garden-variety durational clause, simply requiring Mack to provide the benefits set forth in the Master Agreement during its term, and not the type of clause unambiguously reserving to the company the right to alter, amend, or terminate benefits "at any time," or "for any reason" that courts have found to defeat a claim of vesting. While the contracts in this case lack a reservation of rights clause, they do contain language expressly promising that retiree healthcare is a "lifetime" benefit. This case is thus indistinguishable from *Angotti v. Rexam, Inc.*, 2006 U.S. Dist. LEXIS 42104, 2006 WL 1646135 (N.D. Cal. June 14, 2006), in which a court of this district issued a preliminary injunction in favor of retirees because

the contracts contained "lifetime" language, but lacked a reservation of rights clause. *Id.* at *9, *11. Indeed, *Angotti* rejected the very argument that Defendants make here, that a durational clause defeats a claim of vesting. *Id.* at * 11. The out of circuit authority on which Defendants rely reinforces the conclusion that where, as here, a contract contains "lifetime" language, but lacks a reservation of rights clause, a durational clause does not defeat vesting.

## ARGUMENT

**I.    Plaintiffs Have An Overwhelming Likelihood Of Success On The Merits Of Their Claim Because Mack Acknowledged That Benefits Were "Lifetime" And The Contracts Contain No "Reservation Of Rights" Clause.**

Defendants contend that there is a presumption against vesting and assert that the Master Agreements between Mack and the International Union, Automobile, Aerospace, and Agricultural Implement Workers, AFL-CIO ("UAW") contain a "reservation of rights clause" which defeats vesting. Defendants are wrong on both counts.

### A.    The Contracts Promise "Lifetime" Benefits And Contain No Reservation Of Rights Clause.

The Master Agreements between Mack and the UAW do *not* contain a reservation of rights clause. We briefly describe the key language that the Master Agreements do and do not contain.

*"Lifetime" language.* The 1992, 1998, 2001, and 2004 Master Agreements all contain promises that retiree healthcare benefits "have been and will continue to be lifetime benefits." *See* Pltfs.' Mem. ISO TRO & PI (Doc. 6) ("Pltfs.' Mem.") at 14 and App. A (citing exhibits).

*Durational clause.* As Defendants emphasize, each Master Agreement also contains a clause that requires Mack to provide the benefits set forth therein during the life of each agreement. *See* Defs.' Mem. ISO Opp. to Prel. Inj. (Doc. 26) ("Defs.' Opp.") at 3. This clause is simply a durational clause, and not the type of clause that courts characterize as a "reservation of rights."

Each Master Agreement sets forth the health insurance program in "Appendix B," and each Appendix B contains a durational clause that provides that the benefits set forth therein "shall be . . . maintained by the Company . . . for the duration of the Collective Bargaining Agreement of which

this is a part."[1]

Each Master Agreement sets forth the pension program in "Appendix A." Each Appendix A contains a durational clause parallel to that in Appendix B, stating the pension program "shall be . . . maintained by Mack Trucks, Inc. ( the 'Company') for the duration of its Collective Bargaining Agreement with the International Union UAW (the 'union') of which this Appendix A is a part."[2]

*No "reservation of rights."* A reservation of rights clause expressly reserves the company's right to alter, amend, or terminate benefits "at any time," often "for any reason." *See, e.g., In re Unisys Corp.*, 58 F.3d 896, 903 (3d Cir. 1995) ("reservation of rights clauses . . . each . . . provided that the company could terminate the plan 'at any time' and 'for any . . . reason.'"); *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 948 (8th Cir. 1994) (company "reserves the right to terminate, discontinue, alter, modify, or change this plan or any provision of this plan at any time"). Neither the durational clause, nor any other clause in the Master Agreement unambiguously reserves Mack's right to alter, amend, or terminate retiree healthcare at any time, or for any reason. *Cf. Stearns v. NCR Corp.*, 297 F.3d 706, 711 (9th Cir. 2002) ("an unambiguous reservation-of-rights provision . . . defeat[s] a claim that retirement welfare plan benefits are vested").

**B.    No Presumption Against Vesting Applies In This Case.**

Relying on out of circuit authority, Defendants invoke a presumption that Plaintiffs' benefits are not vested. Defs.' Opp. at 9. Such a presumption is inconsistent with the law of this circuit, and even under out of circuit caselaw, Plaintiffs are likely to succeed on the merits because the contracts contain "lifetime" language, but lack an unambiguous, or indeed any, reservation of rights clause.

