# EXHIBIT A



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3579169 (E.D.Mich.), 36 Employee Benefits Cas. 2762
**(Cite as: 2005 WL 3579169 (E.D.Mich.))**

Page 1

United States District Court,
E.D. Michigan, Southern Division.
Daniel WOOD, Ronald Goins, and Priscilla Sue
Street, on behalf of themselves
and a similarly situated class, Plaintiffs,
v.
DETROIT DIESEL CORPORATION, Defendant,
**No. 05-74106.**

Dec. 30, 2005.

Andrew A. Nickelhoff, Sachs Waldman, Detroit, MI.

Thomas G. Kienbaum, Theodore R. Opperwall, William B. Forrest, Kienbaum, Opperwall, Birmingham, MI, for Defendant.

*ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION*

HOOD, J.

I. INTRODUCTION

*1 This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction, filed on November 15, 2005. Defendant filed a Motion for Leave to File Response in Opposition to Plaintiffs' Motion for Preliminary Injunction Exceeding the Page Limits of LR 7.1(c)(3) on December 7, 2005. On December 9, 2005, Defendant filed a Response to the current motion. Plaintiffs filed a Reply in Support of Motion for Preliminary Injunction on December 12, 2005. The Court heard oral arguments on December 14, 2005.

II. STATEMENT OF FACTS

The retiree Plaintiffs and members of the proposed Plaintiff class were hourly production, maintenance, and skilled trades employees at the engine production plant in Detroit, Michigan operated by Defendant Detroit Diesel Corporation [hereinafter "Detroit Diesel"]. Plaintiffs were represented in collective bargaining by the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America and its Local 163 [hereinafter "UAW"]. UAW is the exclusive bargaining representative for hourly production and maintenance employees at Detroit Diesel's manufacturing plant.

Detroit Diesel and the UAW entered into a series of Collective Bargaining Agreements [hereinafter "CBA"] comprised of: (1) Master Agreements, (2) Supplemental Agreements, and (3) Memoranda of Understanding. The CBAs that are at issue in this matter are the 1990 Agreement, 1994 Agreement, and 1998 Agreement.

In the early 1990s, the Financial Accounting Standards Board adopted FAS 106 ("Financial Accounting Standard") which required corporations to reflect the present value of estimated future costs for retirees medical benefits on their balance sheets. In 1992, Detroit Diesel and the UAW began discussing the impact of FAS 106 on Detroit Diesel's financial position. As a result of the discussion and negotiations, Detroit Diesel and the UAW entered into a Memorandum of Understanding [hereinafter "MOU"] on Retiree Health Care Benefits dated January 7, 1993. Under the MOU, a contribution limit was established at 110% of the prior year's health costs. The MOU also provided for the establishment of a source of alternative funding of retiree benefits through a Voluntary Employee Benefit Association [hereinafter "VEBA"], and established an initial funding amount. A similar contribution limit was established in 1994, along with an amount that would be used to fund VEBA. In the subsequent periods, 1995 through 1998, Detroit Diesel and the UAW were able to establish amenable contribution limits and VEBA funding levels. In 1998, the funding for VEBA was adjusted in that Detroit Diesel made no independent contribution to VEBA.

Although Detroit Diesel and UAW reached a new agreement in November 2004, effective through 2010, they were not able to agree on additional funding for VEBA, or to extend the MOU. The 2004 Agreement apparently has no language limiting Detroit Diesel's contribution to retiree medical benefits. [FN1] About August 17, 2005, Detroit

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 3579169 (E.D.Mich.), 36 Employee Benefits Cas. 2762
**(Cite as: 2005 WL 3579169 (E.D.Mich.))**

Diesel informed Plaintiffs that beginning on January 1, 2006, they would be required to make co-payments in order to continue their medical insurance.

> FN1. The proposed 2004 Agreement was not attached to the parties' briefs and has not been executed.

