United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  ROBERT M EVITT, SR, JOEL ORTEGA         No   C 07-4830 VRW
    and LORETTA EVITT, on behalf of
12  themselves and a class of those              ORDER
    similarly situated,
13
            Plaintiffs,
14
            v
15
    MACK TRUCKS, INC, and MACK
16  HEALTH, DISABILITY, AND LIFE
    BENEFITS FOR UAW EMPLOYEES PLAN,
17
            Defendants.
18  _____/

19

20          Plaintiffs are retiree health care beneficiaries of Mack

21  Trucks, Inc ("Mack") who seek declaratory relief preventing

22  defendants from reducing their health care benefits in April 2008.

23  Doc ##5, 17.  Defendants move to dismiss, stay or transfer venue of

24  this case to the Eastern District of Pennsylvania where a similar

25  action is pending (Doc #20).  Plaintiffs oppose transfer and stay

26  and move for a preliminary injunction (Doc ##5, 17, 19).  The court

27  GRANTS defendants' motion and finds the motion for a preliminary

28  injunction moot under the circumstances.

**United States District Court**
For the Northern District of California

**I**

The following relevant facts are taken from plaintiffs' amended complaint.  Doc #17.  Plaintiffs Robert M Evitt, Sr and Joel Ortega worked for Mack at its facility in Hayward, California from 1966 until 1980.  Doc #17 at ¶¶13-14.  They are both retired with fixed incomes, and both receive health care under the plan provided by defendants.  Plaintiff Loretta Evitt is married to Robert Evitt, and she receives benefits under the plan as his dependent.  Doc #17 at ¶15.  They bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC § 1001, and the Labor-Management Relations Act ("LMRA"), 29 USC § 185.  Doc #17 at ¶2.  Plaintiffs claim that through a series of collective bargaining agreements between Mack and the United Auto Workers' union, Mack promised to provide retirees, their surviving spouses and their dependents with lifetime health care benefits.  Doc #17 at ¶20.  Plaintiffs argue that these benefits are vested and cannot be reduced or eliminated without their consent, nor do they expire when the relevant collective bargaining agreements expire.  Doc #17 at ¶¶7, 46, 52.

On August 16, 2007, Mack sent a letter to beneficiaries under the plan stating that due to a restructuring of medical benefit coverage, beneficiaries would have to "pay a larger share of their health care costs" beginning on April 1, 2008.  Doc #17 at ¶30.  Plaintiffs claim that as a result of these reductions, they will suffer great financial hardship.  Doc #17 at ¶34.  Accordingly, on September 20, 2007, they brought this class action, Doc #1, and sought an injunction on behalf of themselves and "[a]ll persons who are retirees of Mack Trucks, their surviving spouses,

or their dependents, and are currently receiving medical benefits under the Mack Plan." Doc #17 at ¶35.

Mack, however, acted first. On September 7, 2007, Mack filed an action for declaratory relief in the Eastern District of Pennsylvania: <u>Mack Trucks, Inc v Intl Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW et al</u>, 07-3737. Doc #4. Mack named as defendants the union, five locals and a man named Carl Breininger as a class representative for the retirees. Doc #4. Mack seeks a declaration that it owes no legal duty to its retirees under the plan and that it is free to implement its proposed changes on April 1, 2008. Doc #4 Ex A at ¶¶24-29.

The court held a hearing on September 25, 2007, on plaintiffs' request for a temporary restraining order. At that hearing, Mack stated that it would not implement any changes to the health care plan before April 2008, and plaintiffs agreed to drop their request for a temporary restraining order. On October 5, 2007, plaintiffs filed an amended complaint adding Loretta Evitt as a named plaintiff and renewing their request for a preliminary injunction. Doc #17.