The durational clause on which Defendants rely imposes on Mack the obligation to maintain health insurance benefits during the life of the Master Agreement. Defs.' Opp. at 3. The clause

---

[1] Bressler Decl. ISO TRO & PI (Doc. No. 7), Exh. A (1987 App. B, Art. I, Sec. 1 at 121), Exh. C (1992 App. B, Art. I, Sec. 1 at 99), Exh E (1998 App. B, Art. I, Sec. 1 at B1), Exh. G (2001 App. B, Art. I, Sec. 1 at B1), Exh. I (2004 App. B, Art. I, Sec. 1 at B1).

[2] Bressler Decl. ISO Pltfs.' Reply, *filed herewith*, Exh. A (1987 App. A, Art. I at 1), Exh. B (1992 App. A, Art. I at 1), Exh. C (1998 App. A, Art. I at A1), Exh. D (2001 App. A, Art. I at A1), Exh. E (2004 App. A, Art. I at A1). Unless otherwise stated, all declarations cited in this brief are filed herewith.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

3

1  does not expressly give Mack the right to terminate benefits once the Master Agreement expires, nor
2  explicitly state that retirees' right to benefits expires with the Master Agreement.  Defendants thus
3  attempt to draw a presumption, an automatic negative inference from the durational clause, that,
4  once the Master Agreement expires, they have a right to terminate or reduce benefits.
5       1.   Defendants' argument is inconsistent with the Ninth Circuit's decision in *Bower v.*
6  *Bunker Hill Co.*, 725 F.2d 1221 (9th Cir. 1984), and has been rejected by a court of this district in
7  *Angotti*.  In *Bower,* the Ninth Circuit reversed a grant of summary judgment for a company in a
8  retiree healthcare case, holding that where "[t]he retirement medical insurance plan does not have an
9  explicit expiration date" and "[t]he labor-management agreement that endorses the plan does have
10 an expiration date," "the insurance program itself is not necessarily bound by this date."  *Id*. at 1223.
11      In *Angotti,* Judge Wilken issued a preliminary injunction in favor of retirees.  2006 WL
12 1646135, at *17.  The company in that case relied on the durational clauses of the collective
13 bargaining agreements ("CBAs").  Judge Wilken rejected the argument based on *Bower*:  In
14 asserting "that the CBAs' own duration clauses . . . mean[] that an otherwise ambiguous contract did
15 not vest welfare benefits," the company was seeking to "create a presumption against vesting of
16 retiree health benefits."  *Id.* at *11.  Such a presumption, Judge Wilken explained, "would be
17 inconsistent with the approach taken by the Ninth Circuit."  *Id.* (citing *Bower*).  Because the
18 contracts contained "lifetime" language, but lacked a reservation of rights clause, Judge Wilken
19 concluded that the retirees were likely to succeed on the merits.  *Id.* at *9, *11 ("These collectively-
20 bargained-for ["lifetime"] statements would hold little meaning if the benefits could be unilaterally
21 revoked by Rexam after the expiration of the CBA.").
22      In this case, as in *Bower,* the retiree healthcare plan has no "explicit expiration date."  725
23 F.2d at 1223.  And although the Master Agreement does have an expiration date, "the insurance
24 program itself is not necessarily bound by this date."  *Id.*  Defendants, like the defendant in *Angotti,*
25 seek to create a presumption against vesting, based on the durational clause.  This argument is
26 "inconsistent" with controlling Ninth Circuit precedent, and this Court, like the *Angotti* court,
27 should reject it.  *Angotti,* 2006 WL 1646135, at *11.  Exactly like the contracts in *Angotti*, the
28

contracts here contain "lifetime" language, but lack a reservation of rights clause.  And, exactly like the retirees in *Angotti*, Plaintiffs are therefore likely to succeed on the merits of their vesting claim.

Moreover, the Master Agreement itself refutes the presumption Defendants seek to create. The durational clause in Appendix B, which sets forth the health insurance program, merely states that Mack must maintain benefits during the term of the Master Agreement.  But the parties used the same durational language in connection with the pension program, and "it is undisputed that the pensions were vested, notwithstanding" this durational language.  *Angotti*, 2006 WL 1646135, at *10 (rejecting argument that language providing that health plan "'will remain in effect' during the term of the CBA" defeated vesting because contract contained parallel language that pension plan "will remain in effect for the term of this Agreement").[3]

2.   Defendants' reliance on out of circuit authority is equally misplaced.  *Cf.* Defs.' Opp. at 9.  In *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476 (7th Cir. 2006), the Seventh Circuit stated that "[i]f the agreement makes clear that the entitlement expires with the agreement, as by including such a phrase as 'during the term of this agreement,' then, once again, the plaintiff loses as a matter of law unless he can show a latent ambiguity by means of objective evidence." *Id.* at 482. Defendants argue that because the Master Agreement has a durational clause, Plaintiffs cannot prevail.  Defs.' Opp. at 9.  As discussed above, this analysis creates a presumption against vesting, inconsistent with the Ninth Circuit's decision in *Bower* and rejected by this Court in *Angotti*.