III. APPLICABLE LAW & ANALYSIS

*2 Four factors must be considered and balanced before the Court may issue a preliminary injunction pursuant to Fed.R.Civ.P. 65(b): (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and (4) whether the injunction would serve the public interest. *In re Delorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.1985); In re Eagle-Pitcher Industries, Inc., 963 F.2d 855, 858 (6th Cir.1992); and N.A.A.C.P. v. City of Mansfield, Ohio, 866 F.2d 162, 166 (6th Cir.1989).* "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co., 73 F.3d 648, 653 (6th Cir.1996).*

A. Likelihood of Success on the Merits

In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak, 243 Mich.App. 57, 63-64, 620 N.W.2d 663 (2000).* The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id.* If the intent is clear from the language of the contract itself, there is no place for further consideration or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel, 460 Mich. 558, 566, 596 N.W.2d 915 (1999).* A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary and popular sense." *Michigan Mut. Ins. Co. v. Dowell, 204 Mich.App. 81, 514 N.W.2d 185 (1994).* Unambiguous contract provisions are not subject to interpretation and must be enforced as written. *Id.*

A contract may be considered ambiguous when terms are factually inconsistent or the phraseology can suggest different meanings or obligations to be undertaken. *Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Dist., 452 Mich. 309, 323, 550 N.W.2d 228 (1996).* Contract provisions are considered ambiguous when the "terms are reasonably and fairly susceptible to multiple understandings and meanings." *Equitable Life Assurance Soc'y v. Poe, 143 F.3d 1013, 1016 (6th Cir.1998) (citing Michigan Mut. Ins. Co., 204 Mich.App. at 81, 514 N.W.2d 185).* The initial determination of whether the contract language is ambiguous is a question of law for the court to decide. *Rainbow Nails Enterprises, Inc. v. Maybelline, Inc., 93 F.Supp.2d 808, 820 (E.D.Mich.2000) (citing Port Huron Educ. Ass'n, 452 Mich. at 323, 550 N.W.2d 228).* Once the court determines that the contract is ambiguous, it is subject to further construction or interpretation. "It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 469, 663 N.W.2d 447 (2003).* "In resolving such a question of fact, i.e., the interpretation of a contract whose language is ambiguous, the jury is to consider relevant extrinsic evidence." *Id.* "Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule." *Id. at 470, 663 N.W.2d 447.* Parol evidence bars language which adds to or detracts from the writing, but not evidence which merely ascertains the meaning of what the parties intended. *Id.* Ambiguity in a contract is resolved against the party who prepared it. *Lichnovsky v. Ziebart Int'l Corp., 414 Mich. 558, 566 (1999).*

*3 Plaintiffs contend that there is a strong likelihood of success on the merits of this case, claiming that the contract language of the 1990, 1994, and 1998 CBAs indicated that benefits promised to the Plaintiffs and members of the proposed Plaintiff class were vested lifetime benefits, and that Detroit Diesel would pay for these benefits. Plaintiffs assert that the language utilized in the three CBAs is analogous to the language used in *Golden and McCoy v. Meridian Automotive Systems, Inc.,* No. 03-74613, (E.D.Mich. Feb. 17, 2004), *aff'd, 390 F.3d 417 (6th Cir.2004).* In both of these cases, the court granted preliminary injunctions to the plaintiffs in instances where there was a dispute as to the interpretation of contract language in regards to medical insurance for a class of UAW retirees and whether the contracts promised to provide health benefits at no cost. Specifically, Plaintiffs contend that the contribution limit that is contained in the MOU, subsequent to FAS 106, did not relieve Detroit Diesel of its obligation to provide lifetime benefits at no cost. Plaintiffs assert that the contribution limit contained in the MOU was never intended to "cap" the amount that Detroit Diesel was required to contribute to Plaintiffs and members of the proposed Plaintiff class and indicate that this

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                  Page 3
Not Reported in F.Supp.2d, 2005 WL 3579169 (E.D.Mich.), 36 Employee Benefits Cas. 2762
**(Cite as: 2005 WL 3579169 (E.D.Mich.))**

assertion is demonstrated in the MOU by the provision of alternative funding of retiree benefits through VEBA.

Defendant asserts that while the employees have lifetime health benefits, Defendant's contribution has been limited by a "cap" agreement between Defendant and the UAW. Detroit Diesel states that the CBAs speak for themselves, are clear and unambiguous, and that they include language which states that the healthcare programs are limited to the duration of the Master Agreements. Defendant contends that in 1992-1993 time frame, Detroit Diesel and the UAW agreed to a contribution limit, "cap" on Detroit Diesel's obligation to pay for those who retired after January 7, 1993. Detroit Diesel indicates that VEBA was a tool by which Defendant and the UAW agreed to address "excess premiums." Defendant contends that Plaintiffs reliance on *Golden* and *McCoy* is misplaced because these cases did not involve a situation where the employer and the union collectively bargained for a specific and unambiguous cap limiting retiree health benefits.