On October 8, 2007, defendants filed a motion to transfer this case to the Eastern District of Pennsylvania or to dismiss on the grounds of comity. Doc ##20, 21. Defendants argue that the Eastern District of Pennsylvania is the more appropriate venue for this case because 43% of the putative class members in this case reside in that district, 61% reside in Pennsylvania, 89% reside within 250 miles of the federal courthouse in Reading, Pennsylvania, where the case is being heard, 98% reside east of the

**United States District Court**
For the Northern District of California

Mississippi River and only 0.2% of the class members – or 13 out of 5610 – reside in the Northern District of California.  Doc #49 at 1; Doc #21 at 3-4.  The complaint filed in the Eastern District of Pennsylvania states that the size of the class is approximately 9184 individuals, significantly higher than the 5610 individuals the defendants claim are in the putative class here.  Compare Doc #4 Ex A at ¶19 with Doc #21 at 3-4.  This discrepancy is odd given that defendants believe that the classes in the two actions are identical.  Doc #26 at 2.  This may or may not change the percentages at issue, but it may affect whether the legal and factual issues here are indeed identical.

Plaintiffs do not dispute any of defendants' numbers, responding instead that their choice of forum is entitled to great weight and that due to their extensive health problems, travel to Pennsylvania to participate in the litigation is exceedingly burdensome.

If the court declines to transfer the case, defendants ask the court to dismiss the matter entirely, arguing that the court should defer to the Pennsylvania action because it was filed first.  Doc #21 at 5.  Plaintiffs respond that this case poses an exception to the "first-filed rule" because the Pennsylvania action is an "anticipatory suit" filed in response to a threat of litigation by the union and Mack retirees.  Doc #29 at 11-13.  Plaintiffs claim that the Pennsylvania action is improper for two reasons: first, the suit uses the inappropriate device of a defendant class action, and second, Mack engaged in forum shopping by depriving "the 'natural plaintiff' – the UAW – of its choice of forum."  Doc #29 at 12 & n8.

**United States District Court**
For the Northern District of California

Meanwhile, plaintiffs' request for a preliminary injunction remains. Doc ##5, 17. Mack argues that plaintiffs cannot show a substantial likelihood of success on the merits because, in essence, the health care benefits were never lifetime, vested, uncapped benefits. Doc #26. In particular, Mack argues that the agreements explicitly stated that the benefits would expire once the agreements expire and that benefits do not vest unless the agreements say so unambiguously. Doc #26 at 5, 7-9. Mack contends that any bargaining agreements before 1992 (which cover Mack retirees such as Evitt who retired before 1992) never contained any language stating that retirees would receive "lifetime" benefits. Doc #26 at 10. Mack acknowledges that documents after 1992 might suggest that post-1992 retirees such as Ortega will receive lifetime benefits, but Mack argues that those documents contain a reservation of rights clause which negates the lifetime benefits. Doc #26 at 10-12. Finally, Mack argues that plaintiffs cannot show irreparable, immediate harm because no changes in benefits will occur until April 2008. Doc #26 at 14.

Plaintiffs respond that no agreement ever included a reservation of rights clause and that under Ninth Circuit precedent, a mere expiration date in a collective bargaining agreement does not undo rights that have vested. Doc #44 at 2-6. In addition, plaintiffs argue that the agreements promised lifetime benefits for all retirees, not merely post-1992 retirees. Doc #44 at 9. Lastly, plaintiffs contend that an injunction is appropriate because, first, a five-month wait until April 2008 is more than sufficient to justify a preliminary injunction, and second, that the balance of hardships tips in favor of the elderly retirees who

1  will not be able to afford health care if Mack implements its

2  changes.  Doc #44 at 12-15.

3       The court first considers defendants' motion to transfer

4  venue.  Because transfer is warranted, the court declines to rule

5  on plaintiffs' motion for a preliminary injunction.

6

7                              II

8       Because neither party disputes that this action might

9  have been brought in the Eastern District of Pennsylvania, the

10  court turns to the other factors relevant to the transfer decision.

11       The venue transfer statute, 28 USC § 1404(a), sets forth

12  two specific factors to consider: the convenience of the parties

13  and the convenience of the witnesses.  The statute also asks the

14  court to consider broadly "the interests of justice."  Courts have

15  developed lists of factors to consider in deciding whether to

16  transfer venue.