But even under the Seventh Circuit's framework, no presumption against vesting applies here.  As *Auburn Gear* goes on to explain:

> [i]f there is language in the agreement to suggest a grant of lifetime benefits, and the suggestion is not negated by the agreement read as a whole, the plaintiff is entitled to a trial. Of course, if the agreement expressly grants such benefits, the plaintiff is entitled, not to a

---

[3]The durational clause in Appendices A (pension) and B (health insurance) are thus sensibly construed to mean that Mack satisfies its contractual obligations by providing the enumerated benefits, but is not required to provide any additional benefits, during the term of the Master Agreement.  Moreover, Appendix B sets forth health insurance benefits for retirees as well as active employees.  As to active employees – whose healthcare benefits are not yet vested and as to whom the contracts do not use the term "lifetime" benefits – Mack is free to alter benefits after the expiration of the Master Agreement, as long as it obtains the union's agreement to do so in a successor Master Agreement.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

5

trial, but to a judgment in his favor. [441 F.3d. at 482.]

In this case, the Master Agreements do more than suggest; they expressly grant "lifetime benefits." Mack pledged in the 1992, 1998, 2001, and 2004 Master Agreements: "The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees have been and will continue to be lifetime benefits." *See* Pltfs.' Mem., App. A (attaching exhibits). Even under the Seventh Circuit framework, Defendants "overargue[] [their] case" because "the 'lifetime' language . . . vititate[s] the presumption against vesting." *Bland v. Fiatallis North America, Inc.*, 401 F.3d 779, 785 (7th Cir. 2005) (reversing grant of summary judgment for employer where documents contained "lifetime" language); *see also United Mine Workers v. Brushy Creek Coal Co.*, _F.3d_, 2007 U.S. App. LEXIS 24355, 2007 WL 3023979, at *1 (7th Cir. Oct. 18, 2007) (finding that defendant "overargues its case" and "no presumption [against vesting] is warranted" because CBA stated that employees were entitled to health benefits "for life").

All of the cases on which Defendants rely, Defs.' Opp. at 11-12, reinforce the conclusion that where, as here, the contracts contain "lifetime" language and do *not* unambiguously reserve Mack's right to alter or amend the contracts at any time, a durational clause does not defeat vesting.

*Auburn Gear* supports Plaintiffs' position because the Master Agreement grants lifetime benefits. By contrast, none of the language in *Auburn Gear* referred to healthcare benefits as "lifetime benefits." 441 F.3d at 479-80 (describing language of contract).

The Third Circuit in *In re Unisys* held that benefits were not vested because the governing documents contained reservation of rights clauses empowering the company to "terminate the plan 'at any time' and 'for any . . . reason.'" *Id.* at 903; *see also id.* at 904. *In re Unisys* highlights Defendants' mischaracterization of the durational clause in this case as a "reservation of rights clause." The durational clause imposes an obligation on Mack to maintain benefits during the life of the Master Agreement. Defs.' Opp. at 3. It nowhere grants Mack the right to terminate benefits at any time or for any reason.

The documents in *Barnett v. Ameren Corp.*, 436 F.3d 830 (7th Cir. 2006), contained a reservation of rights clause, but lacked any "lifetime" language. *Id.* at 832 (describing relevant

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

6

language).[4] The documents further memorialized the company's view that it had the right to amend or terminate benefits. *Id.* In this case, there is lifetime language and no reservation of rights clause. Nor do the contracts memorialize Mack's view that it has the right to amend or terminate benefits. On the contrary, Mack "fully recognizes, acknowledges and hereby confirms" that benefits "have been and will continue to be lifetime." *See* Letters attached to Pltfs.' Mem., App. A.