The documents giving rise to the lifetime health benefits are the Supplemental Agreements covering the Health Care Program to the October 1, 1990, August 26, 1994, and September 28, 1998 Master Agreements between the United Automobile Workers ("UAW") Local 163 and Detroit Diesel Corporation. Article III, Section 6 of each agreement has identical language providing health care benefits for retirees. The agreements read:
> Section 6. Continuation of Coverages Upon Retirement or Termination of Employment at Age 65 or Older
> (a) The health care coverages an employee has at the time of retirement or termination of employment at age 65 or older (for any reason other than a discharge for cause) with insufficient credited service to entitle the employee to a benefit under Article II of the Detroit Diesel Hourly-Rate Employees Pension Plan *shall be continued.*
> \*4 (b) An employee who upon retirement is not enrolled for the coverages as provided in subsection (a) above may enroll for health care coverages to which entitled at the time of or subsequent to retirement. Such coverage shall become effective on the first of the month following receipt of application from such retired employee. © *The Corporation shall make contributions,* in accordance with Program provisions, *for health care coverages continued in accordance with subsections (a) and (b)* above for:
> (1) a retired employee (including any eligible

dependents other than sponsored dependents), provided such retired employee is eligible for benefits under Article II of The Detroit Diesel Hourly-Rate Employees Pension Plan; and
> (2) an employee (including any eligible dependents other than sponsored dependents) terminating at age 65 or older (for any reason other than a discharge for cause) with insufficient credited service to be entitled to a benefit under Article II of The Detroit Diesel Hourly-Rate Employees Pension Plan.

(Def.'s Resp., Ex. 2,4, and 5) (emphasis added).

The "Cap" Agreement, which limits Defendant's contribution of retiree health benefit premiums states:
> The parties agree to limit DDC's contribution toward retiree health benefit premiums. The 1993 contribution limit will be 110% of 1992 cost per average hourly employee. The 1994 contribution limit will be 110% of the 1993 limit or 110% of the 1993 cost per average hourly employee, whichever is greater. These limits are for retirees under the age of 65. Post age 65 contribution limits are 50% of the pre-65 amounts.
> *The above contribution limit is the maximum amount that DDC will pay per year for health care premium values for each eligible retiree.*

(Def.'s Resp. Ex. 11) (emphasis added). The "Cap" Agreement also provides:
> The undersigned parties have agreed to establish a trust qualified as a Voluntary Employee Benefit Association (VEBA) for the purpose of allowing DDC to pay for benefits other than pensions on a tax-advantaged basis. *Benefits to be paid out of the Trust will be governed by* the IRS Code and *specific collective bargaining agreements between DDC and the UAW.*

*Id.* (emphasis added). The "Cap" Agreement further read:
> The parties will utilize this VEBA Trust to *automatically pay any premiums in excess of the contribution limit for retiree health care costs* and such other benefits as may be allowed under VEBA regulations and agreed to by the parties.

*Id.* (emphasis added).

Article IV of the Defendant's Retiree Health Care Premium Payment Plan governs the funding for which Defendant is responsible, for the 1990 Master Agreement between the UAW and the Defendant. The Plan reads:
> 4.1 *Funding.* Contributions shall be made by the Company and the Joint Training Fund in the following amounts for the following Plan Years:

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3579169 (E.D.Mich.), 36 Employee Benefits Cas. 2762
(Cite as: 2005 WL 3579169 (E.D.Mich.))

| Plan Year | Company Contribution | Joint Training Fund Contribution |
|-----------|----------------------|----------------------------------|
| 1993 | $200,000 | $100,000 |
| 1994 | 100,000 | 100,000 |

*5 *Contributions for years after 1994 shall be made in amounts agreed upon through collective bargaining by the Company and the Union.*