17       Courts in this district have considered the following

18  list of factors: (1) plaintiff's choice of forum, (2) convenience

19  of the parties, (3) convenience of the witnesses including

20  availability of compulsory process, (4) ease of access to the

21  evidence, (5) familiarity of each forum with the applicable law,

22  (6) feasibility of consolidation of other claims, (7) any local

23  interest in the controversy and (8) the relative court congestion

24  and time of trial in each forum.  See Carolina Casualty Co v Data

25  Broad Corp, 158 F Supp 2d 1044, 1048 (ND Cal 2001).  Consideration

26  of these factors appears to comport with the text of § 1404(a) as

27  well as Supreme Court and Ninth Circuit precedent.  See Gulf Oil

28

United States District Court
For the Northern District of California

**6**

United States District Court
For the Northern District of California

Corp v Gilbert, 330 US 501, 508-09 (1947); Decker Coal Co v Commonwealth Edison Co, 805 F2d 834, 843 (9th Cir 1986).

The burden of showing that transfer is appropriate is on the moving party. See Commodity Futures Trading Comm'n v Savage, 611 F2d 270, 279 (9th Cir 1979). Indeed, transfer under § 1404(a) must be justified by demonstrating particular circumstances that render the transferor forum inappropriate. See Starnes v McGuire, 512 F2d 918, 925 (DC Cir 1974).

A

The general rule is that a plaintiff's choice of forum is afforded substantial weight. See Decker Coal, 805 F2d at 843. That choice of forum is given less deference when the case is a class action. See Lou v Belzberg, 834 F2d 730, 739 (9th Cir 1987); see also, for example, Gerin v Aegon USA, Inc, No C06-5407 SBA, 2007 WL 1033472 at *3, *6 (ND Cal Apr 04, 2007); Papaleo v Cingular Wireless Corp, No C-07-1234 MMC, 2007 WL 1238713 at *1 (ND Cal Apr 26, 2007); Goldstein v RadioShack Corp, 2007 WL 1342533 at *3 (ED Tex 2007). That is particularly true here, where the putative class members are concentrated in the mid-Atlantic – and in the Eastern District of Pennsylvania in particular – rather than "scattered" across the country. Evancho v Sanofi-Aventis US Inc, No C 07-00098 SI, 2007 WL 1302985 at *2 (ND Cal May 03, 2007); compare Defrancesco v First Horizon Home Loan Corp, 2006 WL 3196838 at *2 (SD Ill 2006) (denying transfer because none of the putative class members resided in the transferee district).

Plaintiffs respond that the ERISA statute's special venue provision grants more weight to the plaintiffs' choice of forum and

**United States District Court**
For the Northern District of California

outweighs any class action concerns.  That provision states that an ERISA action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found * * *."  29 USC § 1132(e)(2).  The statute on its face does not support plaintiffs' proposition and instead appears geared toward expanding the number of choices available to ERISA plaintiffs of where to file suit.  See <u>Winnett v Caterpillar Inc</u>, 2006 WL 1722434 at *4 (MD Tenn 2006).  It is unclear whether the statute operates merely to increase access to federal courts by precluding a § 1406 motion to transfer for <u>improper</u> venue or, as plaintiffs insist, to give greater weight to one out of many equally "proper" venues on a § 1404(a) motion.  See <u>Varsic v US Dist Ct</u>, 607 F2d 245, 247 (9th Cir 1979); HR Rep No 533, 93d Cong, 1st Sess, reprinted in 1974 USCCAN 4639, 4655 ("The intention of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.").  And even if the ERISA venue provision "must influence the contours of the section 1404(a) analysis" (compare <u>Ellis v Costco Wholesale Corp</u>, 372 F Supp 2d 530, 537 (ND Cal 2005) (discussing venue transfer in a Title VII case)), the court is uncertain how much marginal weight to give § 1132(e)(2) over and above the weight already given to plaintiff's choice of venue in § 1404(a).  See <u>Bd of Trustees, Sheet Metal Workers Nat Fund v Baylor Heating & Air Conditioning, Inc</u>, 702 F Supp 1253, 1257 n14 (ED Va 1988).