The contracts in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Skinner*, 188 F.3d 130 (3d Cir. 1999), provided that retiree healthcare benefits "will continue," but did not specify the period during which they would continue. *Id.* at 141. Contrary to Defendants' representation, *Skinner* did not involve a contract with lifetime language. Defs.' Opp. at 11:5. *Skinner* held that continuation of coverage clauses by themselves did not establish vested rights *because* the agreements lacked any "lifetime" language. 188 F.3d at 141 ("CBAs do not state that retiree benefits 'will continue for the life of the retiree.'"). The contracts here contain the critical "lifetime" language that the *Skinner* contracts lacked.[5]

In *Brushy Creek*, the Seventh Circuit relied on the fact that the "health plan itself entitl[ed] the coal company to terminate or alter the plan at any time." 2007 WL 3023979, at *2. *Brushy Creek* further concluded that the reservation of rights in the health plan superseded any statements indicating that health benefits were to be provided "for life" because the lifetime language was not set forth "in the health plan itself." *Id*. Here, the lifetime language is contained *both* in the Master Agreement and also in Appendix B, which is "the health plan itself." *See* Pltfs.' Mem. at 14 (citing exhibits). More to the point, no language in the Master Agreement or Appendix B "entitl[es] [defendants] to terminate or alter the plan at any time." *Brushy Creek*, 2007 WL 3023979, at *2.

Nor does *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326 (9th Cir. 1996) support

---

[4] The reservation of rights clause in *Barnett* authorized the company to modify benefits even during the life of the agreement. *Id.* at 832 ("'take such action as may be necessary to *modify* and to continue for the life of the Labor Agreement' health-care benefits" for retirees) (emphasis added). The durational clause in this case prohibits Mack from doing so.

[5] Moreover, numerous courts, contrary to *Skinner*, have relied on virtually identical continuation of coverage language to find in favor of retirees. *See* Pltfs.' Mem. at 15.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

7

Defendants' position. The agreement in that case contained a reservation of rights clause and "lifetime" language did not appear in any controlling plan document. *Id.* at 1330-31.

Defendants also cite *Jensen* and *Angotti*, but both of these cases support Plaintiffs. In *Jensen,* the Eighth Circuit affirmed judgment for retirees notwithstanding the existence of a broad reservation of rights clause. 38 F.3d at 948, 950. And, as discussed above, *Angotti* issued a preliminary injunction in favor of retirees where, as here, the contracts contained lifetime language, but lacked a reservation of rights clause. 2006 WL 1646135, at *9, *11. Notably, *Angotti* rejected the Defendants' argument that a durational clause defeats a claim of vesting. *Id.* at *11.

In short, Defendants' cases underscore the strength of Plaintiffs' claims. *Auburn Gear*, *Skinner*, and *Barnett* did not contain any lifetime language. *In re Unisys* and *Barnett* each contained a reservation of rights clause. *Brushy Creek* and *Pisciotta* each had a reservation of rights clause and lifetime language failed to appear in controlling documents. These cases confirm that where, as here, controlling documents *do* contain lifetime language, but *lack* a clause reserving the company's right to terminate or reduce benefits at any time, a durational clause does not defeat vesting. Indeed, *Jensen* held benefits to be vested despite a reservation of rights clause, while *Angotti* issued a preliminary injunction in favor of retirees under the identical circumstances present in this case.

For the reasons set forth in Plaintiffs' opening brief, Plaintiffs' right to healthcare benefits is vested. Pltfs.' Mem. at 13-17.[6] Even under the Seventh Circuit framework, Plaintiffs would be "entitled . . . to a judgment in [their] favor" because "the agreement expressly grants [lifetime] benefits." *Cherry*, 441 F.3d at 482. At a very minimum, they have a sufficient likelihood of success on the merits to obtain a preliminary injunction based on the "lifetime" language, and absence of a "reservation of rights" clause. *See Bland*, 401 F.3d at 788 (reversing summary judgment for company in light of "lifetime" language and absence of "reservation of rights clause"); *Angotti*, 2006 WL 1646135, at *11, *13 (finding plaintiffs "likely to succeed on the merits" and issuing preliminary injunction where contract was "susceptible to two alternative explanations").

---

[6]Defendants discuss the lifetime language, but entirely fail to address the additional arguments raised in Plaintiffs' opening brief. *See* Pltfs.' Mem. at 15-17.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

8

**C.    Defendants' Remaining Arguments Are Unavailing.**

Defendants raise a number of other arguments that are equally unavailing.