(Def.'s Resp. Ex. 14) (emphasis added). Two additional agreements provide for the Defendant's contribution toward retiree health care for the 1994 and 1998 Master Agreements between the UAW Local 163 and the Defendant. The agreement regarding Defendant's contribution in the 1994 Master Agreement states:
MEMORANDUM OF UNDERSTANDING FAS 106/VEBA TRUST The current limit of DDC's contribution toward post-retirement Health Care, of $7,381, will remain at that amount during the life of the 1994 DDC/UAW Master Agreement.
Contributions into the DDC VEBA Trust will be made for years 1995, 1996, 1997, 1998 ...
(Def.'s Resp. Ex. 16). The agreement addressing Defendant's contribution under the 1998 Master Agreement provides:
As an outcome of changes made during the 1998 negotiations in two (2) specific areas; the hourly profit sharing plan and the new hire defined contribution plan (401K), the parties agreed to modify the contribution made to the VEBA Trust as follows:
1. The current of DDC's contribution toward post-retirement healthcare for those employees hired prior to August 30, 1998 of $7,381 will remain at that amount during the life of the 1998 DDC/UAW Master Agreement.
2. Annual Contributions of $500,000 will be made up into the DDC VEBA Trust for the years 1999, 2000, 2001, 2002, 2003 and 2004 from the DDC/UAW Joint Training Fund account.
(Def.'s Resp. Ex. 17).

Article V of Defendant's Retiree Health Care Premium Payment Plan discusses the payment of health care premiums, providing:
The Company shall directly pay premiums under the Health Care Program on behalf of Participants in such amounts as are agreed upon between the Company and the Union. The Company and the Union shall determine the amount of premiums to be paid for each calender year, and the Committee shall advise the Trustee of the amount of such premiums paid (or to be paid) by the Company and of the amount of any Excess Premiums for such calender year. The Committee shall advise the

Trustee of the amount of the Excess Premium (if any) for the calendar year that is to be paid from the Trust on behalf of each Participant.

Nowhere in the 1990, 1994, or 1998 Master Agreements and Supplemental Agreements, the "Cap" Agreement, the VEBA Plan or Trust agreement does the language expressly state that any retiree would be required to pay to the Defendant or VEBA any costs associated with the health care premiums or deductibles. The 2004 CBA between the UAW and the Defendant does not apply to retirees under prior agreements, only to new retirees. Based on the agreements before the Court, it appears that the argument that the retirees are required to contribute to the cost of the health care premiums is not persuasive. The Court finds that there is a likelihood of success on the merits, based on the evidence before the Court.

B. Irreparable Injury

*6 Generally, an injunction may not issue if there is an adequate remedy at law. *Gilley v. United States,* 649 F.2d 449, 454 (6th Cir.1981). It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512.

Plaintiffs contend that if preliminary injunction is not issued in this case they will suffer irreparable harm by the reduction of medical benefits caused by the proposed premium co-pay. Plaintiffs provide several declarations from retirees documenting the potential irreparable harm they face. Defendant asserts that Plaintiffs will not suffer irreparable harm, as the retirees could join alternative plans, or be supported by Medicare if eligible for Social Security. Defendant notes that many Americans do not enjoy the benefits that the Plaintiffs currently have. Defendant further claims that, in order for a preliminary injunction to issue in a class setting the plaintiff must demonstrate irreparable harm with respect to virtually all the members of the group. Defendant supports this contention with the Third Circuit Court's decision in *Adams, et. al. v. Freedom Forge Corporation,* 204 F.3d 475, 487 (3rd Cir.2000) ("In short, in the absence of a foundation from which one could infer that all (or

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 3579169 (E.D.Mich.), 36 Employee Benefits Cas. 2762

**(Cite as: 2005 WL 3579169 (E.D.Mich.))**

virtually all) members of a group are irreparably harmed, we do not believe that a court can enter a mass preliminary injunction").

Neither the Sixth Circuit, nor the Supreme Court has decided whether irreparable harm, in a motion for preliminary injunction in a class setting, must be shown for virtually all members of the class involved. The Sixth Circuit has found irreparable harm in a similar circumstance where the plaintiffs would have to begin paying premiums and deductibles. *Golden v. Kelsey-Hayes Co., 845 F.Supp. 410, 415 (E.D.Mich.1994), aff'd 73 F.3d 648 (6th Cir.1996).* The *Golden* court listed the potential harms provided by the plaintiffs to show the existence of irreparable harm stating:

> If a preliminary injunction is not entered, plaintiffs allege that they will suffer irreparable harm because they will be forced to choose between paying for needed medical procedures and paying for basic necessities. Plaintiffs are retirees or surviving spouses of retirees who allegedly do not have the financial resources to begin paying premiums and deductibles on their heath care. Plaintiffs contend that they may be forced to forego needed medical care because they would have to absorb part of the cost of the care under defendant's modified benefits plan. In support of their allegations, plaintiffs have submitted numerous affidavits from individual retirees detailing the impact of the modifications for the benefits plan to their finances.