**United States District Court**
For the Northern District of California

1    Here, the court gives weight to the plaintiffs' choice of

2    venue.  In granting this deference, however, the court is mindful

3    that the putative class is concentrated in the proposed transferee

4    district rather than scattered across the country and that only

5    0.2% of the putative class resides in this district.  These factors

6    dilute the weight given to the named plaintiffs' choice of venue.

7    See <u>Lou v Belzberg</u>, 834 F2d 730, 739 (9th Cir 1987).  While

8    narrowly construed this factor weighs slightly against transfer,

9    there are institutional considerations that the court will

10   presently address and which offset or at least neutralize this as a

11   factor against transfer.

12

13                                  B

14        The court next considers convenience to the parties.

15   Litigating this case in this district rather than the Eastern

16   District of Pennsylvania would be vastly more convenient for the

17   three named plaintiffs, who live in Hayward, California and

18   Milpitas, California.  Doc ##30, 31, 33.  Each has serious medical

19   issues which make prolonged travel extremely difficult.  Robert

20   Evitt, for instance, cannot stay seated for more than forty-five

21   minutes.  Doc #31 at ¶5.  He uses a walker to move around and even

22   with the walker cannot walk around the block.  Doc #31 at ¶5.  In

23   addition, he sleeps hooked up to a large, heavy breathing machine

24   that would be extremely difficult to transport by airplane.  Doc

25   #31 at ¶6.  Loretta Evitt cannot remain standing for more than

26   fifteen minutes.  Doc #30 at ¶5.  Named plaintiff Joel Ortega has a

27   chronic back condition that makes it difficult to remain seated in

28   one position for a long time, as during a cross-country flight.

**9**

**United States District Court**
For the Northern District of California

Doc #33 at ¶6.  Besides the physical discomfort associated with long travel, each plaintiff sees physicians in the Bay area regularly; travel to Pennsylvania would disrupt those regular visits, and in the event of an emergency, plaintiffs would not be treated by their regular doctors.  Doc #30 at ¶5; Doc #31 at ¶7; Doc #33 at ¶7.  The named plaintiffs' difficulties are extensive, although it is unclear how often this litigation will require their personal participation and still more their personal travel to Pennsylvania in the event of a transfer.

Defendants, however, have not demonstrated that it would be prohibitively expensive or difficult for them to travel to San Francisco to litigate this action.  The Ninth Circuit has noted on multiple occasions that, "in this era of fax machines and discount air travel," it is not unreasonable to require a party, particularly a corporation, to litigate in another forum.  See Miracle v NYP Holdings, Inc, 87 F Supp 2d 1060, 1073 (D Hawaii 2000) (refusing to transfer venue, forcing New York corporation to travel to Hawaii to litigate), quoting Panavision Intl LP v Toeppen, 141 F3d 1316, 1323 (9th Cir 1998).  Defendants have not demonstrated that it would be inconvenient to litigate in this district.

Defendants respond that litigating here would be "certainly not convenient for the 98% of the potential class who reside on the other side of the country."  Doc #49 at 8.  Defendants' argument misses the mark because there is no reason why the absent class members will be involved in this litigation in any way.  That is the purpose behind class actions.  Only the named plaintiffs are active in the litigation because the claims and

United States District Court

For the Northern District of California

harms are purportedly common to all class members.  In this litigation, neither plaintiffs nor defendants claim that they plan to require absent class members to come to San Francisco. Accordingly the convenience or inconvenience of absent class members is irrelevant.  Overall, the convenience of the parties before this court weighs against transfer.