1.    Defendants assert that the UAW previously negotiated over changes in retiree benefits, and that such negotiations prove that the UAW knew benefits were not vested. *See* Defs.' Mem. at 12-13. The bargaining history discussed by Defendants shows only that the UAW and Mack have negotiated over the *mechanism* by which Mack would pay for retiree healthcare; Defendants do not point to a single instance in which Mack and the union agreed to *reductions* in the actual *benefits* received by retirees. The bargaining history actually confirms that benefits are vested. *See* Pltfs.' Mem. at 5-8, 14-15. That history further shows that when the union and Mack actually agreed to alter retiree *benefits* (rather than the accounting or funding mechanism related to those benefits), those changes were purely *prospective*, applying only to retirees who had not retired at the time the contract was executed.[7] *See Jensen,* 38 F.3d at 951 (evidence that changes in retiree benefits "were prospective only" supported conclusion that benefits were vested). Even if the union had agreed to reduce retiree benefits, any such agreement would be ineffective without the retirees' consent. *Allied Chem. & Alkalai Workers of Am. v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 181 n.20 (1971) ("Vested retirement rights may not be altered without the pensioner's consent."); *Bower*, 725 F.2d at 1223 (same).

2.    Defendants argue that benefits are not vested for pre-1992 retirees because the "lifetime" language was not introduced until the 1992 Master Agreement. Defs.' Opp. at 9-10. The lifetime language, however, provides: "The Company fully recognizes, acknowledges and hereby confirms that retiree health care benefits for Mack-UAW employees *have been* and will continue to be lifetime benefits." Letter #7 to 1992 Appendix B (attached as Pltfs.' Mem. App. A) (emphasis added). The parties memorialized their intent that benefits were already vested at the time they

---

[7]*See* Jones Decl. at ¶4; Bressler Decl ISO TRO & PI (Doc. 7), Exh. I (2004 App. B, Art. III, Sec. (m) at B39) (coverage modifications, in contract executed in October 2004, applied only to those who retire *after* December 1, 2004); *id.* (2004 App. B, Art. III, Sec 4(b)(6)(a) at B51) (same); *id.* (2004 App. B., Art. III, Sec. 4, Exh. A at B53) (same); *id.* (2004 App. B., Art. III, Sec. 5 at B53-54) (same).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

9

added this language in 1992. In addition, as documented in statements issued by Mack from at least 1987 until as recently as October 2007, Mack itself described healthcare coverage, including for pre-1992 retirees, as a benefit that is "COMPANY PAID FOR LIFE." Bressler Decl. at ¶8 & Exh. F.

To the extent Defendants argue (incorrectly) that negotiations between the union and Mack in the 1992 and subsequent contracts prevented vesting, such changes would only apply to employees retiring *after* 1992. Defendants nowhere explain how such negotiations could un-vest rights Mack acknowledged before, during, and after 1992 to be previously vested.

Defendants' argument that pre-1992 retirees lack vested rights thus rests on the durational clause. Defs.' Opp. at 9-10. But, the durational clause in pre-1992 contracts cannot defeat vesting because the parties used the same durational language in connection with undisputedly vested pension rights. The "lifetime" language in 1992 affirmed that retiree healthcare benefits had always been "lifetime benefits," and none of the contracts contain a reservation of rights clause.

3.      Defendants also point to a 1992 UAW newsletter describing the 1992 Master Agreement as insulating retirees and surviving spouses from cost sharing during the agreement's term. Defs.' Opp. at 13. This extrinsic statement adds nothing to Defendants' argument that the durational clause precludes vesting. An extrinsic statement that Mack is obliged to provide the benefits set forth in the agreement during its term does not defeat vesting where, as here, the contract includes "lifetime" language, lacks a reservation of rights clause, and parallel durational language is used in connection with both the pension and health insurance.[8]

---

[8] Plaintiffs object to the introduction of the newsletter and the other two exhibits to the declaration of Defendants' counsel, John Kloosterman (Kloosterman Decl. (Doc. 28), Exhs A-C.), because Defendants have not laid the foundation for their introduction. Mr. Kloosterman conclusorily asserts that the documents are maintained in the normal course of his firm's business but failed to lay the foundation that the 15 year-old UAW newsletter, the 14 year-old agreement between the UAW and Mack, and the letter issued by Mack to retirees in August 2007, attached as exhibits to his declaration, were "kept in the course" of his regular practice in San Francisco – and not merely received after his firm was retained to represent Defendants in this litigation. Fed. R. Evid. 803(6) (to be admissible under business records exception, record must have been "kept in the course of a regularly conducted business activity"). Should the Court allow introduction of the newsletter, however, it further demonstrates the parties' intent in 1992 that health care for retirees had been and would remain "a lifetime benefit." Kloosterman Decl., Exh. A at 8.