*Id.* The *Golden* court further relied upon the opinions of other courts providing that reduction of benefits and imposition of additional insurance costs on retirees constitutes irreparable harm because of the financial hardship on retirees on fixed incomes, emotional distress and possible deprivation of life necessities by reallocating scant resources to pay for much needed health care. *United Steelworkers of America v. Textron, Inc., 836 F.2d 6 (1st Cir.1987); Schalk v. Teledyne, Inc., 751 F.Supp. 1261 (W.D.Mich.1990), aff'd 948 F.2d 1290 (6th Cir.1991); Mamula v. Satralloy, Inc., 578 F.Supp. 563 (S.D.Ohio 1983).*

*\*7* Plaintiffs have shown that they will suffer irreparable injury other than monetary damages, if a preliminary injunction is not issued in this case. The Court finds that requiring Plaintiffs to pay premiums or deductibles is an irreparable harm, for the purposes of this preliminary injunction.

C. Harm to Others

This District held in *Golden:*

> The court finds that the harm to defendant of reinstating its former retiree health benefits would not outweigh

the harm suffered by plaintiffs. Several other courts have found similarly that the harm caused an employer that is required to maintain health benefits because of a preliminary injunction is outweighed by the harm caused to retirees forced to go without medical care or forced to choose between basic necessities in order to pay premiums and deductibles. [citations]

*Golden, 845 F.Supp. at 416.*

Plaintiffs contend that the injury to them would be devastating to the Plaintiffs' physical, emotional and financial well-being which would result from the imposition of premium co-payments, and that any harm which Detroit Diesel might claim would be minimal. Defendant Detroit Diesel contends that voiding the contribution limit would require them to recognize huge liabilities that would have a major adverse impact on its financial position. Detroit Diesel has not identified what the major adverse financial impact would be. The Court finds that the Defendant has not demonstrated that the injunction would cause substantial harm to others.

D. Public Interest

The public interest favors issuance of a preliminary injunction to protect the contractual and benefit rights of retirees. *Golden, 845 F.Supp. at 416.* "The public interest lies in protecting the legitimate expectations of retirees that their health insurance will be provided for the rest of their lives ..." *Schalk v. Teledyne Inc., 751 F.Supp. 1261, 1268 (W.D.Mich.1990).*

Plaintiffs have filed this action pursuant to Section 301 of the LMRA and Section 502(a)(1)(B) of ERISA. ERISA provides that the policy behind it is to "protect the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans ... by providing for appropriate remedies, sanctions, and ready access to the Federal Court." *Id. See also* 29 U.S.C. § 1001(b). This Court finds that the granting of a preliminary injunction is in the public interest.

V. CONCLUSION

Balancing the four factors that are to be weighed when determining whether a court should grant a preliminary injunction pursuant to Fed.R.Civ.P. 65(b), this Court finds that Plaintiff has satisfied the requirements and that a preliminary injunction is granted. Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction [Docket No. 2, filed November 15, 2005] is GRANTED.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2005 WL 3579169 (E.D.Mich.), 36 Employee Benefits Cas. 2762
**(Cite as: 2005 WL 3579169 (E.D.Mich.))**

IT IS FURTHER ORDERED that Defendant Detroit Diesel is restrained from requiring Plaintiffs Daniel Wood, Ronald Goins, Priscilla Sue Street, and the members of the proposed Plaintiff class to make premium co-payments for continuation of medical insurance benefits on or after January 1, 2006.

**\*8** IT IS FURTHER ORDERED that Defendant is restrained from requiring the Plaintiffs and the members of the proposed Plaintiff class to drop or change benefits plans or options in order to reduce the amount of the co-payment that they will be required to make.

IT IS FURTHER ORDERED that Defendant restore affected proposed Plaintiff class members to the benefit plans, elections, and options that were in place prior to the announcement of the benefit reduction during the pendency of this action or until further order of this Court.

Not Reported in F.Supp.2d, 2005 WL 3579169 (E.D.Mich.), 36 Employee Benefits Cas. 2762

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.