C

To demonstrate inconvenience of third party witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance.  See Carolina Casualty Co, 158 F Supp 2d at 1049.  Here, defendants have identified three witnesses, all residing in Pennsylvania, who are expected to testify as to the Mack retiree benefits and the collective bargaining over those benefits.  One witness, Joseph Killino, is a former Mack employee – now an independent compensation and benefits consultant – who designed and administered the retiree medical benefits at issue here and also participated in the collective bargaining negotiations with the union.  Doc #49 at 9; Doc #51 at ¶¶3, 5.  Defendants have also identified as a witness Joseph Huxta, who lives in Pennsylvania and holds Killino's old position.  Doc #49 at 10; Doc #51.  Huxta is a Mack employee, not a third party witness, and therefore his convenience or inconvenience may be given less weight because his employer may compel him to testify.  See STX, Inc v Trik Stik, Inc, 708 F Supp 1551, 1556 (ND Cal 1988).  Lastly, defendants point to John H Widman, a partner in a Pennsylvania law firm who handled Mack's collective bargaining negotiations with the union.  Doc #49

11

**United States District Court**
For the Northern District of California

1    at 10; Doc #52.  Widman is not a Mack employee, and like Killino,

2    he would be inconvenienced by travel to San Francisco.  Defendants'

3    identification of only two non-employee witnesses in Pennsylvania

4    does not weigh strongly in favor of transfer.

5            Defendants argue that all of plaintiffs' third party

6    witnesses are union employees who live in Michigan, which is closer

7    to Pennsylvania than San Francisco.  This argument is unconvincing

8    for two reasons.  First, the difference between a flight from

9    Detroit to Philadelphia and a flight from Detroit to San Francisco

10   is of only little import.  More importantly, however, those

11   witnesses have stated that they are happy to testify in California.

12   Doc #32 at ¶4; Doc #34 at ¶5.  Accordingly, the convenience of

13   third party witnesses does not weigh strongly in favor of transfer.

14

15                                    D

16           Other than the testimony of live witnesses, the bulk of

17   evidence in this litigation is likely to be document-intensive,

18   comprising the collective bargaining agreements and accompanying

19   letters of agreement.  See Doc #29 at 24.  Because most of those

20   data can be transmitted and stored electronically, this factor does

21   not weigh strongly in favor of transfer.  See <u>Intl Bhd of Teamsters</u>

22   <u>v North Am Airlines</u>, 2005 WL 947083, No C05-0126 TEH (ND Cal April

23   20, 2005) ("Similarly, North American has not established that

24   voluminous documents remain to be exchanged by the parties, or that

25   any documents that exist in New York would have to be transferred

26   to California rather than made available and copied in New York.").

27   //

28   //

United States District Court

For the Northern District of California

1

E

2          There is no reason to believe that a judge in the Eastern

3    District of Pennsylvania will be more or less familiar with ERISA

4    than the judges of this district.  Nor is there any suggestion that

5    the Eastern District would in any way be an unfair forum for either

6    side in this litigation.  This factor is neutral.

7

8

F

9          The possibility of consolidating this case with the

10   Pennsylvania action favors transfer significantly.  "The

11   feasibility of consolidation is a significant factor in a transfer

12   decision."  AJ Industries Inc v US Dist Court for Central Dist of

13   Cal, 503 F2d 384 (9th Cir 1974), citing van Dusen v Barrack, 376 US

14   612 (1964).  The first case is currently pending before the Eastern

15   District of Pennsylvania.  Even though, as plaintiffs contend, the

16   aggrieved parties named in the instant action include only retirees

17   instead of retirees plus the union (as in the Pennsylvania action),

18   the two cases concern "[s]ubstantially the same parties, property,

19   transaction, event or question of law," and "it appears likely that

20   there will be an unduly burdensome duplication of labor and expense

21   or conflicting results if the cases are conducted before different

22   Judges."  Civ LR 3-12(b); Continental Grain Co v The FBL-585, 364

23   US 19, 26 (1960).  But see Goldstein v RadioShack Corp, 2007 WL

24   1342533 at *5 (ED Tex 2007) (denying transfer to a district with a

25   similar but later-filed case because the proceedings in the

26   transferee district were "in an early posture and no class ha[d]

27   been certified").  This factor weighs strongly in favor of

28   transfer.