**D.     Extrinsic evidence reinforces the conclusion that benefits are vested.**

Defendants seek to introduce extrinsic evidence, but such evidence supports Plaintiffs.[9] The bargaining history of the Master Agreement shows that Mack and the UAW understood that retiree benefits were vested and could not be reduced for individuals who had already retired.

In the 2004 negotiations, Mack initially proposed to reduce healthcare benefits for existing retirees, but quickly retreated on this proposal. Jones Decl. at ¶3. By seeking to reduce benefits now, Defendants are impermissibly attempting to secure what Mack failed to obtain at negotiations. *Cf. Barnett*, 436 F.3d at 834 (party cannot obtain "through litigation [what] it was unsuccessful in obtaining during negotiations"). In those same negotiations, Mack and the UAW agreed to some changes in retiree health benefits, but they were purely *prospective* – thus confirming the view that benefits for existing retirees were vested. *See Jensen,* 38 F.3d at 951; *supra* note 7. In discussing these prospective changes, the union stated "that individuals who had already retired went out with the expectation and understanding that the benefits they had at the time of retirement was what they would receive for the rest of their lives and therefore could not be changed." Jones Decl. at ¶4. The company confirmed its shared view that benefits for existing retirees could not be changed when Mack negotiator John Widman responded: "Touché." *Id.*

Further, the parties had extensive discussions in the 2004 negotiations over the amount of the company's contributions to the VEBA trust. As a union participant in those negotiations explains: "The reason why the parties spent so much time on the funding of the VEBA was because both sides understood that Mack had an independent legal obligation under the Master Agreement to

---

Plaintiffs further object to paragraphs 2 through 8 of the Declaration of Joseph Huxta (Doc. 27). Although the declaration makes the conclusory assertion that Mr. Huxta has personal knowledge of the statements contained therein, there is no explanation of Mr. Huxta's job duties as "Manager – Health Care Strategy of Mack Trucks, Inc. and other affiliated entities," or the length of time during which he has held this position, such that he would have personal knowledge regarding Mack's current collective bargaining relationship with the UAW, let alone events that occurred as long ago as 1992 or 1993.

[9]*See, e.g., Angotti*, 2006 WL 1646135, at * 8 (court may consult extrinsic evidence to resolve ambiguity); *see also Brushy Creek*, _F.3d _, 2007 WL 3023979, at *3 (extrinsic evidence may be consulted to show contract has latent ambiguity).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

11

provide lifetime retiree healthcare benefits." Evans Decl. at ¶3.

In addition, from at least 1987 and as recently as October 2007, Mack itself has stated to surviving spouses that their health insurance coverage is "COMPANY PAID FOR LIFE." Bressler Decl. at ¶ 8 & Exh. F. This includes statements issued to surviving spouses of pre-1992 retirees. *Id.*

## II.   The Balance Of Harms Overwhelmingly Favors Enjoining Any Changes To Plaintiffs' Medical Coverage Pending a Hearing On The Merits.

Defendants do not, and cannot, dispute that their threatened reductions to Plaintiffs' medical coverage constitutes irreparable harm.[10] Instead, Defendants make the absurd argument that Plaintiffs' harm is not irreparable simply because Defendants do not intend to implement reductions until five months from now, on April 1, 2008. Such a concrete threat of injury more than suffices to show irreparable harm. In addition, Plaintiffs' harm is representative of other class members', and the balance of harms and public interest weigh overwhelmingly in their favor.

1.     Defendants concede that they intend to implement major reductions to Plaintiffs' medical coverage on April 1, 2008, just five months from the hearing on Plaintiffs' preliminary injunction motion. The median time from filing to trial for civil actions filed in this judicial district is 25.0 months.[11] Plaintiffs' injury is all but guaranteed, absent a preliminary injunction.

"The basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court,* 840 F.2d 701, 704 (9th Cir. 1988). That being so, Plaintiffs need only show "the possibility of irreparable injury . . . if