13

United States District Court
For the Northern District of California

1    This factor also weighs against the alternative of
2 denying transfer but staying this action pending the outcome of
3 proceedings in Pennsylvania.  Consolidation of all related claims
4 and interested parties in one district would materially advance
5 ultimate resolution of the issues at bar.

6

7                                    G

8    The Eastern District of Pennsylvania has a substantially
9 greater interest in the controversy.  Transfer to the district with
10 the greatest stake in the matter serves the public interest: "In
11 cases which touch the affairs of many persons, there is reason for
12 holding the trial in their view and reach rather than in remote
13 parts of the country where they can learn of it by report only.
14 There is a local interest in having localized controversies decided
15 at home."  Gulf Oil Corp v Gilbert, 330 US 501, 508-09 (1947).
16 Many of the events in the dispute, particularly the negotiation of
17 the collective bargaining agreement, took place in the Eastern
18 District of Pennsylvania.  Doc #21 at 10; Doc #29 at 20.

19    Although plaintiffs are injured here and accordingly the
20 Northern District of California has an interest in vindicating its
21 residents' rights, the same is true of the Eastern District of
22 Pennsylvania.  In this regard, that district's interest in the case
23 – protecting the rights of its retiree citizens and its
24 corporations – is very strong.  Of the putative class, 2466 live in
25 the Eastern District of Pennsylvania, whereas only 13 live in this
26 district.  Expressed as a percentage, 43% of the class lives in the
27 Eastern District of Pennsylvania, whereas 0.2% of the class lives
28 in the Northern District of California.  The putative class members

14

United States District Court

For the Northern District of California

are not scattered across the country – 43% live in the Eastern District of Pennsylvania, 61% live in Pennsylvania, 89% live within 250 miles of the courthouse in Reading, Pennsylvania and 98% of the class lives east of the Mississippi River.  Doc #49 at 1.  Because the putative class members do not reside in this district in any significant number, and because an overwhelmingly greater number of putative class members reside in the Eastern District of Pennsylvania, the latter district has a substantially greater interest in this case.  Compare <u>Lou v Belzberg</u>, 834 F2d 730, 739 (9th Cir 1987).

The substantially greater interest in the controversy in Pennsylvania than in northern California implicates "interest of justice" and institutional considerations adverted to earlier in this order.  As litigants depend on courts to adjudicate disputes, courts depend on acceptance of their decisions in order to perform the function of resolving disputes.  Implicit in this is the exercise of some restraint by courts in not reaching out to adjudicate a dispute whose center of gravity lies elsewhere, even if as a purely legal matter the court can exercise jurisdiction over that dispute.  The present case would appear to be one that calls for such restraint.

Accordingly, this factor and the institutional considerations implicit in it weigh strongly in favor of transfer.


H

Neither party suggests that either district's docket is more congested than the other, and accordingly this factor is neutral.

15

**United States District Court**
For the Northern District of California

### III

Overall, the court finds that the possibility of consolidation with an earlier-filed action and the local interest in the litigation weigh strongly in favor of transfer.  The interests of the witnesses weighs in favor of transfer, but not strongly.  The plaintiffs' choice of forum and the convenience of the parties weigh against transfer.  Considering all of the factors, and notwithstanding the very able arguments to the contrary of plaintiffs' counsel, the court concludes nonetheless that defendants have met their burden of establishing that transfer to the Eastern District of Pennsylvania is necessary for the convenience of the parties and witnesses and in the interest of justice.  Accordingly, defendants' motion to change venue to the Eastern District of Pennsylvania (Doc #20) is GRANTED.  Under the circumstances, the court does not reach plaintiffs' motion for a preliminary injunction and finding it moot directs the clerk to terminate that and any other pending motions.


IT IS SO ORDERED.


_____

VAUGHN R WALKER

United States District Chief Judge