---

[10] *See Wood v. Detroit Diesel Corp.*, 2005 WL 3579169, at *7 (E.D. Mich. Dec. 30, 2005) ("[R]equiring [retiree] Plaintiffs to pay premiums or deductibles is an irreparable harm."), *attached* to Pltfs.' Req. for Jud. Notice, *filed herewith*; *Cole v. ArvinMeritor, Inc.*, 2005 U.S. Dist. LEXIS 38235, 2005 WL 3502182, at *25 (E.D. Mich. Dec. 22, 2005) ("'[R]eductions in retiree insurance coverage constitute irreparable harm.'" (quoting *Golden v. Kelsey-Hayes Co.*, 845 F. Supp. at 415)); *Risteen v. Youth For Understanding, Inc.*, 245 F. Supp. 2d 1, 16 (D.D.C. 2002) ("The loss of health insurance benefits—particularly for those who are unemployed—constitutes irreparable harm."); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 680 (E.D. Mich. 1995) (imposition of new co-payments and deductibles threatened irreparable injury to retiree plaintiffs); *Cabral v. Olsten Corp.*, 843 F. Supp. 701, 704 (M.D. Fla. 1994) ("[T]he threat of termination of medical benefits constitutes irreparable harm which is not compensable with monetary remedies."); *see also* Pltfs.' Mem. at 1, 19-21.

[11] http://www.uscourts.gov/cgi-bin/cmsd2006.pl.

1  preliminary relief is not granted." *Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430
2  (9th Cir. 1995) (internal quotation marks omitted).  Plaintiffs have shown far more than a mere
3  "possibility" because the injury – absent a preliminary injunction – is certain to occur on April 1,
4  2008.  "[T]here is nothing speculative or hypothetical – or even particularly remote – about the
5  harms Plaintiffs will suffer" when the threatened injury is "certain[]" to take effect on a specified
6  date and the "litigation will not [likely] be concluded before then." *City of Los Angeles v. County of*
7  *Kern*, 462 F. Supp. 2d. 1105, 1119 n.4 (C.D. Cal. 2006); *see also* William W. Schwarzer, et al.,
8  *California Practice Guide: Federal Civil Procedure Before Trial* § 13:55.3 ("the fact the threatened
9  harm will not occur for several months is not reason, by itself, to deny a preliminary injunction.").

10  That the harm will occur a mere five months from now in no way undercuts irreparability.
11  Courts routinely issue preliminary injunctions to prevent harm slated to occur months or even years
12  away. *See, e.g., Harris*, 366 F.3d at 757-758, 766 (cutbacks in funding of healthcare facilities slated
13  to occur over two-year period); *Rodde*, 357 F.3d at 994 (planned hospital closure in five months).

14  Defendants accuse Plaintiffs of prematurely rushing to court when instead they appropriately
15  took prompt action to protect their rights.  Indeed, if Plaintiffs had waited until closer to April 1,
16  2008, before seeking a preliminary injunction, Defendants would surely argue that they had slept on
17  their rights. *See, e.g., Oakland Tribune,* 762 F.2d at 1377 (Plaintiff failed to establish irreparable
18  injury where, *inter alia,* "Plaintiff's long delay before seeking a preliminary injunction implies a lack
19  of urgency and irreparable harm.").  And although Defendants now assert that they consistently took
20  the position that they would not implement any changes prior to April 2008, Defs.' Opp. at 1, the
21  complaint Mack filed in federal court in Pennsylvania on September 7, 2007 sought to establish
22  Mack's alleged right to reduce Plaintiffs' benefits as early as October 1, 2007. *See* Defs.' Req. for
23  Jud. Notice (Doc. 24), Exh. A at p. 9 (seeking declaratory judgment that "Mack owes *no legal duty*
24  to the Unions or the defendant Class *to continue* the Mack-UAW Retiree Medical Program
25  described in the 2004 Master Agreement *after October 1, 2007*") (emphases added).

26  In any event, Plaintiffs have shown not only a concrete threat of future irreparable injury, but
27  also present irreparable harm.  Mr. Ortega is under "a great deal of stress" over the thought of
28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, Case No. C-07-4830 VRW

13

having to pay for health coverage should Defendants' threatened changes take place, and household budgeting is already causing anxiety. Ortega Decl. ISO TRO & PI (Doc. 9) at ¶ 13. Facing the choice between medical care and life's necessities "imposes an emotional burden" on Mr. Evitt. R. Evitt Decl. ISO TRO & PI (Doc. 8) at ¶ 10. Mrs. Evitt is "frustrated and sacred" at the thought of losing the health care coverage on which she and her husband depend. L. Evitt Decl. ISO TRO & PI (Doc. 18) at ¶ 7. As courts have recognized, "[a]lteration and elimination of retiree health benefits causes retirees and dependents health risk, uncertainty, [and] anxiety," in addition to financial hardship. *Cole*, 2005 WL 3502182, at *25.[12]

2. From Plaintiffs' particularized showing of irreparable harm, *see* Docs. 7-10 & 18, the Court "can reasonably infer that the harms faced by [Plaintiffs] are representative of prospective class members generally." *Angottti*, 2006 WL 1646135, at *16. The undisputed fact that Plaintiffs and class members are all Mack retirees and surviving spouses of Mack retirees establishes an ample foundation for concluding "that the declarants are representative in terms of age and income level." *Angotti*, 2006 WL 1646135, at *16; *see also LaForest v. Former Clean Air Holding Co., Inc.*, 376 F.3d 48, 58 (2d Cir. 2004) (where all class members are retirees of same employer, or surviving spouses, foundation laid that individuals providing irreparable harm declarations are representative of class);,*Helwig v. Kelsey-Hayes, Co.*, 857 F. Supp. 1168 1179-80 (E.D. Mich. 1994) (inferring class-wide irreparable harm where many putative class members were retired secretarial or clerical workers and even though some class members were high-level executives). Plaintiffs survive on limited monthly incomes. *See* Ortega Decl. (Doc. 9) at ¶5; R. Evitt Decl. (Doc. 8) at ¶ 5. The Court can "reasonably infer" that class members – who, like Plaintiffs are retirees or their spouses – also have fixed budgets and will suffer at least "some increased financial anxiety"

---

[12]*See also LaForest v. Honeywell Int'l, Inc.*, 2003 WL 23180220 (W.D.N.Y. Sept. 19, 2003), *aff'd by* 376 F.3d 48 (reductions in medical coverage causing, *inter alia*, "anxiety associated with uncertainty" established irreparable harm), *attached* to Pltfs.' Req. for Jud. Notice, *filed herewith*; *United Steelworkers of Am. v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (recognizing as irreparable harm retirees' "emotional distress" and "concern about financial disaster" due to threatened termination of medical coverage); *Chalk v. Teledyne, Inc.*, 751 F. Supp. 1261, 1268 (W.D. Mich. 1999) (recognizing injury of "uncertainty posed by lack of knowing just how much money will be needed to cover medical expenses").

over the threatened reductions to their medical coverage. *Angotti*, 2006 WL 1646135, at *16. Indeed, "[c]ommon sense suggests" that "most retired union members are not rich, . . . live on fixed incomes, . . . will get sick and need medical care," and that record evidence regarding harm to identified individuals is therefore "illustrative of what could occur among all retirees." *Textron*, 836 F.2d at 8 (affirming preliminary injunction for retirees). To be sure, neither Defendants nor Plaintiffs "can be certain which class members may encounter increased medical needs during the course of the litigation, but this is another factor supporting the Plaintiffs' motion for preliminary relief." *Angotti*, 2006 WL 1646135, at *16.[13]

       3.     Defendants have not even attempted to show "severe financial hardship" that would tilt the balance of harms in their favor. *Helwig*, 857 F. Supp. at 1180; *see also Angotti*, 2006 WL 1646135, at *16 (balance of harms weighed in favor of retirees when defendant "show[ed] no hardship other than . . . economic costs . . . of continued coverage"); *Hinkley v. Kelsey-Hayes Co.*, 866 F. Supp. 1034, 1045 (E.D. Mich. 1994) ("defendant has made no showing that requiring it to reinstate the old retiree benefit plan would cause it severe financial hardship."). And the public interest strongly favors a preliminary injunction. *See id.* ("ERISA and the LMRA strongly favor the protection of the rights of employees guaranteed by welfare benefit plans that are part of collective bargaining agreements."); *Chalk*, 751 F. Supp. at 1268 ("[The] public interest lies in protecting the legitimate expectations of retirees that their health insurance will be provided for the rest of their lives."); *Angotti*, 2006 WL 1646135, at *17 ("There is a public interest in the continued provision of welfare benefits guaranteed by CBAs and ERISA.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.

---

[13] Defendants nowhere explain why Plaintiffs' California residence is relevant to whether their certain injury is sufficiently representative. *Cf.* Defs.' Opp. at 13. Moreover, the date on which Plaintiffs retired is not relevant to the representativeness inquiry because Defendants seek to reduce benefits for *all* retirees, regardless of when they retired. Mr. Evitt, in any event, retired in 1993 and Defendants have failed to cite any evidence to the contrary. R. Evitt Decl. at ¶4 (Doc. 18).

| | | |
|---|---|---|
| Dated: October 25, 2007 | | Respectfully submitted, |
| | | FRED H. ALTSHULER<br>LINDA LYE<br>JAMIE L. CROOK<br>Altshuler Berzon LLP |
| | By: | /s/ Linda Lye<br>Linda Lye |
| | | Attorneys for Plaintiffs |